IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANGELA MCCULLOUGH, MARQUITA        )
JOHNSON, KENNY JONES, ALGI          )
EDWARDS, LEVON AGEE, ADRIAN         )
EDDIE FLOYD, HASSAN CALDWELL        )
DEVRON JAMES, ASHLEY DAWN SCOTT,    )
AND CHRISTOPHER MOONEY,             )
ON BEHALF OF THEMSELVES,            )
INDIVIDUALLY, AND ON BEHALF OF A    )
CLASS OF ALL OTHERS SIMILARLY       )
SITUATED,                           )
                                    )
            Plaintiffs,             )        CASE NO: 2:15-CV-463
                                    )
VS.                                 )
                                    )
THE CITY OF MONTGOMERY, ALABAMA;  )
ERNEST N. FINLEY, JR., CHIEF OF POLICE )
OF THE CITY OF MONTGOMERY, IN HIS   )
INDIVIDUAL AND OFFICIAL CAPACITIES;  )
KEVIN MURPHY, FORMER CHIEF OF       )
POLICE OF THE CITY OF MONTGOMERY,  )
IN HIS INDIVIDUAL CAPACITY;          )
LES HAYES, III, PRESIDING JUDGE OF THE )
MUNICIPAL COURT OF THE CITY OF      )
MONTGOMERY, IN HIS INDIVIDUAL AND   )
OFFICIAL CAPACITIES; and TODD       )
STRANGE, MAYOR OF THE CITY          )
OF MONTGOMERY, in his individual capacity, )
AND JUDICIAL                        )
CORRECTIONS SERVICES, INC. (JCS)    )

            Defendants.

**BRIEF OF DEFENDANTS, CITY OF MONTGOMERY, ALABAMA, ERNEST N.
FINLEY JR., KEVIN MURPHY, TODD STRANGE, AND LES HAYES IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTAND, IN THE
ALTERNATIVE, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     PLAINTIFFS' CLAIMS ........................................................................................ 1

II.    STANDARD OF REVIEW ................................................................................. 2

III.   COUNT I IS DUE TO BE DISMISSED ........................................................... 3

    A.  COUNT I IS DUE TO BE DISMISSED FOR FAILURE TO PLEAD ALLEGATIONS SUFFICIENT TO SUPPORT EITHER A FOURTH OR FOURTEENTH AMENDMENT CLAIM PURSUANT TO REQUIREMENTS OF *TWOMBLY* AND *IQBAL*. ............................................................................................ 3

      1.  THE PLEADING REQUIREMENTS OF *IQBAL*. ..................................... 3

      2.  THE EQUAL PROTECTION COMPONENT OF COUNT ONE ................... 4

      3.  DUE PROCESS CLAIMS ......................................................................... 14

      4.  FOURTH AMENDMENT ......................................................................... 14

    B.  COUNT ONE IS DUE TO BE DISMISSED ON GROUNDS OF QUALIFIED IMMUNITY AS TO FINLEY, MURPHY, AND STRANGE ........................... 16

    C.  PLAINTIFFS' § 1981 CLAIMS ARE ALSO DUE TO BE DISMISSED ......... 17

    D.  PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF ARE ALSO DUE TO BE DISMISSED FOR LACK OF STANDING. ................................................... 17

IV.   COUNT II ALLEGES VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000(D), ET SEQ. AGAINST THE CITY OF MONTGOMERY BASED ON ALLEGATIONS OF RACIALLY DISCRIMINATORY POLICE STOPS AND ARRESTS. ...................................................................................................... 18

    A.  COUNT II IS DUE TO BE DISMISSED FOR FAILURE TO MEET THE PLEADING REQUIREMENTS SET OUT IN *TWOMBLY* AND *IQBAL*. .................... 18

    B.  TO THE EXTENT THAT PLAINTIFFS SEEK INJUNCTIVE RELIEF AS TO COUNT II, THAT RELIEF SHOULD BE DISMISSED. ................................. 19

V.    COUNT III ALLEGING THAT THE CITY DEFENDANTS AND HAYES VIOLATED PLAINTIFFS' FOURTH AND FOURTEENTH AMENDMENT RIGHTS BY SERVING WARRANTS BASED SOLELY ON NONPAYMENT OF MONETARY DEBTS IS DUE TO BE DISMISSED ............................................................................................... 20

    A.  THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST JUDGE HAYES ARE DUE TO BE DISMISSED ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY .................................................................................... 20

    B.  THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST POLICE CHIEF ERNEST FINLEY, FORMER POLICE CHIEF KEVIN MURPHY, AND MAYOR TODD STRANGE ARE DUE TO BE DISMISSED ON GROUNDS OF QUALIFIED IMMUNITY. ............................................................................ 21

    C.  THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST THE CITY OF MONTGOMERY ARE ALSO DUE TO BE DISMISSED FOR FAILURE TO ESTABLISH A POLICY OR CUSTOM OF THE CITY. ................................ 23

i

    D.  **TO THE EXTENT PLAINTIFFS SEEK INJUNCTIVE RELIEF IN CONNECTION WITH COUNT III, IT IS DUE TO BE DISMISSED ON MOOTNESS AND STANDING GROUNDS.** ............................................................... 26

VI.  **COUNT IV, ALLEGING THAT THE CITY DEFENDANTS AND HAYES VIOLATED THE EIGHTH AMENDMENT, EQUAL PROTECTION AND DUE PROCESS CLAUSES THROUGH USE OF A FIXED BAIL SYSTEM, IS DUE TO BE DISMISSED.** ................. 26

    A.  **COUNT IV IS DUE TO BE DISMISSED AS TO POLICE CHIEF ERNEST FINLEY AND FORMER CHIEF OF POLICE KEVIN MURPHY ON QUALIFIED-IMMUNITY GROUNDS.** ............................................................... 26

    B.  **THE CLAIMS IN COUNT IVAGAINST CHIEF JUDGE HAYES ARE DUE TO BE DISMISSED ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY** ..................... 29

    C.  **PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF AS TO THE USE OF A FIXED BAIL SCHEDULE ARE MOOT.** ................................. 30

    D.  **COUNT IV IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY FOR FAILURE OF THE PLAINTIFFS TO SHOW A MUNICIPAL POLICY OR PRACTICE.** ........................................................................ 30

VII.  **COUNT V ALLEGING VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENT IN CONNECTION WITH THE INCARCERATION OF THE PLAINTIFFS FOR NONPAYMENT OF DEBTS IS DUE TO BE DISMISSED** ................. 31

    A.  **THE PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SHOW THAT THE COURT'S FAILURE MEANINGFULLY TO INQUIRE INTO THE PLAINTIFFS' ABILITY TO PAY WAS A POLICY OR CUSTOM OF THE CITY OF MONTGOMERY** ................................................................ 31

    B.  **COUNT V IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY** .................................................. 32

    C.  **THIS COUNT IS DUE TO BE DISMISSED AS TO FINLEY, MURPHY AND STRANGE AS WELL AS ON GROUNDS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM FOR SUPERVISORY IMMUNITY.** ........................ 33

VIII.  **COUNT VI ALLEGING VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENT FOR FAILURE TO APPOINT COUNCIL AGAINST THE CITY OF MONTGOMERY AND JUDGE HAYES IS DUE TO BE DISMISSED** ................................. 33

    A.  **COUNT VI IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY FOR FAILURE TO ALLEGE SUFFICIENT FACTUAL ALLEGATIONS TO ESTABLISH THAT THE FAILURE TO APPOINT COUNSEL WAS A POLICY OR PRACTICE OF THE CITY OF MONTGOMERY** ........................................... 33

    B.  **COUNT VI IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY** .................................................. 34

IX.  **COUNT VII, ON BEHALF OF PLAINTIFFS MCCULLOUGH, JOHNSON, JONES, EDWARDS, AGEE, AND MOONEY WHICH ALLEGES THAT ALL DEFENDANTS VIOLATED THE THIRTEENTH AMENDMENT AND FEDERAL ANTI-PEONAGE LAWS, IS DUE TO BE DISMISSED** ........................................................... 35

    A.  COUNT VII IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY. .................................................................................35

    B.  COUNT VII IS DUE TO BE DISMISSED AS TO POLICE CHIEF ERNEST FINLEY, FORMER CHIEF OF POLICE KEVIN MURPHY, AND MAYOR TODD STRANGE ON QUALIFIED-IMMUNITY GROUNDS. .................................................................................35

X.  COUNT VIII, ALLEGING ON BEHALF OF PLAINTIFFS MCCULLOUGH, JOHNSON, JONES, AGEE, AND CALDWELL VIOLATIONS OF THE FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES FOR PLACING PEOPLE WHO CANNOT PAY THEIR FEES IN FULL ON PROBATION IS DUE TO BE DISMISSED .................................................................................38

    A.  MCCULLOUGH AND JONES' CLAIMS ARE DUE TO BE DISMISSED BECAUSE EVEN ASSUMING THAT THE CLAIM ALLEGED STATES A CONSTITUTIONAL VIOLATION, THEIR CLAIMS WOULD BE TIME-BARRED. .................................................................................38

    B.  COUNT VIII IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY. .................................................................................39

    C.  COUNTY VIII IS DUE TO BE DISMISSED AS TO TODD STRANGE AND THE CITY. .................................................................................40

XI.  COUNT IX ALLEGING VIOLATONS OF FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES FOR REQUIRING AN APPEAL BOND ARE DUE TO BE DISMISSED .................................................................................40

    A.  COUNT IX IS DUE TO BE DISMISSED AGAINST JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY. .................................................................................40

    B.  COUNT IX IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS SHOWING THAT THE COURT'S FAILURE TO INQUIRE INTO ONE'S ABILITY TO PAY AN APPEAL BOND WAS A POLICY OR CUSTOM OF THE CITY OF MONTGOMERY. .................................................................................40

    C.  THE CLAIMS AGAINST MAYOR TODD STRANGE IN CONNECTION WITH PLAINTIFFS' APPEAL BONDS ARE DUE TO BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THE GROUNDS FOR SUPERVISORY LIABILITY AND THE PLEADING REQUIREMENTS OF *TWOMBLY/IQBAL*. .................................................................................41

XII.  COUNT XII ALLEGING FALSE IMPRISONMENT AGAINST THE CITY DEFENDANTS AND JUDGE HAYES IS DUE TO DISMISSED .................................................................................41

    A.  COUNT XII IS DUE TO BE DISMISSED AGAINST JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY. .................................................................................41

    B.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FALSE IMPRISONMENT BECAUSE THEY HAVE FAILED TO ALLEGE THAT THE ARRESTING OFFICERS THEMSELVES ACTUALLY LACKED PROBABLE CAUSE. .................................................................................42

    C.  TO THE EXTENT THAT PLAINTIFFS CONTEND THAT THE INDIVIDUAL CITY DEFENDANTS HAVE SOME SORT OF RESPONDEAT SUPERIOR LIABILITY IN

**CONNECTION WITH THE ARREST BECAUSE OF THE DISCRETIONARY STOPS MADE INITIALLY, THE INDIVIDUAL CITY DEFENDANTS ARE ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY IN CONNECTION WITH THE PLAINTIFFS' STATE-LAW CLAIM**........................................................... 43

**XIII.  PLAINTIFFS' CLAIMS OF INADEQUATE TRAINING OR SUPERVISION ARE DUE TO BE DISMISSED.**................................................................................................... 44

Defendants, the City of Montgomery, Chief of Police Ernest N. Finley, Jr., Former Chief of Police Kevin Murphy, Mayor Todd Strange (hereinafter collectively the "City Defendants") and Presiding Municipal Court Judge Les Hayes, III, (Hayes) file this brief in support of their motion to dismiss the claims pled against them that do not meet the pleading requirement of Rule 12(b)(6) of the Federal Rules of Civil Procedure and, in the alternative, move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Judge Hayes' position is distinct from that of the City Defendants in that, acting as a judge, he is independent of the executive branch of the City and is a judicial officer of the Unified Judicial System of Alabama which includes the municipal, district, circuit and appellate courts of this state. Ala. Code § 12-1-2. While Judge Hayes' position could be more efficiently and appropriately be briefed separately, as a condition of the mutually agreed upon briefing schedule the City Defendants and Hayes are filing a joint brief.

## I.    PLAINTIFFS' CLAIMS

Plaintiffs have raised ten claims in this lawsuit against some, or all, of the City Defendants and eight of those claims are raised against Hayes. Those claims are as follows:

Counts One (Fourteenth Amendment and Fourth Amendment) alleges that the City Defendants unlawfully targeted African Americans for stops and/or stopped the Plaintiffs without probable cause.

Count Two (Title VI) alleges that the City unlawfully targeted African Americans for stops.

Count Three alleges that the City Defendants and Hayes violated the Fourth and Fourteenth Amendment by issuing warrants based solely on nonpayment of debts.

Count Four alleges that the City Defendants and Hayes violated the Fourteenth Amendment and Due Process Clause through use of a fixed bail system.

1

Count Five alleges that the City Defendants and Hayes (as well as JCS) violated the Due Process and Equal Protection Clauses by imprisoning people for failure to pay fines and costs without an inquiry into their ability to pay.

Count Six alleges that the City and Hayes violated the Sixth and Fourteenth Amendments by failing to appoint counsel before jailing Plaintiffs for failure to pay fines and costs.

Count Seven alleges that the City Defendants and Hayes violated the Thirteenth Amendment and peonage laws through a policy pursuant to which individuals who were jailed could work in jail to gain earlier release.

Count Eight alleges that the City and Hayes (as well as JCS) violated the Due Process and Equal Protection Clauses by using probation and the threat of probation revocation to collect fines and costs.

Count Nine alleges that the City and Hayes violated the Fourteenth Amendment and Equal Protection Clauses by requiring appeal bonds without inquiry into ability to pay.

Count Twelve alleges the state-law tort of false imprisonment against the City Defendants and Hayes.

The remaining counts are alleged against JCS only.

Plaintiffs seek injunctive relief with respect to Counts One, Two (both relative to discriminatory stops), Three (unlawful arrest warrants) and Four (bond schedule) only.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the facts pleaded as true and construe those facts in a light favorable to the nonmoving party. *Quality Foods De Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989 (11th Cir. 1983). A court should

draw all "reasonable inferences" in favor of the nonmovant. *St. George v. Pinella County*, 285 F.3d 1334, 1337 (11th Cir. 2002).

However, a plaintiff must provide sufficient facts to provide a defendant fair notice of what claim is raised. It need not be detailed factual allegations, but it "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## III.    COUNT I IS DUE TO BE DISMISSED

### A.    COUNT I IS DUE TO BE DISMISSED FOR FAILURE TO PLEAD ALLEGATIONS SUFFICIENT TO SUPPORT EITHER A FOURTH OR FOURTEENTH AMENDMENT CLAIM PURSUANT TO REQUIREMENTS OF *TWOMBLY* AND *IQBAL*.

#### 1.    THE PLEADING REQUIREMENTS OF *IQBAL*.

Count One alleges violations of the Equal Protection Clause, Due Process Clause, and the Fourth Amendment based on allegations of racially discriminatory stops and lack of probable cause against the City Defendants.

Count One fails to state a claim with the specificity required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny. The factual allegations in *Iqbal* are analogous to those in Count I here. In *Iqbal* the Respondent's allegations were described by the Court as follows:

> The [respondent's] complaint contends that petitioners designated respondent a person of high interest on account of his race, religion, or national origin, in contravention of the First and Fifth Amendments to the Constitution. The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." *Id.,* ¶ 47, at 164a. It further alleges that "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." *Id.,* ¶ 69, at 168a. Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." *Id.,* ¶ 96, at 172a–173a.

> The pleading names Ashcroft as the "principal architect" of the policy, *id.,* ¶ 10, at 157a, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id.,* ¶ 11, at 157a.

*Iqbal* at 668-69.

In *Iqbal*, the Supreme Court applied its earlier ruling in *Twombly* in holding that the complaint was due to be dismissed. *Twombly* called for "a pleader to amplify a claim with some factual allegations in those contexts in which some amplification is needed to render a claim plausible." *Id. a*t 670. The *Igbal* court concluded that Respondent's "bare assertions, much like the pleading of conspiracy in *Twombly*, amount[ed] to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim…namely the petitioners adopted a policy because of…its adverse effects upon an identifiable group." *Id*. at 682 (internal quotation marks omitted). The Supreme Court wrote that it was the "conclusory nature" of the allegations that "disentitle[d] them to the presumption of truth." *Id*. at 682. The conclusory nature of the Plaintiffs' allegations in Count One calls for dismissal here.

### 2.  THE EQUAL PROTECTION COMPONENT OF COUNT ONE

The *Iqbal* court carefully reviewed the causes of action at issue and their elements (*Bivens* constitutional claims) and concluded that the plaintiff "must plead and prove that the defendants acted with discriminatory purpose." *Id.* at 676. The same is true in this case. "[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim," *Parks v. City of Warner Robins,* 43 F.3d 609, 616 (11th Cir. 1995), and the Supreme Court has said that the idea of intention or purpose means that "the decision makers ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r. of Mass. v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). In other words, as in *Iqbal,* the decisionmaker alleged to have violated the

constitutional rights of the Plaintiffs must have taken a course of action "because of, not merely in spite of the action's adverse effects upon an identifiable group." *Iqbal* at 676-77.

Moreover, as Courts have consistently concluded, in a racial profiling or selective enforcement case such as this, the plaintiff must survive a two-pronged inquiry. For the purposes of the first prong of this inquiry, the plaintiff must "show that [(s)he] is a member of a protected class and [in addition,] that [(s)he] was treated differently from similarly situated individuals in an unprotected class." *Bradley v. U.S.,* 299 F.3d 197, 206 (3d Cir. 2002); *see also Draper v. Reynolds*, 369 F.3d 1270, 1278 n. 14. The second prong of this inquiry is that expressly examined by the Supreme Court in *Iqbal:* the plaintiff asserting an equal protection claim "must plead [facts showing] that the defendant acted with a discriminatory purpose" to permit the court's reasonable inference that the government-official defendant acted "for the purpose of discriminating on account of race." *Iqbal,* 556 U.S. at 676–77.

The allegations in this case, while lengthy, do not allege sufficient facts to state a "plausible" claim as to either prong of the above test. The following underlined sections of Paragraphs 41-43, 155 (from the general factual allegations) and 179-183 (from Count I itself) are the only arguably fact-specific allegations in connection with Counts I of the Plaintiffs' Amended Complaint. In fact, Paragraph 179 has only purely conclusory legal allegations without specific factual support and is included here only to show the framework for Plaintiff's claims in Count I. The remaining paragraphs of Count I are omitted here for failure to contain anything other than legal conclusions without an attempt at providing evidentiary bases or a "formulaic recitation of the elements of a constitutional discrimination claim," *Iqbal* at 682.

> 41.    Defendants City of Montgomery, Mayor Todd Strange, Chief of Police Ernest N. Finley, Jr., and Former Chief of Police Kevin Murphy, have adopted or ratified and have implemented customs, policies or practices of police stops, ticketing or arrests without reasonable suspicion of any wrongdoing. <u>They have</u>

also adopted or ratified and pursued policies, practices, or customs of establishing roadblocks or other checkpoints or of making other stops and arrests in or near areas with high percentages of low-income African American or minority residents, including near predominately African American churches on Sundays, and of otherwise stopping, ticketing or arresting minorities because of their race or ethnicity. Both white and minority police officers have implemented Defendants' racial profiling policy, practice or custom against Plaintiffs. These unlawful and racially motivated stops have been used as a means of ticketing or arresting individuals on traffic tickets or for other minor offenses, or on specious or fabricated charges, when the real purpose of these stops [ ] is simply to provide an opportunity for running warrant checks for past due charges stemming from prior similar tickets.

42.    African American Plaintiffs have been racially profiled or targeted because of their race, for stops on charges of minor traffic violations such as, for example, obstructed windshield, failure to wear a seatbelt, improper lights and/or cracked taillight where the real purpose of the stop was to enable police officers to run checks for outstanding warrants or debts. Even when stopped for charges such as running a stop sign, African Americans have been targeted and stopped in instances that would have been overlooked or excused if they were white citizens.

43.    An investigative reporter who, on February 9, 2015, reported on his recent visit to Montgomery Municipal Court, observed that nine out of ten of the approximately 100 defendants in the courtroom awaiting hearings that morning were African American. According to the 2010 U.S. Census, African Americans comprised only 56.6% of the population of the City of Montgomery. David J. Krajicek, "Special Report, Paying the Piper: Montgomery, Alabama's City Court is a Debt-Collecting Machine, The Crime Report," Feb. 9, 2015, www.thecrimereport.org/news/inside-criminal-justice/2015-02-paying-the-piper (visited Aug. 20, 2015).

…

155.    Based on their own personal experiences, including numerous traffic stops in earlier years, and on the above factual allegations of the other Plaintiffs, the nine African American Plaintiffs (Plaintiffs McCullough, Johnson, Jones, Edwards, Agee, Floyd, Caldwell, James, and Mooney) believe that but for their race they would not have been subjected to stops, ticketings, arrests, and warrants on prior debts as described above.

…

179.    As part of the purposeful use of law enforcement activities to generate municipal revenue, Defendant Mayor Todd Strange, acting under color of state law, and as a final policymaker as Mayor for the City of Montgomery, has

instigated, adopted, ratified, and administered policies, practices or customs, that also have been adopted, administered and implemented for the Montgomery Police Department by Chief of Police Ernest N. Finley, Jr. and Former Chief of Police Kevin Murphy, acting under color of state law, and as final policymakers for the City for the Montgomery Police Department, which policies, practices or customs are so widespread and persistent that they have the force of law, including the use the police officers of the Montgomery Police Department to stop, ticket and/or arrest individuals (1) without reasonable suspicion or any objective, articulable suspicion of wrongdoing and/or (2) because of their race or ethnicity, for minor traffic violations or other infractions, with the purpose of harassing them, running checks for debts owed to the City from prior arrests, and arresting them on these warrants. These policies, practices or customs (1) constitute false arrests and unreasonable seizures and violate the Fourth Amendment and/or (2) violate the equal protection and due process clauses of the Fourteenth Amendment and 42 U.S.C. § 1981.

180.    As described in the individual Plaintiff allegations above, <u>Plaintiffs have been stopped for specious, fabricated or untrue reasons, such as resemblance to a claimed robbery suspect (Plaintiff Floyd), or for failure to have on headlights when it was not yet dark (Plaintiff McCullough)</u> where the real purpose of the stop was to enable police officers to run checks for outstanding warrants or debts. Plaintiff Floyd filed a complaint about his arrest with Corporal Dailey of Internal Affairs and went back to that office twice to no avail.

181.    Plaintiffs have also been racially profiled or targeted because of their race, <u>for stops on charges of minor traffic violations such as, for example, obstructed windshield (Plaintiff Agee) failure to wear a seatbelt (Plaintiffs Agee, James); improper lights and/or cracked taillight (Plaintiff Caldwell)</u> where the real purpose of the stop was to enable police officers to run checks for outstanding warrants or debts. Even when stopped on charges such as running a stop sign, <u>African Americans are targeted and stopped in instances that would have been overlooked or excused but for their race.</u>

182.    <u>An investigative reporter who, on February 9, 2015, reported on his recent visit to Montgomery Municipal Court, observed that nine out of ten of the approximately 100 Defendants in the courtroom awaiting hearings that morning were African Americans.</u> According to the 2010 U.S. Census, African Americans comprised 56.6% of the population of the City of Montgomery. See, David J. Krajicek, "Special Report, Paying the Piper: Montgomery, Alabama's City Court is a Debt-Collecting Machine," The Crime Report, Feb. 9, 2015, <u>www.thecrimereport.org/news/inside-criminal-justice/2015-02-paying-the-piper</u> (visited Aug. 20, 2015).

183.    African Americans Plaintiffs, and others similarly situated, have been stopped by Montgomery City police officers pursuant to the Defendants' widespread and persistent intentional policies, practices or customs having the

force of law of <u>establishing traffic roadblocks, checkpoints, or conducting pedestrian stops, in or near predominately African American neighborhoods</u> and have been racially targeted or profiled in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendants Strange, Finley and Murphy, all acting under color of state law, also have systemically engaged in, and continue to engage, in instigating and ratifying (Defendant Strange), or adopting and implementing (Defendants Finley and Murphy) intentional widespread and persistent policies, practices or customs having the force of law of racial targeting and profiling in other stops, ticketing and/or arrests and/or of discriminatory treatment of African American Plaintiffs or other minority individuals because of their race, color and/or ethnicity. These race-based policies or practices violate the equal protection and due process clauses of the 14th Amendment because they are based on race and infringe fundamental rights to personal freedom and are not justified by a compelling government interest. They also violate 42 U.S.C. § 1981's explicit guarantee of the same right "to the full and equal benefit of all laws for the security of person and property as is enjoyed by white citizens" and it's requirement that all persons "shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other," and subject African Americans to the kind of second-class citizenship this post-Civil War legislation was intended to abolish.

While the above paragraphs are lengthy, in large part due to the repetition and their boilerplate content, their length is not sufficient to remove them from the category of conclusory allegations that fail the *Twombly* and *Iqbal* tests. The Plaintiffs do not have to meet some word count requirement. Rather, they have to allege sufficient facts to render plausible the claim that the City, Finley, Murphy and/or Strange intentionally discriminated against the Plaintiffs (or in the City's case had a policy or practice of discrimination) based on race.

The first underlined statement is that "They have also adopted or ratified and pursued policies, practices, or customs of establishing roadblocks or other checkpoints or of making other stops and arrests in or near areas with high percentages of low-income African American or minority residents, including near predominately African American churches on Sundays, and of otherwise stopping, ticketing or arresting minorities because of their race or ethnicity." Pars. 41 (and version of same at Par. 183). First, Plaintiffs have failed to identify any such policy or policies. Nor have the Plaintiffs alleged facts that would support a custom. *See Pierre v. City of*

*Miramar, Florida, Inc.,* No. 13–10668, 2013 WL 4750080, at *4 (11th Cir.2013) (holding that plaintiff's complaint failed to state a claim because although he alleged the *existence* of a municipal policy, he failed to identify any "*facts supporting the existence* of the[ ] purported City policies") (emphasis added)). They have alleged it in a conclusory fashion only. The individual claims of none of the plaintiffs create factual support for such a policy or practice. None alleged to have been stopped pursuant to a roadblock or a checkpoint, for instance. None alleges being stopped by or nearan African-American church on Sunday. Even if they were, the Plaintiffs would have to allege that the roadblocks were put into place at those locations with discriminatory intent and not for some other lawful purpose. Finally, they fail to allege that similar stops or roadblocks were *not* placed in non-African-American neighborhoods.

More importantly, no Plaintiff alleges that he or she was stopped in a circumstance in which a similarly situated non-African-American was not stopped, which, as noted above, is the very first prong of the selective enforcement Equal Protection analysis. *Bradley, supra.* The United States Supreme Court in the similar context of selective prosecution cases, applying these same Equal Protection principles, held that the Plaintiff "must show that similarly situated individuals of a different race were not prosecuted." *U.S. v. Armstrong,* 517 U.S. 456, 465 (1996). The most that Plaintiffs allege on this front is their conclusory language throughout regarding racial profiling and one line in Paragraph 181 where Plaintiffs allege that: "Even when stopped on charges such as running a stop sign, African Americans are targeted and stopped in instances that would have been overlooked or excused but for their race." However, even this statement is purely conclusory, and the Plaintiffs fail to "amplify" it with any specific "factual allegation." *See, e.g.,* 2015 WL 1840402 (S.D.N.Y.) (rejecting as conclusory plaintiff's bald allegation that males were invariably discriminated against in sex discrimination context).

Paragraphs 42, 180 and 181 move slightly past the boilerplate-style allegations to allege that individual defendants were stopped for reasons that the Plaintiffs call, or imply were, "fabricated."  Paragraph 42 alleges that Plaintiffs were targeted "for stops on charges of minor traffic violations such as, for example, obstructed windshield, failure to wear a seatbelt, improper lights and/or cracked taillight where the real purpose of the stop was to enable police officers to run checks for outstanding warrants or debts."  Similarly Paragraph 181 reiterates this allegation but attributes each minor violation to specific plaintiffs – Agee (windshield obstruction), Agee and James (seatbelts), Caldwell (improper or cracked taillight).

First, there is no factual allegation that non-African Americans who were similarly situated were not stopped.  To survive this motion to dismiss, Plaintiffs would need to "amplify" their claim with actual factual allegations of instances in which similarly situated non-African Americans were not stopped.  Otherwise, the actions alleged are "as consist with lawful conduct as … with wrongdoing" *Brooks v. Ross,* 578 F.3d 574, 581-82 (7th Cir. 2009).  The Seventh Circuit has pointed out in the due process context that in such cases, the complaint must be dismissed.  *Id.* Moreover, even if the Plaintiffs had made such a more "amplified" allegation, they do not link the discrimination at the individual officer level to the chiefs of police, the Mayor, or the City with anything but conclusory allegations.

In Paragraph 180, the Plaintiffs allege that "Plaintiffs have been stopped for specious, fabricated or untrue reasons, such as resemblance to a claimed robbery suspect (Plaintiff Floyd), or for failure to have on headlights when it was not yet dark (Plaintiff McCullough) where the real purpose of the stop was to enable police officers to run checks for outstanding warrants or debts. Plaintiff Floyd filed a complaint about his arrest with Corporal Dailey of Internal Affairs and went back to that office "twice to no avail." (¶ 124). The allegations of Plaintiff Floyd do not support

factually that stopping a suspect in the proximity of a bank that has just been robbed (¶113) is a specious, fabricated or untrue basis for a stop. The Plaintiffs say merely that Floyd never heard more about the bank robbery (¶114), which does not, in and of itself, support a claim that the officer had not received a report of a robbery or a description that matched Floyd's. Likewise, being stopped for failure to have on headlights when not yet dark is not specious, fabricated or untrue, if, in fact, the weather otherwise called for headlights due to conditions and the Plaintiffs do not so allege.

With respect to these allegations, however, even if they did support a "false" or "specious" basis for pulling someone over (they do not), the Plaintiffs' claims still fall far short of stating a claim that can survive a motion to dismiss under *Twombly* or *Iqbal*. First, the Plaintiff's claim here is not that the arresting officer violated Floyd or McCullough's constitutional rights. Rather, the claim is that the City Defendants (three officials and the City itself) violated the Plaintiffs' rights.

The Plaintiffs have failed to allege any policy or custom of the City which resulted in the alleged specious stops of McCullough or Floyd. Nor have the Plaintiffs alleged facts that would support a custom. *See Pierre v. City of Miramar, Florida, Inc.,* No. 13–10668, 2013 WL 4750080, at *4 (11th Cir.2013) (holding that plaintiff's complaint failed to state a claim because although he alleged the *existence* of a municipal policy, he failed to identify any "*facts supporting the existence* of the[ ] purported City policies") (emphasis added)).

Where an individual supervisory officer or official is alleged to have been responsible for an arresting officer's conduct, the Plaintiff has to show either personal participation or that their actions had some causal connection to the alleged violation of Plaintiffs' constitutional rights. *Harper*, 592 F.3d at 1236. The causal connection prong of the supervisory liability inquiry can be

shown in three ways: "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone,* 326 F.3d at 1360–61. Here, there is no allegation that Finley, Murphy or Strange were personally involved in the arrest, and the Plaintiffs have pointed to no policy or custom which would give rise to liability for either of the three in connection with the allegedly fabricated traffic stops. Nor are there factual allegations other than of a purely conclusory nature that would support the conclusion that the Mayor, Finley or Murphy were on notice due to a history of widespread abuse or that either of them directed subordinates to violate any of the Plaintiffs' rights or knew of the violated and failed to stop them.

Moreover, even if there were a policy or procedure (of the City) or evidence of a casual connection linking the individual City Defendants (Murphy, Finley and Strange) to the alleged violations, the Plaintiffs would further have to have alleged some facts to show that stops were driven by discriminatory intent based on race to state a claim for their Equal Protection claim to survive this motion to dismiss, and they have stated no such facts. The Plaintiffs' own complaint suggests that whites are in fact stopped in Montgomery without probable cause. In fact, the only allegation in the complaint that no probable cause existed relates to the white plaintiff. At Paragraph 129 of the Complaint, Plaintiff Scott alleges that the officer asked to see her license without probable cause merely because she walked outside of her apartment. Because Scott is white, however, this allegation does not serve to provide any factual support for an allegation that African Americans are being targeted by the police and subjected to stops without probable cause.

Rather, it serves to undermine the claim of racial profiling as it is inconsistent with the conclusory claims that African-Americans are stopped where whites would not be.

Even the allegation that people in the courtroom in Montgomery Municipal Court were ninety percent African American on a particular day is not evidence of an unconstitutional policy or practice of the City of Montgomery, or some casual connection to wrongdoing that could implicate Murphy, Finley or Strange in any constitutional violation.

Racially disparate impact, if any actually exists, is not sufficient to show an Equal Protection violation or discriminatory intent. *See, e.g. Washington v. Davis,* 426 U.S. 229 (1976); *Pers. Admin. of Mass. v. Feeney,* 442 U.S. 256 (1979); *Harris v. McRae,* 448 U.S. 297, 324 N.26 (1980). Moreover, many explanations other than the one proffered here, *i.e.*, that more African Americans are stopped by police can explain the presence of more African-American's in the Municipal Court. First, most traffic tickets are designated as scheduled fines and can be paid by mail or at the window of the Municipal Court. Only those individuals with scheduled offenses who are not able to pay in full at the window have to appear before the Court. *See* Rule 20, Ala. R. Jud. P.; Municipal Code, City of Montgomery § 17-19.[1] Moreover, tickets for driving with a suspended or revoked license or driving without a valid license are not scheduled fines, and when one is ticketed for those offenses, the defendant is required to appear in Court. *Id.* Failing to have a valid driver's license could well be correlated with financial constraints which might preclude the payment of traffic tickets that lead to the suspension of a driver's license. In other words, there are reasons, not related to racially discriminatory traffic stops, for the appearance of proportionately more African American defendants in the Municipal Court.

---

[1]https://www.municode.com/library/al/montgomery/codes/code_of_ordinances?nodeId=COOR_CH17MUCO

To conclude that City officials should have concluded that selective enforcement was at work merely because of the population appearing in Municipal Court would be like saying that Alabama Power's CEO could determine the racial makeup of its customers based on the population of customers who pay their power bill in person at the company's downtown address or by statistics showing those who are behind on the payments.

In Paragraph 155, the Plaintiffs contend that they all believe that they would not have been stopped if they were not African American.  This is exactly the kind of conclusory and self-serving allegation that *Twombly/Iqbal* does not countenance.  *See, e.g., Nelson v. Karihs,* 2012 WL 1435634 at 3-4 (holding in a racial profiling case that "purely subjective feeling" … "cannot operate as plausible factual allegation").

### 3.  DUE PROCESS CLAIMS

For whatever reason, the Plaintiffs have alleged in connection with the alleged racial profiling claims that their due process rights have been violated.  The Due Process Clause does not appear to come into play in connection with racial profiling/selective enforcement or searches and seizures.  *See, e.g., Whren v. U.S.*, 517 U.S. 806, 813 (1996) (rejecting the Fourth Amendment as a basis for racial profiling and holding that the Equal Protection clause is the appropriate claim).  Thus, the Due Process aspect of Count One is due to be dismissed.

### 4.  FOURTH AMENDMENT

To the extent that the Plaintiffs have alleged that the City Defendants or any one of them has violated their Fourth Amendment rights, they have likewise failed to state a claim.  None of the Plaintiffs have alleged (except perhaps Floyd and Scott (the white Plaintiff)) that he or she was pulled over without having violated some traffic rule or another.  While the Plaintiffs might take issue with laws that prohibit cracked taillights or obstructed windshields or even laws that require

14

seatbelts (Pars. 42 and 181), they cannot contend that an officer who pulls someone over for the violation of those laws lacks probable cause to do so given state and local traffic laws in place as to each. At the very least, Plaintiffs would have to plead that no such traffic law exists. *Whren* at 810 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause and believe that a traffic violation has occurred."). Moreover, the Supreme Court has made it clear that the law officer's *subjective* reason or ulterior motive in pulling someone over is not material to a Fourth Amendment claim. *Whren,* 517 U.S. at 808-13. Finally, the Supreme Court has ruled that the Fourth Amendment is not the appropriate vehicle for a claim of selective enforcement of the law; the proper vehicle is the Equal Protection Clause. *Id.* at 813. Thus, Plaintiffs who allege discriminatory stops as the basis for the alleged violation, fail to state a claim under the Fourth Amendment.

Finally, even if the Fourth Amendment had been violated by any individual police officer with respect to any of these Plaintiffs (it has not), the Plaintiffs have not alleged any policy or practice of the City or casual connection to the individual City Defendants that could arguably have resulted in the alleged Fourth Amendment violation.

There were two Plaintiffs who were not stopped pursuant to a traffic violation. Floyd takes great issue with the fact that though he was in the vicinity of a crime scene, the police officer had no business stopping him or questioning him about a bank robbery. However, Floyd himself alleges that he was coming out of a bank in downtown Montgomery (Water Street) at the time. The bank robbery had occurred in downtown Montgomery (Madison Avenue). Floyd alleges that the banks were less than a mile apart. (Pars. 112-13). All that Floyd says in connection with his allegation that the stop was fabricated is that "Floyd never heard anything further about such robbery having taken place." However, he does not say: (1) that there was no call at that time to

the police in connection with an alleged bank robbery or (2) that there was no suspect that fit his description.  Without alleging with some factual basis that the aforementioned were *not* true, Floyd has no grounds for contending that his stop and the officer's frisk were lacking in probable cause and were, thus, a violation of the Fourth Amendment.  Nor was he alleged any fact that would establish or suggest a causal connection implicating the individual City Defendants or a policy or practice of the City itself.

For the foregoing reasons, both the Fourteenth Amendment and Fourth Amendment claims pled in this Complaint are due to be dismissed for failure to state a claim and for failure to comply with the pleading requirements of *Twombly* and *Iqbal*.

## B. COUNT ONE IS DUE TO BE DISMISSED ON GROUNDS OF QUALIFIED IMMUNITY AS TO FINLEY, MURPHY, AND STRANGE

The Plaintiffs' constitutional claims also fail as a matter of law because Chief of Police Ernest N. Finley, Former Chief of Police Kevin Murphy, and Mayor Todd Strange are entitled to qualified immunity.  "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "In order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian,* 939 F.2d 1479, 1487 (11th Cir. 1991)).

While it is arguably clearly established that stopping a defendant based on his or her race , or without probable cause, is unconstitutional, in this case, because the allegations are so vague, as explained in detail earlier, they are simply not factually sufficient to establish that either of the

three individual defendants charged in this Count (Strange, Finley or Murphy) intentionally discriminated on the basis of race in violation of the Equal Protection Clause or violated any individual's Fourth Amendment rights.  In other words, the defendants are entitled to qualified immunity because the allegations, so lacking in any factual detail, do not state a clearly-established constitutional violation.  *See, e.g., Iqbal* at 678 (applying the *Twombly* standard in the qualified immunity context to the individual government officials named as defendants).  (As noted above, due process is not a valid basis upon which to make a claim for racially discriminatory law enforcement or search and seizure violations.)

### C.    PLAINTIFFS' § 1981 CLAIMS ARE ALSO DUE TO BE DISMISSED

Plaintiffs, in their most recent complaint, add § 42 U.S.C. 1981 as a basis for their claim. The same arguments set out above apply to any such claim as each claim requires a showing of discriminatory intent.  *See, e.g., Rutstein v. Avis Rent A-Car Sys., Inc.,* 211 F.3d 1228, 1235 (11th Cir. 2000).  In addition, the Eleventh Circuit has held that a person bringing a § 1981 claim must also prove *Monell* liability, *see Busby v. City of Orlando,* 931 F.2d 764, 771 U.S. (11th Cir. 1991), and § 1981 provides no broader remedy against a state actor.  Thus, all arguments made previously support dismissal of all § 1981 claims raised in Count I.

### D.    PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF ARE ALSO DUE TO BE DISMISSED FOR LACK OF STANDING.

Plaintiffs seek injunctive relief in connection with Count One.  To have standing for injunctive relief, Plaintiffs "must show a sufficient likelihood that [they] will be affected by the allegedly unlawful conduct in the future." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004).  "The mere occurrence of a past injury is not sufficient to support an inference of standing to seek prospective relief for future injuries."  *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or

controversy involving injunctive relief").  Several federal cases have held consistently that the threat of a future arrest or imprisonment is not sufficient to confer standing.  *See, e.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 102-102 (1983) (injury must be immediate, cannot be speculative; the mere assertion that one may be subject to an unconstitutional police policy in the future does not generally give rise to standing for injunctive relief).  Thus, Plaintiffs lack standing to seek injunctive relief as to Count I.

IV.   **COUNT II ALLEGES VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C § 2000(D), ET SEQ. AGAINST THE CITY OF MONTGOMERY BASED ON ALLEGATIONS OF RACIALLY DISCRIMINATORY POLICE STOPS AND ARRESTS.**

A.   **COUNT II IS DUE TO BE DISMISSED FOR FAILURE TO MEET THE PLEADING REQUIREMENTS SET OUT IN *TWOMBLY* AND *IQBAL*.**

Count II is based on the same allegations of racially discriminatory policing that are the basis for Count I but is raised solely against the City of Montgomery. As explained in connection with Count I above, the allegations relative to racially discriminatory policing in this Complaint are naked allegations, at best.  They lack the factual enhancements necessary to create "facial plausibility," and, thus, do not meet the pleading requirements of *Twombly* and *Iqbal*.

There is notably one difference between an action brought under Title VI alleging racial discrimination and one brought under Section 1983.  While both require proof of intentional discrimination, the Eleventh Circuit has held that intentional discrimination under Title VI can be proven through a showing of deliberate indifference just as it may be in the Title IX context.  *See Liese v. Indian River Co. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012).   Disparate impact, however, is insufficient to establish a Title VI violation.  *See, Alexander v. Sandoval,* 532 U.S. 275, 282-283, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). The deliberate indifference standard requires that a plaintiff prove two elements: "(1) *knowledge* that a federally protected right is

substantially likely to be violated ..., and (2) *failure to act* despite that knowledge." *Id.* at 265. Furthermore, "[c]onstructive knowledge is not sufficient; 'only actual knowledge is a predicate to liability.' " *Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 666 (2d Cir. 2012)); *see also Jalen Z. v. Sch. Dist. of Philadelphia*, No. CIV.A. 13-4654, 2015 WL 2343690, at *17 (E.D. Pa. May 15, 2015). Deliberate indifference is a "stringent standard of fault ... for which even heightened negligence will not suffice." *Plinton v. Cnty. of Summit,* 540 F.3d 459, 465 (6th Cir. 2008) (quoting *Bd. of Cnty. Commr's of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (internal quotations omitted)).

Here, there is no factual allegation other than Plaintiff's conclusory assertions that City officials had knowledge that individuals were being discriminated against based on race in connection with traffic stops or other stops.  There is no allegation of a policy or practice of basing stops on racial characteristics, nor is there alleged knowledge on the part of the City or its officials that individual police officers were using race as a basis for stopping people for traffic infractions. As explained in the previous section, the mere fact that the nine of the Plaintiffs were African-American and stopped for traffic infractions is simply not evidence that similarly situated non-African-Americans would not have been stopped under the same circumstances.  Likewise, the racial makeup of those attending Municipal Court is not evidence of discriminatory law enforcement.

### B.    TO THE EXTENT THAT PLAINTIFFS SEEK INJUNCTIVE RELIEF AS TO COUNT II, THAT RELIEF SHOULD BE DISMISSED.

For the reasons argued above relative to Count One, the Plaintiffs lack standing to seek injunctive relief in connection with the allegations made in Count Two.  Thus, their request for injunctive relief as to Count Two must be dismissed on additional and independent grounds.

## V.    COUNT III ALLEGING THAT THE CITY DEFENDANTS AND HAYES VIOLATED PLAINTIFFS' FOURTH AND FOURTEENTH AMENDMENT RIGHTS BY SERVING WARRANTS BASED SOLELY ON NONPAYMENT OF MONETARY DEBTS IS DUE TO BE DISMISSED

Plaintiffs allege that the City Defendants and Hayes have violated their Fourth and Fourteenth Amendment rights by issuing warrants based solely on nonpayment of debts, Defendants assert that the warrants which resulted in their arrests were based, not on failure to pay, but on failure to appear in court, which Plaintiffs do not contend is unconstitutional.

### A.    THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST JUDGE HAYES ARE DUE TO BE DISMISSED ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY

Plaintiffs' claims in Count III against Judge Hayes are due to be dismissed as a matter of law pursuant to the doctrine of judicial immunity.  The United States Supreme Court declared that judicial immunity exists so that, "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequence to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1872).  The U.S. Supreme Court developed a two-pronged test for judicial immunity.  The first prong of the test is whether the judge dealt with the plaintiff in his judicial capacity.  *Stump v. Sparkman*, 435 U.S. 349 (1978).  The second prong of the test requires the court to determine whether the judge acted in the "clear absence of all jurisdiction." *Id*. at 357 (quoting *Bradley*, 89 U.S. at 351); accord: *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000).  If these two prongs are met, "immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin* at *id.*, citing *Stump*, 435 U.S. at 356.

20

The issuance of arrest warrants was within Judge Hayes' judicial capacity and a judicial function.[2]  In *Woodard v. Town of Oakman*, 885 F.Supp. 2d 1216 (N.D. Ala. 2012), the municipal court magistrate issued an arrest warrant for interference with governmental operations.  The plaintiff in that case contended that the arrest warrant was issued as retaliation against him for exercising his First Amendment rights.  The United States District Court dismissed the claim holding that the magistrate judge did not act in clear absence of his jurisdiction by issuing the arrest warrant.  *Id.* at 1231.  Here, Plaintiffs allege that Judge Hayes conduct violates their Fourth and Fourteenth Amendment rights for issuing warrants for nonpayment of monetary debts (he did not).  However, even if he had done so, Judge Hayes was acting in a judicial capacity and this was not a case where the judge was acting in a clear absence of jurisdiction.  *See, Stump* at 357.  The individuals were all defendants in the Montgomery Municipal Court subject to his jurisdiction.  Even if the judge erred as a matter of law or acted maliciously in issuing the warrants (he did not), he is entitled to judicial immunity.  *Id.* at 356.  Therefore, Plaintiffs have failed to state viable claims against Judge Hayes.

**B.      THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST POLICE CHIEF ERNEST FINLEY, FORMER POLICE CHIEF KEVIN MURPHY, AND MAYOR TODD STRANGE ARE DUE TO BE DISMISSED ON GROUNDS OF QUALIFIED IMMUNITY.**

---

[2] *See, e.g.,* Ala. Code 1975 § 11-45-9.1 (h) (giving municipal courts authority to issue warrants for failure to appear in cases involving merely a summons and complaint); Ala. R. Crim. P. 3.1 (requiring arrest warrant upon showing of probable cause or indictment); *see also* Ala. R. Cr. P. Form 55 (noting that failure to appear for contempt citation will result in arrest warrant); *see* Ala. Code 1975 § 45-2A-31 (recall warrant fee law recognizing the existence of failure to appear warrants in connection with violation of municipal ordinances); Ala. Code 1975 § 45-11A-50 (same); Ala. Code 1975 § 45-2A-136 (same); Ala. Code 1975 § 45-37A-512 (same); Ala. Code 1975 § 45-2A-161 (same); Rule 70A, Ala. R. Civ. P. (arrest warrants may be issued in connection with failure to appear at contempt hearing); *see also Ex parte City of Tuskegee*, 932 So. 2d 895 (Ala. 2005) (recognizing the practice of municipal court in the issuance "failure to appear" or "capias" warrants where defendant fails to appear in court on criminal charge); Ala. Code 1975 § 12-22-222(c) (requiring arrest for failure to appear in appellate context); Ala. R. Cr. P. 7.2, Committee Comments to Amendment to Rule 7.2 effective April 1, 1995 (recognizing arrests for failure to appear for those who make bond but subsequently fail to appear).  *See also Woodard v. Town of Oakman*, 885 F.Supp. 2d 1216 (N.D. Ala. 2012) (issuing arrest warrants is a judicial power delegated to a magistrate).

An official, acting within his discretionary function, is immune from liability when his conduct does not violate a clearly established right of which a reasonable person would have known. *Harlow*, at 818. When police officers act upon an arrest warrant issued by a judge (as was the case in each of these instances), they have no way of knowing that there was any violation of an established right.[3]

Moreover, to allege liability against Defendants Finley and Kevin Murphy, as supervisors of the Montgomery Police Department, Plaintiffs must, because they have not alleged Defendants' personal participation in the alleged acts, establish that, as supervisors, their actions had some causal connection to the alleged violation of Plaintiffs' constitutional rights. *Harper*, 592 F.3d at 1236. The causal connection prong of the supervisory liability inquiry can be shown in three ways: "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone,* 326 F.3d at 1360–61.

There is no assertion in this complaint that would support the finding of a causal connection between an alleged unconstitutional arrest warrant and the Finley, Murphy, or Strange's actions or inactions. Issuing warrants is a judicial function and police officers have no discretion with respect to executing them. *See* Ala. Code § 21-14-4. Moreover, there is no allegation that the warrants

---

[3] *See, e.g., Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) (police officers conducted a search of a home pursuant to an overbroad search warrant issued by a neutral magistrate. The Court held that approval by a neutral magistrate was the clearest indication that the officers acted in an objectively reasonable manner (referencing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). In *Messerschmidt*, the court went on to conclude that the content of the search warrant might itself put the officer on notice of a constitutional violation, but no such warrant existed in these cases.

were, on their face, issued in such a way that the police officers who were under the alleged supervision of Finley, Murphy or Strange would have had any notice that the warrants were issued for failure to pay a fine and costs, if, in fact, they were so issued.  Without some factual basis for alleging that a police officer or his or her supervisor would have been put on notice that these warrants were for anything other than standard failures to appear or other form of a traditional arrest warrant, the Plaintiffs' claims must fail.

### C.    THE FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST THE CITY OF MONTGOMERY ARE ALSO DUE TO BE DISMISSED FOR FAILURE TO ESTABLISH A POLICY OR CUSTOM OF THE CITY.

The City of Montgomery is also due to be dismissed from Count Three.  The issuance of warrants, as noted above, is a judicial function. Municipal judges are explicitly authorized by statute to issue arrest warrants. Ala. Code § 12-14-32.  Likewise, the same code section requires the City police to execute those warrants. Ala. Code § 21-14-4.  While Plaintiffs contend that the City and Municipal Court are intertwined, the reality is that the City and Municipal Court represent separate branches of government and are not lawfully permitted to be intertwined as each must be independent of the other.

Alabama law dictates the separation of the branches of government. Ala. Const. Article 3, Section 43.  Under that doctrine, legislative powers granted to cities and towns are exercised by the city council, Ala. Code § 11-43-43, while the mayor of the city is responsible for executive duties, Ala. Code § 11-43-83.  By contrast, the municipal courts of this state, which are all created by state law (Ala. Code § 12-14-1), are, by law, part of the Unified Judicial System of Alabama. *See* Ala. Code Sec. 12-1-2.  In fact, the Alabama Code establishes that "the judicial power of the state is vested exclusively in [its] unified judicial system." *Id*.  If a city establishes a municipal court, its administration is supervised by the Chief Justice of Alabama, Ala. Code, § 12-2-7, *see*

*also* Ala. Const., Art. 6, Section 139, and its operations are governed by Article 12 Chapter 14 of the State Code.  As enumerated in Ala. Code § 12-14-1(b), "[t]he municipal court shall have jurisdiction of all prosecutions for breach of the ordinances of the municipality within its police jurisdiction." In contrast, a mayor's power with respect to the city court is analogous to that of the Governor's power with respect to state courts: granting pardons and commutations (Ala. Code § 12-14-15).  A city itself has responsibility for the municipal court akin to that of the State's financial responsibility toward the circuit and district courts: (a) to "provide appropriate facilities and necessary supportive personnel" and (b) "furnish prosecutorial services".  Ala. Code § 12-14-2; *see also* Ala. Const., Art. VI., § 145 (municipality responsible for paying for the courts and appointing its judges).

In short, like this state's circuit and district courts and judges, its municipal courts and judges are independent of the executive branch and the legislative branch, even if those branches have some role in the respective courts' operations.   Because municipal courts are part of the Unified Judicial System, if a municipality chooses to establish a municipal court, the municipality or any municipal officials can have no control over the judicial functions of that court.  Rather, Title 12, Chapter 14 of the Alabama Code establishes the powers, duties, and jurisdiction of the municipal courts.  While the Plaintiffs point to city ordinances that relate to the operation of the municipal court [*see* Doc. 32, page 10 at n.13], the ordinances merely track the language of state statutory provisions governing the municipal court.  *See,* Ala. Code, Title 12, Chapter 14.  The Alabama Rules of Judicial Administration further govern the functioning of the municipal courts, and the Canon of Judicial Ethics requires that municipal court judges, like other judges, act independently "and uphold the integrity and independence of the judiciary."  Canon 1, Canon of Judicial Ethics.

Accordingly, the executive and legislative branches are not empowered to question or second-guess the judicial officer's issuance of a warrant. Alabama Code § 21-14-4 provides that "[t]he sheriffs of the counties and law enforcement officers of the municipalities of the State of Alabama shall obey the municipal judge having legal authority in faithfully executing the warrants and processes committed to them for service according to their mandates." Separation of powers would be undermined were the federal court to require the executive branch to question and look behind the municipal court's orders before executing them.[4]

This was the same conclusion reached by the District Court in *Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216 (N.D. Ala. 2012). In that case, as noted elsewhere, the Plaintiffs alleged that an arrest warrant had been issued in contravention of the First Amendment. The Court concluded that the facts supported a finding that the magistrate of the court had taken adverse action based on speech protected by the First Amendment. *Id*. at 1232. However, after analyzing state law and focusing on the fact that state law controlled the functioning of the municipal courts as explained above, the Court concluded that the City could not be held liable for the magistrate's actions because there was nothing to indicate that the City "has control of a magistrate's issuance of an arrest warrant." *Id.*

Thus, the Court's issuance of the arrest warrants at issue in this case is not a policy or practice of the City of Montgomery. The Judge of the Municipal Court is not a policy-maker for the City, but an independent judicial officer of the Unified Judicial System of Alabama subject to the rules and regulations created by, and the oversight of, the state legislature, the Alabama Supreme Court, the Judicial Inquiry Commission, and the Administrative Office of Courts. And

---

[4] And, as noted earlier, there is no allegation that any warrant issued stated on its face that the arrest was for nothing more than unpaid debts and, in fact, that was not the case.

the City police in executing the municipal court's arrest warrants cannot have established a policy and practice with respect thereto because they do not have the discretion to do otherwise.

In fact, the Complaint must be dismissed on two, independent grounds, first for failing to state a claim against the City and second for failing to plead facts sufficient to satisfy the pleading requirements of *Twombly/Iqbal* to establish that the arrest warrants at issue are the policy and practice of the City.

### D. TO THE EXTENT PLAINTIFFS SEEK INJUNCTIVE RELIEF IN CONNECTION WITH COUNT III, IT IS DUE TO BE DISMISSED ON MOOTNESS AND STANDING GROUNDS.

For the reasons set forth above relative to injunctive relief and Counts I and II, injunctive relief is likewise due to be dismissed as to Count III. The Plaintiffs lack standing due to the speculative nature of any future arrests. The only difference here might be the argument that some plaintiffs still have outstanding fines and costs but there do not appear to be such allegations. Furthermore, the order and Judicial procedures in place as a result of the settlement in *Mitchell v. City of Montgomery* (*see* Case 2:14-cv-00186-MHT-CSC, Docs. 51 & 51.1) moot any issues related to arrests made in connection with court defendants who owe fines and costs.

### VI. COUNT IV, ALLEGING THAT THE CITY DEFENDANTS AND HAYES VIOLATED THE EIGHTH AMENDMENT, EQUAL PROTECTION AND DUE PROCESS CLAUSES THROUGH USE OF A FIXED BAIL SYSTEM, IS DUE TO BE DISMISSED.

### A. COUNT IV IS DUE TO BE DISMISSED AS TO POLICE CHIEF ERNEST FINLEY AND FORMER CHIEF OF POLICE KEVIN MURPHY ON QUALIFIED-IMMUNITY GROUNDS.[5]

Defendants Finley, Murphy and Strange are entitled to qualified immunity for this count. If there is no personal participation of the defendant, an official may only be liable in a supervisory

---

[5] Judge Hayes also seeks to be dismissed on Qualified Immunity grounds but is entitled to absolute judicial immunity as well. This footnote exists to avoid waiving his right to qualified immunity on the ground that it is not clearly established that the use of a bail schedule violates the Eighth or Fourteenth Amendments.

capacity if the plaintiff establishes one of three sets of facts:  "(1) there was a history of widespread abuse that would put the supervisor on notice of constitutional violations; (2) that the supervisor imposed a custom or policy resulting in deliberate indifference to constitutional rights; or (3) that the supervisor directed the subordinates to act unlawfully or knew they would act unlawfully and failed to stop them from doing so." *Colburn v. Huddleston,* 2015 WL 1494554 *8 (N. D. Ala. March 30, 2015).

In *Colburn,* the plaintiffs sued the sheriff and his deputy for violating their Fourth Amendment rights in connection with the failure of the same to release them on an appearance bond after a magistrate failed to hold a probable cause hearing within 48 hours.  *Co. of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991), requires a probable cause hearing to be held within forty-eight hours of being placed in custody where arrests are made without warrants.  Rule 4.3 of Alabama's Rules of Criminal Procedure requires that criminal defendants be released from custody if no probable cause hearing is held within 48 hours.

The Court's analysis has such a direct bearing on this case that it is quoted here at some length:

> [A]n arresting officer and county sheriff cannot be expected to review the performance of a court official and determine when and if that neutral court official complies with the Rules of Criminal Procedure. Once the magistrate set the bonds for Cassels, Colburn, Elliott, and Rhodes, law enforcement did not have the authority to release them from detention without the judicially-set bond amount first being posted. Furthermore, even if the Defendants had some duty to recognize a failure by the judicial officer and override the bond set by the magistrate, that duty was not clearly established.
>
> … If law enforcement is permitted to decide when a judicial officer has correctly fulfilled his or her responsibilities, such law enforcement officers could also decide that a bond is not high enough or a release order is not appropriate. This could easily lead to a system of justice with only one branch—the executive branch—thus nullifying the courts' important role.

*Colburn v. Huddleston*, No. 6:14-CV-01942-LSC, 2015 WL 1494554, at *4-5 (N.D. Ala. Mar. 30, 2015). The Court went on to hold that, as a result of the fact that the judicial officers had the legal duty to hold the probable cause hearing, both the supervisory officer (the sheriff) and the arresting officer (the deputy) were entitled to qualified immunity. *Id.*[6]

The same reasoning applies with even more force in this case. The claims in the instant case are not based on the Fourth Amendment and the clearly established probable cause standards. Rather, the Plaintiffs contend that the use of the bail schedule in this case violated the Eighth Amendment, and both the Due Process and Equal Protection Clauses. First, there have been no cases, and certainly no cases binding on the Eleventh Circuit, holding that the use of a bail schedule (what plaintiffs call a fixed-bail system) are per se unconstitutional under either the Eighth Amendment or the Due Process or Equal Protection clauses. In fact, the Eleventh Circuit precedent in *Pugh v. Rainwater* made it clear that bail schedules are permissible in this Circuit. "Utilization of a master bond schedule provides speedy and convenient release for those who have no difficulty meeting its requirements." *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978). As a result of this reasoning, the Court declined to hold bond schedules unconstitutional. And the Sixth Circuit has addressed the issue of bond schedules more recently in the context of the Eighth Amendment:

> The bond schedule represents an assessment of what bail amount would ensure the appearance of the average defendant facing such a charge. The schedules are therefore aimed at assuring the presence of a defendant. *See id.* ("[T]he fixing of bail for any individual defendant must be based upon *standards relevant* to the purpose of assuring the presence of that defendant." (emphasis added)). Thus, the mere use of a schedule does not itself pose a constitutional problem under the Eighth Amendment. *See, e.g., Glenn v. City of Columbus,* 75 Fed.Appx. 983 (5th Cir. 2003) (citing *Pugh,* 572 F.2d at 1057); *see also Terrell v. City of El Paso,* 481 F.Supp. 2d 757, 766 (W.D. Tex. 2007) (reporting that "exhaustive research" of challenges to bond schedules under § 1983 yielded no cases where a bond schedule was found unconstitutional under the Excessive Bail Clause).").

---

[6] The reasoning above applies with equal force not just to the bail bond context but to several other claims filed in this lawsuit in which the Plaintiffs contend that the executive branch officials had the power and the duty to overrule and look behind the municipal court's actions.

In summary, not only was it not the duty of the Mayor, or of either the former or current police chief of Montgomery, to go behind the municipal court judges to determine whether their use and implementation of a bail bond schedule was constitutional, *see Colburn*, *supra* (requiring law enforcement to question bond settings "could easily lead to a system of justice with only one branch"), but, even if these executive branch officers had such a duty, the use of a fixed-sum bail schedule is not unconstitutional and thus it was not clearly established that the executive branch officers, in complying with the order of the judicial branch regarding the use of a bond schedule, would have violated any defendant's constitutional rights.   Therefore, Plaintiffs' claim against the Defendants Finley, Murphy, and Strange fail as a matter of law because they are each entitled to qualified immunity.

### B.    THE CLAIMS IN COUNT IV AGAINST CHIEF JUDGE HAYES ARE DUE TO BE DISMISSED ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY

Judge Hayes has judicial immunity against Plaintiffs' claims regarding the bail schedule. State law gives Judge Hayes the authority to set bail in municipal court systems.  Ala. Code § 12-14-5 states:

> Municipal judges shall admit to bail any person charged with violation of any municipal ordinance by requiring an appearance bond with good security, to be approved by the respective municipal judges or their designees, in an amount not to exceed $1,000.00, and may, in their discretion, admit to bail such person on a personal recognizance bond, such bonds to be conditioned on the appearance of such person before the judge on a day named therein to answer the charges preferred against him.

In setting bail, Defendant Hayes was acting in his judicial capacity which satisfies the first prong of the *Stump* test, discussed above.  Second, municipal judges are solely vested with setting bail (as outlined in Ala. Code § 12-14-5), so it is clearly within Defendant Hayes' jurisdiction.  With

both prongs of the *Stump* test being met, Defendant Hayes is entitled to judicial immunity with respect to Count IV, and the Plaintiffs' claims are due to be dismissed as a matter of law.

### C.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF AS TO THE USE OF A FIXED BAIL SCHEDULE ARE MOOT.

The injunctive and declaratory relief claimed by Plaintiffs against the City of Montgomery is moot with regards to the use of a fixed bail schedule.  Attached hereto as **Exhibit 1** is a general order which was implemented (wholly independent of the filing of this lawsuit) by the Presiding Judge of the Municipal Court of Montgomery.  Because arrestees are all being released on unsecured bonds[7] issued within two hours of his or her arrest, any claim that Plaintiffs in this case have with respect to the use of a fixed bail schedule have been mooted.  The standing order in the Montgomery case is for all material purposes the same as the bail order recently approved by this Court in *Jones v. City of Clanton*, United States District Court, Northern District of Alabama, Case No.: 2:15-cv-34-MHT, *see* Docs. 71 et al.

In addition, for the same reasons that Plaintiffs lack standing to seek injunctive relief as to Counts One, Two, and Three, they lack standing to do so with respect to Count Four as well.  As with Count Three, Court Four is also moot due to the recent changes implemented by the municipal court judges.

### D.   COUNT IV IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY FOR FAILURE OF THE PLAINTIFFS TO SHOW A MUNICIPAL POLICY OR PRACTICE.

Finally, Count IV is due to be dismissed against the City because the Plaintiffs have failed to establish that the City controls the municipal court's judicial acts.  As shown above, the setting of bail is a purely judicial act, by statute, for which the City itself has no responsibility, and, over

---

[7] Under the Court's standing order, cash-or-property based bonds are only being used in connection with those who are a flight risk, as evidenced by prior failures to appear.  None of the plaintiffs in this case appear to have alleged that they have failed to appear within the relevant period.

which, it has no control.  For that reason, the bail schedule, which by law, was fully within the province of the municipal court cannot have been a policy or practice of the municipality.  As stated in *Grech v. Clayton Co., Ga.*, 335 F.3d 1326, 1331 (11th Cir. 2003), "local governments … can never be liable under Sec. 1983 for acts of those [officials] whom the government has no authority to control."  *See also Town of Oakman* at 1231 (holding the City had no control over the court magistrate's issuance of arrest warrant).

Nor have the Plaintiffs sufficiently pled, as required by *Twombly* and *Iqbal* any plausible factual allegations which could give rise to a finding of municipal policy or practice with respect to the setting of bonds.  The mere compliance by Montgomery's executive branch officials with a court order from a valid judicial officer, as discussed elsewhere in this brief, does not give rise to municipal or supervisory policy or practice. *See, e.g., Colburn, supra,* & *Woodard v. Town of Oakman*, *supra*.

## VII.  COUNT V ALLEGING VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENT IN CONNECTION WITH THE INCARCERATION OF THE PLAINTIFFS FOR NONPAYMENT OF DEBTS IS DUE TO BE DISMISSED

### A.  THE PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO SHOW THAT THE COURT'S FAILURE MEANINGFULLY TO INQUIRE INTO THE PLAINTIFFS' ABILITY TO PAY WAS A POLICY OR CUSTOM OF THE  CITY OF MONTGOMERY

The Plaintiffs' claims against the City of Montgomery must be dismissed as a matter of law.  A municipality cannot be liable for the conduct of officials over which it has no authority to control.  *See Grech v. Clayton County, Ga.*, 335 F.3d 1326 (11th Cir. 2003) (holding that the sheriff was not a county policymaker for his law enforcement conduct and policies regarding warrant information on state computer systems or training and supervision of his employees in that regard), *see also Town of Oakman, supra* (in the context of arrest warrants), *Colburn, supra,* (analogues reasoning regarding executive branch officials).

As explained in earlier sections of the brief, the City of Montgomery cannot control the conduct of the municipal judge.  In light of the state law giving the municipal court judge jurisdiction over all prosecutions brought before him and further precluding the City through separation of powers requirements from controlling the municipal court's judicial actions and the judge's ethical duties to be independent, the Plaintiffs have not alleged (and cannot allege) sufficient facts to support the proposition that the City of Montgomery had control over the municipal court with respect to its inquiry into indigence prior to incarceration.  Therefore, the Plaintiffs have failed to state a plausible claim of action against the City.

**B.     COUNT V IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY**

Judge Hayes is entitled to absolute judicial immunity as to Count V and its allegation that he failed sufficiently to inquire into the ability of defendants' to pay prior to incarceration.  As mentioned earlier, there is a two-prong test for judicial immunity.  The first prong of the test was whether the judge dealt with the plaintiff in his judicial capacity.  *Stump*, at 362.  The second prong of the test was whether Judge Hayes acted in his judicial capacity and not in the absence of all jurisdiction, and, if these two prongs are met, immunity applies even if a judge's actions were in *error or malicious*.  *Id.* at 356-57 (emphasis added).  Even in holding the allegations of Plaintiffs' Complaint as true, based upon *Stump*, Judge Hayes is entitled to judicial immunity for this count.  In conducting the hearing prior to sentencing the Plaintiffs (or any of them) to jail time, Judge Hayes dealt with the Plaintiffs in his judicial capacity. Even if the Judge did not inquire into Plaintiffs' ability to pay, he is still entitled to judicial immunity.

Furthermore, there is an additional independent ground for dismissing six of the Plaintiffs' claims as to this Count.  Only four of the Plaintiffs have alleged that Judge Hayes had any role in his or her incarceration for failure to pay fines and costs (Mooney, James, Johnson, and

McCullough).  For that reason, the claims against him are due to be dismissed as to the remaining Plaintiffs on this count on that independent ground.

**C.    THIS COUNT IS DUE TO BE DISMISSED AS TO FINLEY, MURPHY AND STRANGE AS WELL AS ON GROUNDS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM FOR SUPERVISORY IMMUNITY.**

As noted elsewhere, Finley, Murphy and Strange are entitled to qualified immunity where the violations of constitutional law alleged are not clearly established.  In this case, as noted elsewhere, the three individual City Defendants were not directly involved in the events in question here and there is no allegation to that effect.  Thus, the Plaintiffs must prove their case based on supervisory liability.  Each of the three possible methods for proving supervisory liability available to the Plaintiffs requires that the supervisor actually have control over the alleged wrongdoer. *See, Harper, supra* (causal connection may be based on supervisor's custom or policy, his direction of subordinates or failure to stop them).  The Plaintiffs' claims necessarily fail because neither Mayor Strange, Chief Finley nor Chief Murphy had supervisory authority or control over the municipal court judge's actions nor could they have.  Nor is there any factual allegation to support such a contention in the Complaint.  Given that none of the individual City Defendants had any control over the municipal court judge's handling of these Plaintiffs' cases, neither Strange, Finley nor Murphy may be held liable under Section 1983. *See, e.g., Grech*, *supra, Town of Oakman* (for the proposition of control as it relates to municipal or county liability).  Additionally, therefore, they are entitled to qualified immunity and dismissal pursuant to *Twombly/Iqbal*.

**VIII.   COUNT VI ALLEGING VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENT FOR FAILURE TO APPOINT COUNCIL AGAINST THE CITY OF MONTGOMERY AND JUDGE HAYES IS DUE TO BE DISMISSED**

**A.    COUNT VI IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY FOR FAILURE TO ALLEGE SUFFICIENT FACTUAL ALLEGATIONS TO ESTABLISH THAT THE FAILURE TO APPOINT**

**COUNSEL WAS A POLICY OR PRACTICE OF THE CITY OF MONTGOMERY**

As articulated in Defendants' response to Count V, the City of Montgomery cannot be liable for the actions of municipal court judges. Due to the separation of powers, the judicial canon requiring judges to be independent decision-makers, and the statutory scheme pursuant to which the municipal courts have been established the judges of the municipal court cannot be deemed policymakers for the city. In addition, state law makes the appointment of counsel a function of the court. In fact, municipal court judges are provided the sole authority to appoint counsel to indigent defendants. See, e.g., Ala. Code Sec. 15-12-20 (judges are to ascertain whether individual can afford counsel) & 15-12-21 (judges are to appoint counsel to represent the defendant if defendant is entitled to appointed counsel). Thus, the Court's failure to appoint counsel is not a basis for finding liability as to the City of Montgomery. The sole responsibility of the City of Montgomery in connection with providing representation to indigent defendants is in the funding of counsel for indigent defendants, Ala. Code Sec. 12-14-9, and Plaintiffs have not alleged that Montgomery had a policy of failing to fund an indigent defense service. Rather, the allegations establish only that defendants were not informed of their right to counsel. *See, e.g.,* Par. 75 ("at no time was [Plaintiff] … informed… of any …rights to meaningful access to counsel") (Caldwell's individual allegations). Clearly the municipal court, not the City, had the duty to do so. Therefore, the City of Montgomery is entitled to the dismissal of Plaintiffs' claims against it for this count.

**B.   COUNT VI IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY**

As addressed above in Count V, in connection with the allegation that Judge Hayes incarcerated them without appointing adequate counsel, Judge Hayes dealt with the Plaintiffs in his judicial capacity, which satisfies the first prong of *Stump*. Judge Hayes satisfies the second

prong of *Stump* because he did not act in clear absence of his jurisdiction.  In construing Plaintiffs'

allegations most favorable to them, judicial immunity still effectively bars Plaintiffs' claim even

if Judge Hayes acted erroneously by imprisoning Plaintiffs for their inability to pay debts or failing

to appoint counsel to represent Plaintiffs.  225 F.3d at 1239 (judicial immunity applies even if "the

judge's acts are in error, malicious or in excess of his or her jurisdiction").

IX.    **COUNT VII, ON BEHALF OF PLAINTIFFS MCCULLOUGH, JOHNSON, JONES, EDWARDS, AGEE, AND MOONEY WHICH ALLEGES THAT ALL DEFENDANTS VIOLATED THE THIRTEENTH AMENDMENT AND FEDERAL ANTI-PEONAGE LAWS, IS DUE TO BE DISMISSED**

    A.    **COUNT VII IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY.**

Judicial immunity applies to Judge Hayes for Plaintiffs' allegation that he violated their

Thirteenth Amendment rights.  To the extent that providing the Plaintiffs the opportunity to work

off part of their fines while in jail was part of any judicial action, Judge Hayes is entitled to judicial

immunity.  Plaintiffs have not alleged that Defendant Hayes has done anything extra-judicially in

connection with the option given to prisoners to work in order to reduce their fines.  Since Judge

Hayes, to the extent that he had any involvement in the reduction of Plaintiffs' sentences in

connection with working while in jail, was acting within his jurisdiction, he meets the requirements

as set forth in *Stump* for absolute judicial immunity.   This count is, therefore, due to be dismissed

as to Judge Hayes.

    B.    **COUNT VII IS DUE TO BE DISMISSED AS TO POLICE CHIEF ERNEST FINLEY, FORMER CHIEF OF POLICE KEVIN MURPHY, AND MAYOR TODD STRANGE ON QUALIFIED-IMMUNITY GROUNDS.**

Defendants Finley, Murphy and Strange are entitled to qualified immunity in connection

with this count.  As mentioned earlier, there must be an allegation of Defendants' personal

participation, or there must be a showing of a causal connection related to the alleged violation of

constitutional rights to establish supervisory liability.  *See Harper,* 592 F.3d at 1236.  The Plaintiffs

must also allege the violation of a clearly-established right to overcome qualified immunity.  *See*

*Harlow, supra* at 818.  To prove a violation under the Thirteenth Amendment, one must show that

the Plaintiffs were subjected to involuntary servitude or slavery.  *Watson v. Graves*, 909 F.2d 1549

(5th Cir. 1990).  "Involuntary servitude is defined as an action by the master causing the servant

to have, or to believe he has, no way to avoid continued service or confinement."  *Id.* at 1552

(quoting *United States v. Shackney*, 333 F.2d 475, 486 (2d Cir. 1964) (internal quotations

omitted)).  When a person has a choice, no matter how painful that choice may be, there is no

constitutional violation for involuntary servitude.  *See Brooks v. George County, Miss.*, 84 F.3d

157, 163 (5th Cir. 1996).

In *Watson*, two jail inmates requested to work outside of jail on work release.  The court

held that the inmates made the choice voluntarily and therefore presented no Thirteenth

Amendment claim.  *Watson* at 1552-53.  In that case, the Fifth Circuit panel noted that an inmate

working outside the jail for prorate employers would be paid $20.00 a day regardless of the "nature

of the work performed."  *Id.* at 1551.  Sometimes inmates worked a construction job for twelve

hour shifts for that amount.  *Id.*  The court held that "[t]he choice of whether to work outside the

jail for twenty dollars a day or remain inside the jail and earn mothing may have been 'painful'

and quite possibly illegal under state law, but the evidence shows that neither *Watson* nor *Thrash*

was forced to work or continued to work against his will."  *Id.*  at 1552 and 1553.  Similarly, the

decision to work while in jail in order to reduce the amount of a fine or even jail time is a voluntary

decision and thus *not* involuntary servitude and not therefore a violation of the Thirteenth

Amendment.  Because Plaintiffs have not alleged (and certainly not with any factual basis) that

they lacked a choice as to working in jail, the Plaintiffs have failed to allege the violation of a

clearly established right, much less the individual Defendants' personal participation therein or any causal connection related thereto. *See Harper*, *supra.* Likewise, Plaintiffs have failed to satisfy the pleading requirements of *Twombly/Iqbal* in those respects.

The Plaintiffs own pleadings reveal the voluntary nature of the jail work. Plaintiffs McCullough, Johnson, Jones, Edwards, Mooney and Agee allege that their Thirteenth Amendment rights were violated because they had to 'volunteer' to labor while they were in jail. (Compl. ¶¶ 223). Plaintiffs' allegations are true, in that, they volunteered to labor in order to reduce their time in jail. A prisoner cannot claim that he was unlawfully coerced to work in violation of the Thirteenth Amendment when he received a benefit for the work done and made the voluntary choice to work even if the choice is a "painful" one. *See also, Brooks v. George County, Miss.*, 84 F.3d 157 (5th Cir. 1996) (pretrial detainee presented no claim for involuntary servitude in violation of the Thirteenth Amendment when detainee requested to serve as a trusty in order to leave jail). As established in the case law, it does not matter how painful the choice not to work may have been as long as some choice existed no involuntary servitude claim survives. *See Brooks* at 163. Moreover, aside from conclusory language in individual allegations in the complaint that some of the plaintiffs were "forced" to do the labor there is no factual allegation to "amplify" that contention. *See* ¶74 (McCullough), ¶84 (Johnson), ¶94 (Jones), ¶99 (Edwards), ¶150 (Mooney), ¶107 (Agee). In fact, the mere fact that only six of the ten Plaintiffs make any allegation that they performed any jail labor further undermines Plaintiffs' contention that it was not voluntary.

The Montgomery jail work program could also be analogized to community service programs which require labor of their participants as punishment for a crime. Such programs clearly exist in large number and are not considered unconstitutional. Adding a community service element to a jail sentence, particularly as an *option* for an earlier release provides a benefit to the

37

incarcerated person.  Thus, providing the opportunity for a person to labor while in prison to reduce their fine is likewise constitutional.

Plaintiffs allege in addition to the Thirteenth Amendment several federal anti-peonage laws, 18 § U.S.C. 1581, 1589(a) and (b), 1593A, and 1595. Because cases construing those laws define peonage consistent with the Fifth Circuit's definition of involuntary servitude *Watson v. Graves, supra*, the Plaintiffs have likewise failed to state a cause of action against the Defendants in connection with those statutory provisions.  *See, e.g., Taylor v. Georgia*, 315 U.S. 25 (1942) ("peonage" is a form of "involuntary servitude" within the meaning of the Thirteenth Amendment); *see also U.S. v. Kozminski*, 487 US 931 (1988) (anti-peonage laws to be construed in a way consistent with the Thirteenth Amendment).

## X.    COUNT VIII, ALLEGING ON BEHALF OF PLAINTIFFS MCCULLOUGH, JOHNSON, JONES, AGEE, AND CALDWELL VIOLATIONS OF THE FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES FOR PLACING PEOPLE WHO CANNOT PAY THEIR FEES IN FULL ON PROBATION IS DUE TO BE DISMISSED

### A.    MCCULLOUGH AND JONES' CLAIMS ARE DUE TO BE DISMISSED BECAUSE EVEN ASSUMING THAT THE CLAIM ALLEGED STATES A CONSTITUTIONAL VIOLATION, THEIR CLAIMS WOULD BE TIME-BARRED.

The only Plaintiffs to allege any participation at all with probation or JCS are:

- McCullough (Par. 74, alleging involvement in 2009 with JCS resulting in an alleged incarceration ending in 2010);
- Johnson (Par. 79 alleging release from jail on January 28, 2013 in connection with her alleged JCS-related incarceration);
- Jones (Pars. 91-93, in connection with his 2011 incarceration); and
- Caldwell (Par. 129, in connection with a 2014 arrest).

Plaintiffs McCullough and Jones' claims are time-barred because their probation and revocation of that probation clearly ended more than two years before the filing of this litigation and even earlier than any tolling period created by the *Mitchell v. City of Montgomery,* Case No.

2:14-cv-186-MHT, litigation referenced at ¶5 and ¶68 of the Amended Complaint [Doc. 32]. The Mitchell Plaintiffs filed their first class action complaint on May 23, 2014 (Case No. 2:14-cv-186, Doc. 26, Mitchell Class Action Complaint). The Class Action allegations were dismissed on October 31, 2014 (Case No. 2:14-cv-186, Doc. 45 Mitchell –Joint Stipulation of Dismissal). The tolling period created by Mitchell was, therefore, at most, 160 days. The instant lawsuit was filed on July 1, 2015. The two-year statute of limitations without tolling would have run on July 1, 2013. Therefore, the tolling created by Mitchell extended the two-year statute of limitations period to January 21, 2013, 160 days prior to July 1, 2013. Thus, only Johnson and Caldwell have actually pled a claim relative to being placed on probation that is not clearly barred by the statute of limitations.

Agee, though named in this count, does not allege any involvement with JCS or probation in the complaint, and, thus, his claim as to probation must also be dismissed.

**B.    COUNT VIII IS DUE TO BE DISMISSED AS TO JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY.**

Judge Hayes is entitled to judicial immunity in connection with Plaintiffs' allegation that he violated their due process and equal protection rights by threatening to revoke probation of indigent defendants. Judge Hayes' actions in allegedly placing people on probation satisfy the *Stump* test because placing someone on probation is in the sole power of the municipal court and within Judge Hayes' jurisdiction. Ala. Code § 12-14-13.[8]   Even if Judge Hayes' actions were in

---

[8] 12-14-13. Probation.
(a) Municipal courts may suspend execution of sentence and place a defendant on probation for varying periods of time, not to exceed two years.
(b) The court may require such investigations as may be deemed necessary and desirable to be made by a probation officer or such other suitable person or persons as the court may designate as to the circumstances of the offense and the criminal record, social history and present condition of the defendant.
(c) The court may suspend the execution of sentence and continue the defendant under an existing bond or may require such additional bail as it deems necessary pending the disposition of the application for probation.

error in not inquiring into the Plaintiffs' ability to pay fines when he threatened to revoke, or revoked, probation, he is still entitled to immunity against this count. *Stump* at 356.

## C. COUNTY VIII IS DUE TO BE DISMISSED AS TO TODD STRANGE AND THE CITY.

As noted in earlier sections, neither the Mayor nor the City has control over the municipal judges' rulings and nothing alleged in the complaint would support a finding that there is anything different about the municipal court's alleged decisions with respect to probation and/or JCS.

## XI. COUNT IX ALLEGING VIOLATONS OF FOURTEENTH AMENDMENT DUE PROCESS AND EQUAL PROTECTION CLAUSES FOR REQUIRING AN APPEAL BOND ARE DUE TO BE DISMISSED

### A. COUNT IX IS DUE TO BE DISMISSED AGAINST JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY.

Judicial immunity applies to Judge Hayes.  "Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin* at 1239 (citing *Stump* at 356-57).  Ala. Code § 12-14-70(c) vests the municipal court with sole power to set an appeal bond, and Judge Hayes acted within his jurisdiction whenever he sets an individual's bond.  For this reason, Judge Hayes qualifies for absolute judicial immunity under *Stump*.

### B. COUNT IX IS DUE TO BE DISMISSED AGAINST THE CITY OF MONTGOMERY BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT FACTS SHOWING THAT THE COURT'S FAILURE TO INQUIRE INTO ONE'S ABILITY TO PAY AN APPEAL BOND WAS A POLICY OR CUSTOM OF THE CITY OF MONTGOMERY.

---

(d) The court shall determine and may, at any time, modify the conditions of probation and may require the probationer to comply with the following or any other conditions:

    ....

    (7) To pay the fine and costs imposed or such portions thereof as the judge may determine and in such installments as the judge may direct...

This count against the City of Montgomery must be dismissed as a matter of law.  This count fails against the City because the City has no ability or authority to set an appeal bond, even for indigent individuals because that power is reserved to the Court. State law provides the municipal court judge complete jurisdiction over the amount of an appeal bond.  *See* § 12-14-70(c), *supra*.  And, as discussed above, the City of Montgomery cannot control the conduct of the municipal judge.  A municipality cannot be liable for conduct of officials who it has no authority to control. *See, e.g., Grech*, *supra*.  Moreover, separation of powers prevents the City from directing the municipal court judge's actions.  *See* discussion of separation of powers, *supra*. Plaintiffs' claims are therefore due to be dismissed for failure to state a claim, or, at the very least, for failure to state sufficiently detailed factual allegations to satisfy the plausibility standard of *Twombly/Iqbal*.

> **C.    THE CLAIMS AGAINST MAYOR TODD STRANGE IN CONNECTION WITH PLAINTIFFS' APPEAL BONDS ARE DUE TO BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ESTABLISH THE GROUNDS FOR SUPERVISORY LIABILITY AND THE PLEADING REQUIREMENTS OF *TWOMBLY/IQBAL*.**

As stated previously, Mayor Todd Strange cannot be held liable under § 1983 for the judicial acts of the municipal court judges over whom he has no control.  *See* discussion *supra* re: Counts IV through VIII.

**XII.    COUNT XII ALLEGING FALSE IMPRISONMENT AGAINST THE CITY DEFENDANTS AND JUDGE HAYES IS DUE TO DISMISSED**

> **A.    COUNT XII IS DUE TO BE DISMISSED AGAINST JUDGE HAYES ON GROUNDS OF ABSOLUTE JUDICIAL IMMUNITY.**

Judge Hayes is entitled to judicial immunity.  When and if he incarcerated any of the Plaintiffs, Judge Hayes dealt with the Plaintiffs in his judicial capacity.  A judge's jurisdiction must be construed broadly when it concerns judicial immunity.  *Stump* at 356-57.  Incarcerating

someone who has committed a violation of the municipal law is within the Municipal Court's jurisdiction.

Absolute judicial immunity is recognized under Alabama law. Alabama applies judicial immunity to bar actions against municipalities, municipal judges and magistrates as long as a judge is acting within his or her official judicial capacity. *See Ex parte City of Greensboro*, 948 So. 2d 540 (Ala. 2006); *see also Gore v. City of Hoover*, 559 So. 2d 163 (Ala. 1990). Under Alabama state precedent, judicial immunity must be construed broadly. *Ex parte City of Greensboro* at 542.

### B.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR FALSE IMPRISONMENT BECAUSE THEY HAVE FAILED TO ALLEGE THAT THE ARRESTING OFFICERS THEMSELVES ACTUALLY LACKED PROBABLE CAUSE.

In *Rose v. Town of Jackson's Gap*, 952 F.Supp. 757, 766 (M.D. Ala. 1996), the Middle District dismissed on summary judgment a false imprisonment action against a police officer because there was probable cause to make the arrest. The court held that "[i]n making an arrest, 'the only requisite is that at the time the arrest is made, the police officer have probable cause.' *Carruth v. Barker,* 454 So. 2d 539, 540 (Ala. 1984) … '[P]robable cause exists where facts and circumstances, of which the officer has reasonably trustworthy information, are sufficient to lead a reasonable [person] to believe that an offense has, in fact, been committed.' *Id.,* citing *Fennell v. State,* 51 Ala.App. 23, 282 So.2d 373, 378 (Ala.Cr.App.), *cert. denied,* 291 Ala. 778, 282 So.2d 379 (1973)."

For a supervisor to be liable for a false imprisonment made by an employee, the employee himself must be liable. *See, e.g., United Steelworkers of America AFL–CIO–CLC v. O'Neal,* 437 So.2d 101, 103 (Ala.1983) (on a claim directly against an agent, and against the principal solely on the theory of respondeat superior, 'a verdict in favor of the agent works an automatic acquittal of the principal so that [the] verdict against [the principal] must be set aside'). While the Plaintiffs

have alleged that the arresting officers should not have stopped them for minor offenses, the individuals arrested were, even according to their own allegations, all initially stopped based on legitimate traffic offenses, with the exception of perhaps two, Scott and Floyd, who were not driving at the time they were stopped by police.   They were then each arrested based on probable cause because each was subject to an arrest warrant issued by the Municipal Court.  Thus, even if their initial stops were not based on probable cause, their arrests were, in fact, based on probable cause.  *See* discussion *supra* re:  Count III in § V of this brief (issuance of warrants).  The Plaintiffs have not alleged that the warrants, which issued from the Court were invalid on their face or that the police were on notice of their alleged invalidity.

> **C.   TO THE EXTENT THAT PLAINTIFFS CONTEND THAT THE INDIVIDUAL CITY DEFENDANTS HAVE SOME SORT OF RESPONDEAT SUPERIOR LIABILITY IN CONNECTION WITH THE ARREST BECAUSE OF THE DISCRETIONARY STOPS MADE INITIALLY, THE INDIVIDUAL CITY DEFENDANTS ARE ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY IN CONNECTION WITH THE PLAINTIFFS' STATE-LAW CLAIM.**

To the extent that this claim is based on the police's discretion in connection with the initial stop, or if the Plaintiffs allege that the individual City defendants did have any discretion in executing on the arrest warrants, the individuals are entitled to discretionary function immunity. This Court's analysis in *Rose v. Town of Jackson's Gap* establishes that where a police officer exercises discretion in connection with an arrest, he is entitled to state agency, or discretionary function, immunity.

> Moreover, the court notes that because Sanders was acting in a discretionary function at the time he arrested Rose, he may also be protected by the doctrine of substantive immunity. The state of Alabama has long embraced the rule of "substantive immunity" as a matter of public policy.[13] *767 Nunnelee v. City of Decatur,* 643 So. 2d 543 (Ala. 1994); *see Calogrides v. City of Mobile,* 475 So. 2d 560 (1985). Substantive Immunity "shields [city police] officers from liability in the exercise of their discretionary decision-making functions."[14] *Nunnelee,* 643 So.2d at 543. The court has already noted in this opinion that Sanders was behaving

43

well within his discretionary authority when he placed Rose under arrest for disorderly conduct in violation § 13A–11–7 of the Alabama Code (1995), and, therefore, the court finds that Sanders is entitled to substantive immunity against Rose's claims of false imprisonment. *See Lightfoot v. Floyd,* 667 So. 2d 56 (Ala. 1995) (holding that a police investigator detaining plaintiff for questioning was exercising a discretionary function) Accordingly, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's pendent state law claim of false imprisonment against Officer Sanders.

*Rose v. Town of Jackson's Gap*, 952 F. Supp. 757, 766-67 (M.D. Ala. 1996).

## XIII.  <u>PLAINTIFFS' CLAIMS OF INADEQUATE TRAINING OR SUPERVISION ARE DUE TO BE DISMISSED.</u>

Plaintiffs have added every federal count boilerplate language regarding inadequate training and supervision as a grounds for the City's liability and possibly the liability of the individual supervisors made defendants here.  The Plaintiffs have failed to allege sufficient factual detail to support a training or supervision claim as to any of the wrongs alleged in the complaint.

A custom or policy "may include a failure to provide adequate training if the deficiency 'evidences a deliberate indifference to the rights of [the city's] inhabitants.' " *Lewis v. City of W. Palm Beach, Fla.,* 561 F.3d 1288, 1293 (11th Cir.2009) (quoting *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). When a failure to train is at issue, a plaintiff must show " 'that the municipality knew of a need to train ... in a particular area and the municipality made a deliberate choice not to take any action.' " *Gilliam ex rel. Waldroup v. City of Prattville,* 667 F.Supp.2d 1276, 1292 (M.D.Ala.2009), *reversed on other grounds,* 639 F.3d 1041 (11th Cir.2011) (quoting *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998)). This requirement is "intentionally onerous" to avoid permitting a municipality to suffer *respondeat superior* liability. *Gold,* 151 F.3d at 1351 n. 10. Notice may be established in two ways. "First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent." *Lewis,* 561 F.3d at 1293. Second,

"deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious" ("obvious need test"). *Id.*

A § 1983 failure-to-supervise claim is closely akin to a § 1983 failure-to-train claim. A plaintiff may prove that a failure to supervise is a municipal policy or custom by demonstrating that the city's failure "evidenced a 'deliberate indifference' to the right of its inhabitants." *Gold,* 151 F.3d at 1350. Deliberate indifference requires a showing that "the municipality knew of a need to ... supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.*

In limited circumstances, a city also may be held liable on a ratification theory. Support for ratification as a theory of § 1983 municipal liability emanates from dicta in *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), that, "[i]f the authorized policy makers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* at 127, 108 S.Ct. 915. The Eleventh Circuit has explained that § 1983 municipal liability on the basis of ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.,* 294 F.3d 1294, 1297 (11th Cir.2002). "The final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it." *Id.* (citing *Gattis v. Brice,* 136 F.3d 724, 727 (11th Cir.1998) ("A policymaker's approval of an unconstitutional action can constitute unconstitutional county policy only when the policymaker 'approve[s] a subordinate's decision *and the basis for it.*'")).

None of the factual allegations in the complaint suggest a basis for liability for failure to train or supervise.  In this case, there is no factual allegation sufficient to satisfy the pleading requirements of *Iqbal* or, in fact, to otherwise state a claim with respect to any count pled to support knowledge on the City's part (or supervisor's parts) of either a pattern of constitutional violations or a "deliberate choice" not to take action.  Ratification is not alleged.  Thus, the Plaintiffs have failed to meet the "onerous" burden of establishing a claim for failure to train or supervise.

CONCLUSION

Based on the foregoing the Plaintiffs' Complaint is due to be dismissed.

s/ Shannon Holliday
Shannon Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
Joel Caldwell [ASB-4625-Z36E]
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
holliday@copelandfranco.com
segall@copelandfranco.com
caldwell@copelandfranco.com
**Attorneys for Defendants City of Montgomery, Finley, Murphy, Hayes and Strange**

s/ E. Ham Wilson
E. Ham Wilson (ASB-0334-W45E)
Miland F. Simpler, III (ASB-1266-B48M)
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, AL  36109-5413
hwilson@ball-ball.com
**Co-Counsel for Defendant Les Hayes, III**

46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record on this 23rd day of September, 2015.

Michael L. Jackson
Larry S. Logsdon
Wesley K. Winborn
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, Alabama 35253

Martha I. Morgan
8800 Lodge Lane
Cottondale, Alabama  35453

Faya Rose Toure
Henry Sanders
Chestnut, Sanders & Sanders, LLC
One Union Street
P.O. Box 1290
Selma, AL  36702

<u>s/ Shannon L. Holliday</u>
Of Counsel