IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| ANGELA MCCULLOUGH, MARQUITA JOHNSON,  KENNY JONES, ALGI EDWARDS, LEVON AGEE, ADRIAN EDDIE FLOYD, HASSAN CALDWELL, DEVRON JAMES, ASHLEY DAWN SCOTT, and CHRISTOPHER MOONEY, on behalf of themselves, individually, and on behalf of a class of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  2:15-cv-00463-WKW-WC |
| THE CITY OF MONTGOMERY, ALABAMA; EARNEST N. FINLEY, JR., Chief of Police of the City of Montgomery, in his individual capacity; KEVIN MURPHY, former Chief of Police of the City of Montgomery, in his individual capacity; LES HAYES III, Presiding Judge of the Municipal Court of the City of Montgomery, in his individual and official capacities; JUDICIAL CORRECTION SERVICES, INC., a corporation; and TODD STRANGE, Mayor of the City of Montgomery, in his individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# Judicial Corrections Services, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint

# Table of Contents

A.    Count III Should Be Dismissed as to JCS Because the Complaint Does Not Allege JCS Engaged in the Claimed Wrongful Conduct of Issuing and Serving Warrants for an Alleged Improper Reason.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Count V Should Be Dismissed as to JCS Because the Plaintiffs Do Not Allege JCS Put Anyone in Jail and Because JCS Had No Legal Duty or Authority to Make Indigency Determinations.. . . . . . . . 2

C.    Count VII Should Be Dismissed as to JCS Because the Plaintiffs Do Not Allege JCS Forced Plaintiffs to Perform Labor.. . . . . . . . . . . . 4

D.    Count VIII Should Be Dismissed as to JCS Because the Complaint Does Not Allege Facts Establishing JCS Committed an Unlawful Seizure, Engaged in Unequal Treatment of People on Probation Without a Rational Basis, or of a Denied Anyone Constitutionally Adequate Process.. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.    Counts X and XI Are Due To Be Dismissed Because the Actions of JCS Were in Accordance with a Legal Agreement with the City of Montgomery.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

F.    Counts X and XI Are Due To Be Dismissed Because Plaintiffs Failed To Plead Predicate Acts That Support a RICO Claim.. . . . . . . 13

G.    Plaintiffs Failed To State a Claim for False Imprisonment Against JCS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

H.    The Plaintiffs Fail To State a Claim for Money Had and Received.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

I.    The First Amended Complaint Is Due To Be Dismissed Because It Contains "Shotgun" Pleadings That Do Not Meet Federal Pleading Standards.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

J.    The First Amended Complaint Fails to State a Cognizable Claim for Abuse of Process.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

K.    The First Amended Complaint Is Due To Be Dismissed Because JCS Has Quasi-Judicial Immunity.. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

L.    Plaintiffs' Complaint Is Due To Be Dismissed Because This Court
      Lacks Subject-Matter Jurisdiction over This Case Under the
      *Rooker-Feldman* Doctrine and Because It Is an Improper
      Collateral Attack on Judgments in Criminal Cases.. . . . . . . . . . . . . 31

M.    The Court Should Dismiss the Complaint and Not Exercise
      Jurisdiction over the State-Law Claims... . . . . . . . . . . . . . . . . . . . . 34

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Defendant Judicial Correction Services, Inc. ("JCS") hereby moves the Court, in accordance Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Plaintiffs' First Amended Complaint (the "Complaint") (Doc. 32), or certain counts thereof, for failure to state a claim upon which relief may be granted and for lack of subject-matter jurisdiction.

The Complaint includes 9 counts against JCS: 4 constitutional counts, 2 RICO counts, and counts asserting claims for abuse of process, false imprisonment, and money had and received. As shown herein, all of these counts fail to state a claim for which relief may be granted, or this Court lacks subject-matter jurisdiction over the counts (or both). Additionally, JCS adopts and incorporates any arguments made by any other Defendant's motion to dismiss that would also apply to JCS.

## A.   Count III Should Be Dismissed as to JCS Because the Complaint Does Not Allege JCS Engaged in the Claimed Wrongful Conduct of Issuing and Serving Warrants for an Alleged Improper Reason.

Count III of the First Amended Complaint — which asserts a claim titled "Violation of Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 By Policies and Practices of Issuing and Serving Warrants Based Solely on Nonpayment of Monetary Debts" — should be dismissed because there are no allegations that JCS issued or served warrants or committed any unlawful seizure. Not one person is identified as having a warrant for his or her arrest issued or served by JCS. The Fourth Amendment protects "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." No facts alleged in the Complaint relate to an unreasonable search or seizure. JCS does not have the authority to issue any warrants and merely reports to the court on the compliance or noncompliance of those people on probation. The Complaint lumps JCS in with a list of all the Defendants (Doc. 32 at ¶ 192), but does not specify what Plaintiffs are claiming JCS did with respect to warrants. JCS may report to the municipal court the noncompliance of a probationer and a hearing may be set, and if the probationer doesn't appear, the court may issue a warrant, but JCS is not the party issuing or even seeking a warrant, and the acts JCS performs are not sufficient to make a claim against JCS for a violation of the Fourth Amendment. There is no specific allegation that JCS issues, serves, or even applies for warrants. Therefore, Count III should be dismissed as to JCS.

**B.   Count V Should Be Dismissed as to JCS Because the Plaintiffs Do Not Allege JCS Put Anyone in Jail and Because JCS Had No Legal Duty or Authority to Make Indigency Determinations.**

Count V of the First Amended Complaint — which asserts a claim titled "Violations of the Fourteenth Amendment Due Process and Equal Protection Clauses, the Fourth Amendment and 42 U.S.C. § 1983 by Imprisonment for Non-Payment of Debt Without Meaningful Inquiry into Inability to Pay" — should be dismissed because JCS is not alleged to have put anyone in jail and because JCS had no legal duty or authority to make an indigency determination.

There is no allegation, much less a plausible allegation, that JCS actually imprisoned or jailed the Plaintiffs. The Complaint alleges that JCS is a probation service company that "served as a collection agency." (Doc. 32 at ¶ 52.) JCS is without any power or authority to send anyone to jail, and the Complaint does not actually allege that JCS had that authority or that it exercised that authority. Plaintiffs provide no facts to support a claim that JCS violated their Fourth Amendment rights. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." While an arrest and detainment qualifies as a seizure, *Dunaway v. New York*, 442 U.S. 200, 207-208 (1979), no facts alleged in the Complaint relate to an unreasonable search or seizure by JCS. Plaintiffs do not allege that JCS arrested or detained them, much less that JCS arrested or detained them without probable cause. *See id*. (noting that the Fourth Amendment's proscription against unreasonable seizures "usually requires the police to have probable cause or a warrant before making an arrest."). The Complaint fails to state a claim for an unreasonable search or seizure.

Plaintiffs assume, but have not properly pleaded, that JCS had a legal duty to inquire about the indigency of the Plaintiffs. Such a duty does not belong to JCS but to the municipal court. *See* Ala. R. Crim. P. 26.11(g) ("If a defendant fails to pay a fine or restitution as directed, ***the court may inquire*** and cause

an investigation to be made into the defendant's financial, employment, and family standing, and the reasons for nonpayment of the fine and/or restitution, including whether nonpayment of the fine and/or restitution was contumacious or due to indigency." (emphasis added)). Furthermore, in the case cited by Plaintiffs as the basis of their Due Process and Equal Protection claims against Defendants, the U.S. Supreme Court held that "in revocation proceedings for failure to pay a fine or restitution, *a sentencing court must inquire* into the reasons for failure to pay." *Bearden v. Georgia*, 461 U.S. 660, 672 (1983) (emphasis added). JCS's duty under the contract was to seek compliance with the probation orders, provide information to probationers concerning the possible consequences of failing to comply, and reporting to the municipal court when probationers fail to comply. JCS was not authorized to make indigency determinations, nor did it have a duty to inquire about indigency; the court bore those responsibilities. Thus, Plaintiffs have failed to state a claim against JCS in Count V.

### C.   Count VII Should Be Dismissed as to JCS Because the Plaintiffs Do Not Allege JCS Forced Plaintiffs to Perform Labor.

Count VII of the First Amended Complaint — which asserts a claim titled "Thirteenth Amendment and 42 U.S.C. § 1983 and Federal Anti-Peonage Laws (18 U.S.C. §§ 1581, 1589(a) and (b), 1593A, and 1595)" — should be dismissed because Plaintiffs do not sufficiently allege that JCS participated in the terms

of the Plaintiffs' incarceration or the alleged work done by Plaintiffs, or even that JCS had knowledge of that alleged forced work.

The Thirteenth Amendment prohibits slavery and involuntary servitude except as punishment for a crime. In *Bailey v. Alabama*, 219 U.S. 219 (1910), the Supreme Court struck down a statute that made it a crime to refuse to or to fail to perform a service after having obtained money for it and not refunding it. The punishment constituted involuntary servitude in payment of a debt, violating the Thirteenth Amendment. The Court explained: "The state may impose involuntary servitude as a punishment for crime, but it may not compel one man to labor for another in payment of a debt." *Bailey*, 219 U.S. at 244. Thirteenth Amendment protections concern the coercive application of the criminal laws to require persons to work for another against their will. *Id.*

The federal anti-peonage laws were "passed further to implement the Thirteenth Amendment," *U.S. v. Gaskin*, 320 U.S. 527, 528 (1944), but they don't prohibit forced work when a person is incarcerated under a valid judgment and the work is in accordance with prison regulations or state statutes. *See Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) ("[W]here a prisoner is incarcerated pursuant to a presumptively valid judgment and commitment order issued by a court of competent jurisdiction and is forced to work pursuant to prison regulations or state statutes, the thirteenth amendment's prohibition against involuntary servitude is not implicated.").

The Plaintiffs fail to allege how JCS's actions in particular subjected Plaintiff's to "peonage," coerced their labor, or exercised any control over their incarceration. The U.S. Supreme Court has defined "peonage" as "a status or condition of compulsory service, based upon the indebtedness of the peon to the master." *Bailey v. Alabama*, 219 U.S. 219, 242 (1911). JCS merely referred probationers who were noncompliant with their probation orders to the municipal court. Whether those probationers went to jail or what happened in jail was outside the scope of JCS's role, power, and authority, and there are no allegations that JCS had or exercised such power and authority.

Regarding 18 U.S.C. § 1581, Plaintiffs fail to indicate how JCS "held or returned Plaintiffs to a condition of peonage, or arrested them with the intent of placing them in or returning them to a condition of peonage." (Doc. 32 at ¶ 226.) Plaintiffs allege no arrests made by JCS. Not one person is identified as having been arrested by JCS. Further, there are no allegations that JCS itself imprisoned or in any way constrained the Plaintiffs. Instead, JCS is merely alleged to have sought collection of fines and informed Plaintiffs of the consequences of failure to pay.

Plaintiffs allege that "force, threats of force, physical restraint, or threats of physical restraint," "serious harm or threats of serious harm," "abuse or threatened abuse of law or legal process," or a "scheme, plan, or pattern" were used to obtain labor from Plaintiffs in violation of § 1589(a). (Doc. 32 at ¶ 227.)

Plaintiffs further allege that Defendants knowingly participated in a venture to obtain such labor from Plaintiffs in violation of § 1589(b). (Doc. 32 at ¶ 228.) However, Plaintiffs do not allege anywhere in the Complaint that JCS used any force or restraint against Plaintiffs. Instead, Plaintiffs allege that Plaintiffs "were continuously threatened with and/or subjected to probation revocation and incarceration for their debts . . ." and that "JCS threatened to and/or did participate in bringing probation revocation hearings for individuals . . . ." (Doc. 32 at ¶ 53.) These allegations only serve to demonstrate that JCS informed Plaintiffs of the consequences of failure to pay. What Plaintiffs characterize as "threats" were merely assertions of fact by JCS — that failure to pay fines assessed by the court could subject them to probation revocation and potential incarceration. Such "threats" are in no way similar to the types of §1589 convictions upheld by the Eleventh Circuit. *See U.S. v. Bello*, 503 Fed. App'x. 910 (11th Cir. Jan. 17, 2013) (immigrant who recruited two teenage girls to work as nannies convicted for using the girls as domestic slaves); *see also U.S. v. Norris*, 188 Fed. App'x. 822 (11th Cir. June 27, 2006), and *U.S. v. Sims*, 161 Fed. App'x. 849 (11th Cir. Jan. 4, 2006) (upholding convictions for defendant sex traffickers). Furthermore, merely "knowing [that Plaintiffs] would be ordered to again serve time in the Montgomery City Jail" (Doc. 32 at ¶ 54) does not suggest that JCS participated in a scheme to subject Plaintiffs to forced labor.

Plaintiffs further fail to indicate under § 1593A how JCS "benefited [sic]" from the alleged "venture," nor that JCS participated in any such venture. (Doc. 32 at ¶ 229.) The only allegations from Plaintiffs in that regard are that JCS was under contract with the City of Montgomery for probation collection services. (Doc. 32 at ¶¶ 37, 52.) Without demonstrating how JCS participated in such a venture, there is no way that JCS could have benefitted from it. In fact, once a probationer went to jail, that person was no longer on probation, and JCS no longer imposed monthly probation fees. (Doc. 32 at ¶ 53 ("Individuals placed on 'probation' with JCS were required to pay JCS monthly installments on their debts to the City, along with a $10 set-up fee and $40 monthly 'probation fees' to JCS.").)  If anything, it was to JCS's detriment for a probationer to go to jail, and there is no allegation in the Complaint that JCS benefitted from the Plaintiffs or those similarly situated going to jail or by them working while in jail.

Since Plaintiffs have failed to state a claim for JCS's alleged violation of the Thirteenth Amendment or federal anti-peonage laws, § 1595 imposing a civil remedy is inapplicable, and Count VII is due to be dismissed as to JCS.

**D.   Count VIII Should Be Dismissed as to JCS Because the Complaint Does Not Allege Facts Establishing JCS Committed an Unlawful Seizure, Engaged in Unequal Treatment of People on Probation Without a Rational Basis, or of a Denied Anyone Constitutionally Adequate Process.**

Count VIII of the First Amended Complaint — which is titled a claim for "Violations of the Fourteenth Amendment Due Process and Equal Protection Clauses, the Fourth Amendment and 42 U.S.C. § 1983 By Use of Probation and Threat of or Actual Probation Revocation Solely to Collect Fines and Fees from Indigent Individuals" — should be dismissed because JCS did not determine which people were placed on probation, JCS did not revoke probation, and what is characterized as a "threat" is really just advising probationers of the potential consequences of failing to comply with the court's order. None of JCS's activity violated the Due Process Clause or Equal Protection Clause.

As noted in the argument addressed to Counts III and V, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The allegations of the Complaint and Count VIII do not constitute an unreasonable search or seizure by JCS. Plaintiffs do not allege that JCS arrested or detained them, much less that JCS arrested or detained them without probable cause. Instead, Plaintiffs allege that JCS violated their Fourth Amendment rights by "use of probation" and by "threat of or actual probation revocation." There is no Fourth Amendment violation for putting someone on probation, as it does not

qualify as a seizure, but even if it did, there is no allegation that JCS put anyone on probation. The municipal court gave the Plaintiffs the option of probation, and when one of them chose it, the court entered an order putting that person on probation. JCS only supervised the probation. (*See* Doc. 32 at ¶ 236 ("[T]he policy practice or custom . . . was to place persons on 'probation,' under the supervision of Defendant JCS . . . .").) There are allegations concerning the training procedures of JCS (or lack thereof) in Count VIII (Doc. 32 at ¶¶ 237, 238), but these do not constitute searches or seizures prohibited by the Fourth Amendment. The allegations of the Complaint are simply inadequate to state a claim for violation of the Fourth Amendment.

The Complaint also fails to state a claim for violation of the Equal Protection Clause. The Fourteenth Amendment's Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish a claim for equal protection violations, Plaintiffs must demonstrate there was no "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour v. City of Indianapolis*, 132 S. Ct. 2073, 2080 (2012) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)). Additionally, "official action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . .

Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977). A "mere demonstration of inequality is not enough to [to state an equal protection claim]." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1319 (11th Cir. 2006).

The allegations of the Complaint do not even allege that JCS did anything that discriminated or treated people unequally. (Doc. 32 at ¶¶ 236-242.) All JCS was tasked with doing was collecting fines and fees, monitoring compliance with probation orders, and reporting to the court when those on probation were not compliant. All probationers were treated the same. The Complaint does not allege that JCS was involved in determining which people went on probation, so any unequal treatment in that respect (and JCS is not saying there was any such unequal treatment), would not be the conduct of JCS.

A similar analysis applies to the claim of a violation of the Due Process Clause, to the extent that is different from the Fourth Amendment claim and not just invoking the Due Process Clause as incorporating the Fourth Amendment. To establish a claim for violation of procedural due process, the Eleventh Circuit requires "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *See Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The Plaintiffs allege that JCS acted under color of state law to deprive Plaintiffs of their liberty.

However, they fail to allege that the process provided to them by JCS was constitutionally inadequate. Thus, Plaintiffs fail to state a procedural due process claim. JCS was not, and is not alleged in the Complaint, to be holding any hearings or making any determinations without a fair hearing and opportunity to be heard. All JCS is alleged to be doing is to report noncompliance with probation orders to the municipal court a hearing on whether the probation should be revoked. Giving a hearing is due process. JCS is not making any final decisions and is not alleged to be doing so. The Complaint does not state a claim of a denial of due process for JCS simply threatening to report noncompliance with the probation order and referring the issue to the court for a hearing. That is the process that is due. Therefore, Count VIII should be dismissed as to JCS.

## E.  Counts X and XI Are Due To Be Dismissed Because the Actions of JCS Were in Accordance with a Legal Agreement with the City of Montgomery.

In Counts X and XI of their First Amended Complaint, the Plaintiffs lodge RICO claims against JCS by claiming, essentially, that JCS's collection of fees, as ordered by the Montgomery Municipal Court, is "extortion" or a violation of federal anti-peonage laws. According to the Complaint, this "extortion" consisted of charging probationers a set-up fee, a monthly fee, and informing probationers that failure to pay these court-ordered fees could result in jail time. (Doc. 32 at ¶ 254.) In other words, the "extortion" is the collection of fees ordered by the

Montgomery Municipal Court under the lawful agreement between JCS and the City of Montgomery.

Particularly, the "threats" or notices described by the Plaintiffs are normal functions that would be expected from any probation supervision service and were, indeed, required of JCS through its agreement with Montgomery. The contract was set up so that JCS could collect fines levied by the Montgomery Municipal Court, and provide reports to the Montgomery Municipal Court regarding compliance and payment information. Any action against the probationers was and is strictly left to the Montgomery Municipal Court, while that court agreed that, as it is allowed to do under Ala. Code § 12-14-13, it would order probationers to pay set-up and probation fees to cover the costs of their supervision. Instead of attacking the *substance* of JCS's required conduct under the agreement, the Plaintiffs have sought to mischaracterize that required conduct as "extortion." Simply put, JCS did nothing more or different than it was required to do with its agreement with the City of Montgomery.

## F.   Counts X and XI Are Due To Be Dismissed Because Plaintiffs Failed To Plead Predicate Acts That Support a RICO Claim.

Plaintiffs' RICO claims in their First Amended Complaint (Doc. 32) are based upon the premise that Defendants' conduct in completing the requirements of the contract with Montgomery and the orders of the Montgomery Municipal Court was in some way "extortionate," but the

allegations do not establish any of Defendants' conduct that constitutes actionable extortion. Plaintiffs describe JCS's notice to probationers that they need to abide by their court-ordered probation programs as threats. A "threat" that is not "inherently" wrongful cannot establish extortion for RICO purposes unless there is a "wrongful objective," or no lawful claim to the property obtained through the "threat." *United States v. Pendergraft*, 297 F.3d 1198, 1206 (11th Cir. 2002). In order to show a "wrongful objective," a plaintiff must show that a defendant had "no lawful claim to the money sought." *Id.* at 1205. In this case, Defendants had a lawful claim to the money sought: JCS was explicitly allowed to collect the probation fees through the agreement it had with the Montgomery Municipal Court. (*See* Doc. 32, § 38). This agreement was lawful through Montgomery's powers under Ala. Code § 12-14-13.

"Plaintiffs must show a 'direct relation between the injury asserted and the injurious conduct alleged.'" *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1318 (1992)); *see also, Beck v. Prupis*, 162 F.3d 1090, 1095-96 (11th Cir. 1998) ("the racketeering activity must be more than simply the 'but for' cause of the injury; it must also be the proximate cause"). In order for the obtaining of the fees to be wrongful and actionable as extortion, the Plaintiffs must show that the Defendants had no lawful claim to the fees. *See U.S. v. Enmons*, 410 U.S. 396, 400, 93 S.Ct. 1007,

-14-

1009-10 (1973) (stating that an action is "wrongful" under the Hobbs Act only "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property"); *see also*, *O'Malley v. New York City Transit Auth.*, 896 F.2d 704,709 (2nd Cir. 1990) (finding no racketeering activity and noting that a "simple request for money claimed to be due does not, and cannot, fulfill the requirements of an act of extortion; extortion requires that the request be wrongful and unlawful, not simply mistaken."); *Center Cadillac, Inc. v Bank Leumi Trust Co. of New York*, 859 F. Supp. 97, 105 (S.D. N.Y. 1994) ("the use of economic fear as leverage to drive a hard bargain in an ordinary commercial relationship will not support a RICO claim based on extortion").

Additionally, the allegations of damages of paying the fees alleged by Plaintiff are not actionable as "a defendant cannot be found guilty of wrongfully obtaining property through the use of a legitimate economic threat if he has a claim of right to the property." *U.S. v. Sturm*, 870 F.2d 769, 773 (1st Cir. 1989); *see also, U.S. v. Kattar*, 840 F.2d 118, 123 (1st Cir. 1988) ("A threat of economic harm ... is not 'per se' wrongful; a legal right to the funds or property at issue may therefore justify the threat of pecuniary harm, depending on the sort of harm threatened."). A party is entitled to threaten or attempt to do any act that it has a right to do. *Rothman v. Vedder Park Mgmt.*, 912 F.2d 315 (9th Cir. 1990) ("In the words of Justice Holmes, 'As a general rule, even if subject to some

exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences.'").

Because the Complaint alleges that the Plaintiffs were found guilty, were fined by the municipal court, and were ordered to probation, including the payment of probation fees, alleging that payment of the fines and fees owed is not a sufficient allegation of damage to support a claim of extortion or a claim under RICO, and the RICO claims should be dismissed.

Even if Defendants and Montgomery did not have a lawful claim to the money sought, which they did, they still cannot be guilty of extortion because much of the money collected was for the benefit of a government entity. (*See* Doc. 32, ¶ 40) ("The City of Montgomery and Mayor Todd Strange use monies collected from municipal fines, court costs, and other fees **to help finance the City's budget**. The City of Montgomery's 2013 year-end budget reflects $15.9 million as the gross income from fines and forfeitures.") (emphasis added). Montgomery did not make the decision to enter the contract with JCS because it was concerned about JCS's financial gain. (*See id.*). Rather, it intended for the contract with JCS to *benefit the city* when JCS collected fines *and remitted those fines to the municipality* where, without JCS, the city would receive less revenue from legally assessed fines. (*See id.*). "A public official who obtains property on behalf of the government does not commit the offense of extortion, even if the

government does not have a lawful or legal claim to the property." *U.S. v. Peterson*, 544 F. Supp. 2d 1363, 1370 (M.D. Ga. 2008). "The importance of the line between public and private beneficiaries for common law and Hobbs Act extortion is confirmed by our own case law, which is completely barren of an example of extortion under color of official right undertaken for the sole benefit of the Government." *Wilkie v. Robbins*, 551 U.S. 537, 564-65 (2007). Here, JCS and its officers, operating in a quasi-judicial capacity under express authority from the orders of the Montgomery Municipal Court, supervised the probationers on behalf of a government entity. (*See* Doc 32, ¶ 52.) While JCS does not concede that any of the communications it made were wrongful, *even if those communications were wrongful*, they were done in JCS's capacity as a quasi-governmental body collecting money owed to the municipality. *See Wilkie*, 551 U.S. at 539 (holding that extortion by public officials means "the rough equivalent of taking a bribe," not "harm caused by overzealous efforts to obtain property on behalf of the [g]overnment"). Collection of funds for the government, even if collected utilizing wrongful methods, cannot support an extortion claim. *See id.* While Plaintiffs argue that whether the methods were wrongful is a question of fact for a jury, *Wilkie* provides that because the collections were made for the benefit of the government, there is no need for a fact-finder to determine whether or not the methods were wrongful.

While Plaintiffs may argue that some of the funds were kept by JCS and not remitted to the municipality, it cannot be squared with Alabama law allowing municipalities to use private probation services to also say that those private services cannot collect a fee for the services they were hired to carry out on behalf of the governmental entity. *See, e.g., Wilkins v. Dan Haggerty & Assoc., Inc.*, 672 So. 2d 507, 510 (Ala. 1995); *see also* Ala. Code § 12-14-2(a). It does not stand to reason that courts are authorized to engage these private probation services, but the services themselves are not allowed to receive income for performing the collection work. Additionally, the collection of fees by JCS was explicitly authorized in the probation orders issued by the Montgomery Municipal Court. This further supports the fact that all of JCS's collection efforts were for the benefit of a governmental entity; the fees collected allowed JCS to continue providing the infrastructure and manpower used to collect monies owed to the municipality. (*See* Doc 32, ¶ 40.)

Further, even assuming for the sake of argument that Defendants did not have a right to the property, there also are no allegations that the Defendants had *wrongful* intent. Plaintiffs do allege Defendants intended to deprive the Plaintiffs of the money, but the Plaintiffs must plead that "the defendant knew that he was not legally entitled to the property." *See U.S. v. Sturm*, 870 F.2d 769, 774 (1st Cir. 1989) ("We conclude that the term 'wrongful' requires the government to prove, in cases involving extortion based on economic fear, that

the defendant knew that he was not legally entitled to the property that he received. Our conclusion is grounded in the notion, 'universal and persistent in mature systems of law,' that 'an injury can amount to a crime only when inflicted with intention.'"); *see also, O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2nd Cir. 1990) ("extortion requires that the request be wrongful and unlawful, not simply mistaken."). There is no allegation that Defendants had intent to deprive the Plaintiffs of money or property that the Defendants did not believe was legitimately owed by the Plaintiffs.

Much of the Plaintiffs' "wrongful objective" argument is based on the allegation that JCS made no inquiry into probationers ability to pay, collected fines and fees, and informed probationers of what the consequences of not paying court-ordered fines and fees would be. (Doc. 32, ¶¶ 192, 254, 255). In other words, Plaintiffs assume, but have not properly pleaded, that JCS has a legal duty to inquire into the indigency of the Plaintiffs. This Plaintiffs cannot plead such a duty on the part of JCS, as it is the responsibility of the municipal court, not JCS, to inquire about the indigency of probationers *after* they have failed to pay. *See* Ala. R. Crim. P. 26.11(g) (providing that "[i]f a defendant fails to pay a fine or restitution as directed, **the court** may inquire and cause an investigation to be made into the defendant's financial, employment, and family standing, and the reasons for nonpayment of the fine and/or restitution, including whether nonpayment of the fine and/or restitution was contumacious or due to indigency"

(emphasis added)). JCS's duty was to seek compliance with the probation orders, provide information to probationers concerning the possible consequences of failing to comply, and reporting to the court when probationers fail to comply. JCS is not authorized to make indigency determinations — only the court makes those determinations. *See* Ala. R. Crim. P. 26.11(g).

Similarly, Plaintiffs have not stated a claim for a predicate act under the federal anti-peonage laws. As noted above, these laws were "passed further to implement the Thirteenth Amendment and [are] directed at individuals whether or not acting under color of law or ordinance." *U.S. v. Gaskin*, 320 U.S. 527, 528 (1944). The 11th Circuit has held that, "[W]here a prisoner is incarcerated pursuant to a presumptively valid judgment and commitment order issued by a court of competent jurisdiction and is forced to work pursuant to prison regulations or state statutes, the thirteenth amendment's prohibition against involuntary servitude is not implicated." *Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983). In this case, any incarceration occurred by order of the Montgomery Municipal Court (not JCS), a court of competent jurisdiction.

Plaintiffs utterly fail to plead how JCS had any control over anything the Plaintiffs were asked to do after they were incarcerated, and the Complaint fails to allege that JCS required the Plaintiffs to do any work. The U.S. Supreme Court defined "peonage" as "a status or condition of compulsory service, based upon the indebtedness of the peon to the master." *Bailey v. Alabama*, 219 U.S.

219, 242 (1911). However, at no point in the Complaint do the Plaintiffs plead that they were made to work by compulsion *of* JCS because of a debt *to* JCS. JCS had and has utterly no control over what happens to a probationer after he or she is incarcerated by order of the court. Instead, JCS is merely alleged to have sought collection of fines and informed Plaintiffs of the consequences of failure to pay. Plaintiffs' logic is akin to holding an arresting officer liable because a defendant he arrested is later mistreated in prison.

Plaintiffs allege that "force, threats of force, physical restraint, or threats of physical restraint," "serious harm or threats of serious harm," "abuse or threatened abuse of law or legal process," or a "scheme, plan, or pattern" were used to obtain labor by Plaintiffs. (Doc. 32, ¶ 227). Plaintiffs further allege under § 1589(b) that Defendants knowingly participated in a venture to obtain such labor from Plaintiffs. (Doc. 32, ¶ 228). However, Plaintiffs do not allege anywhere in the Complaint that JCS used any force or restraint against Plaintiffs. Instead, Plaintiffs allege that Plaintiffs "were continuously threatened with and/or subjected to probation revocation and incarceration for their debts . . ." and that "JCS threatened to and/or did participate in bringing probation revocation hearings for individuals . . . ." (Doc. 32, ¶ 54). These allegations only serve to demonstrate that JCS informed Plaintiffs of the consequences of failure to pay. What Plaintiffs characterize as "threats" were merely assertions of fact by JCS: that failure to pay fines assessed by the court could subject them to

probation revocation and potential incarceration. Such "threats" are in no way similar to the types of §1589 convictions upheld by the Eleventh Circuit. *See U.S. v. Bello*, 503 Fed. App'x 910 (11th Cir. 2013) (immigrant who recruited two teenage girls to work as nannies convicted for using the girls as domestic slaves); *see also U.S. v. Norris*, 188 Fed. App'x 822 (11th Cir. 2006) and *U.S. v. Sims*, 161 Fed. App'x 849 (11th Cir. 2006) (upholding convictions for defendant sex traffickers). Furthermore, merely "knowing [that Plaintiffs] would be ordered to again serve time in the Montgomery City Jail" (Doc. 32, ¶ 54) does not suggest that JCS participated in, or even knew about, any scheme to subject Plaintiffs to forced labor. Plaintiffs have failed to state a claim for a violation of federal anti-peonage laws, and thus these allegations cannot serve as predicate acts for Plaintiffs' RICO counts.

## G.   Plaintiffs Failed To State a Claim for False Imprisonment Against JCS.

Plaintiffs' claim for false imprisonment against JCS is also due to be dismissed. "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. However, there are no allegations in the Complaint that JCS "unlawful[ly] detained" any of the Plaintiffs. Instead, all of those allegations are addressed to co-Defendants and not JCS. Because there are no allegations that JCS imprisoned anyone they cannot be liable for false imprisonment. *See*

*Byrd v. Jones*, No. 7:14-cv-01469-TMP, 2015 WL 2194697, *20 (N.D. Ala. 2015)

("Although Jones swore out the warrant that lead to the plaintiff's arrest,

neither of the defendant police officers ever physically seized, detained, arrested,

or imprisoned the plaintiff. She was physically arrested by Michigan police on

the basis of the Tuscaloosa County warrant."). Any actions that are alleged

against JCS do not rise to the level of false imprisonment because Plaintiffs do

not plead that JCS *directly* restrained them in any way. *See id.* ("'For there to be

a false imprisonment, there must be some direct restraint of the person[.]'"

(citing *Crutcher v. Wendy's of North Alabama*, 857 So. 2d 82, 92 (Ala.2003))).

JCS also cannot be liable for false imprisonment for reporting that another

person may be guilty of a crime unless it acted in bad faith. *Yabba v. Alabama

Christian Academy,* 823 F. Supp. 2d 1247, 1252 (M.D. Ala. 2011) (holding that

"reporting or requesting a lawful arrest falls short of [supporting a claim for

false imprisonment].")*; Myles v. Screentech, Inc.*, 98 So. 3d 563, 569 (Ala. Civ.

App. 2012). "A person who reports a suspicion that another person may be guilty

of a crime cannot be liable for false imprisonment unless that person has acted

in bad faith, without 'reasonable cause to believe' that the accused is guilty of the

crime." *Id.* (citing *Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 655

(Ala.1996)); *see also Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 962

(Ala.1981) ("If a defendant merely gives the district attorney's office information

regarding an alleged crime, leaving the decision to prosecute entirely to the

uncontrolled discretion of the district attorney, who thereafter makes his own independent investigation and thereupon takes the information before the grand jury which returns indictments against the suspects, the defendant, in a malicious prosecution action, is not regarded as having instigated the criminal proceeding.”). Here, Plaintiffs have not pleaded that JCS acted in bad faith or lacked reasonable basis to believe that the probationers had not complied with their probation orders. (*See* Doc. 32, at ¶ 268). Nor have Plaintiffs pleaded that it was JCS, not the City of Montgomery or any of its agents, who actually made the decision to incarcerate the probationers. This does not support a claim for false imprisonment.

Further, each of the Plaintiffs allege that warrants were issued for their arrests when they were allegedly falsely imprisoned. (*See* Doc. 32, ¶¶ 70, 79, 87, 90, 97, 106, 116, 117, 128, 137, 142, and 146). “The law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person . . . .  Under such circumstances, ‘neither the arrest nor the subsequent imprisonment is ‘false,’ and, as a consequence, the complaining party’s action must be one for malicious prosecution.’” *Ennis v. Beason*, 537 So. 2d 17, 19 (Ala. 1988) (citing *Blake v. Barton Williams*, 361 So. 2d 376, 378 (Ala. Civ. App. 1978)). Because each of the Plaintiffs’ arrests was in accordance with a duly issued warrant, the false imprisonment count is due to be dismissed.

Lastly, JCS's reporting of probationers that failed to pay court-ordered fines and fees is protected by judicial immunity. *See Hughes v. Chesser*, 731 F.2d 1489 (11th Cir. 1984) (holding that probation officer was absolutely immune from liability in connection with the delivery to the court of a court-mandated report, and that "in preparing the report the probation officer acts at the direction of the court"). Similarly, JCS and its employees acted at the discretion of the court when they returned probationers to the court who had failed to pay their ordered fines and fees.

## H.   The Plaintiffs Fail To State a Claim for Money Had and Received.

Plaintiffs' equitable claim for money had and received is also due to be dismissed. First, even if this claim had any substantive merit, which it does not, this Court should, along with the other state-law counts, decline to take jurisdiction over this claim. This is especially true given this Court's limited equitable powers. "Federal courts, being of limited jurisdiction, have less inherent equitable powers than do state courts." *Reynolds v. First Alabama Bank of Montgomery, N.A.*, 471 So. 2d 1238, 1243 (Ala. 1985).

Substantively, Plaintiffs have not stated a claim for money had an received. This equitable action is available only when a defendant has received money that rightfully belongs to the plaintiff through mistake or fraud. *Foshee v. General Telephone Co. of Southeast*, 322 So. 2d 715, 716 (Ala. 1975). While

Plaintiffs plead that the money was paid "because of mistake or other wrongful reasons," they do not actually plead what the "mistake" was. In fact, they cannot do so, as Plaintiffs are aware that the money was paid not by mistake, but pursuant to valid court orders of the Montgomery Municipal Court. As JCS collected the money as ordered by the court, JCS did not participate in any wrongful conduct in the collection of the money. "[T]he remedy of restitution for 'money had and received' also requires a mistake on the part of the donor, or wrongful conduct on the part of the recipient of a benefit." *Jordan v. Mitchell*, 705 So. 2d 453, 460 (Ala. Civ. App. 1997). This claim is due to be dismissed.

## I.   The First Amended Complaint Is Due To Be Dismissed Because It Contains "Shotgun" Pleadings That Do Not Meet Federal Pleading Standards.

All of the counts against JCS, and especially the counts involving constitutional violations (counts III, V, VII, and VIII, are "shotgun" pleadings. In these counts, Plaintiffs allege that most or all of the defendants have violated a bevy of constitutional rights, including Equal Protection and Due Process rights under the Thirteenth and Fourteenth Amendments. Plaintiffs, do not, however, inform the individual Defendants of what each actually did to violate these rights, but instead lump the allegations together and challenge the Defendants to unravel the ball and match up the allegations in the counts with

alleged facts that are also pleaded generally. These lax pleadings have not stated a claim.

> Allegations of constitutional violations have a higher standard than general pleadings. [T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim. Thus, a plaintiff must allege some factual detail as the basis for a § 1983 claim. In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Therefore, in a § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

*Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2009) (citations omitted) (quoting *Iqbal* and *Twombly*). Further, Section "1983 requires proof of an affirmative causal connection between the . . . acts or omissions and the alleged constitutional deprivation." *Holt v. Glenn*, 361 Fed. App'x 75, 77 (11th Cir. 2010) (quoting *Zatter v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)).

Plaintiffs' complaint fails to meet the higher pleading standard set forth in *Keating*, and fails to plead a causal connection between JCS's administration of private probation services and the deprivation of constitutional rights of which the Plaintiffs' complain. This Court should be relieved of "the cumbersome task of sifting through myriad claims, many of which [may be] foreclosed by [various] defenses" when a complaint is a shotgun pleading. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). Therefore, the Complaint is due to be dismissed.

**J.   The First Amended Complaint Fails to State a Cognizable Claim for Abuse of Process.**

To establish a claim of abuse of process, the Plaintiffs must prove: "(1) the existence of an ulterior purpose, (2) a wrongful use of process, and (3) malice." *Cahaba Forests, LLC v. Hay*, 927 F. Supp. 2d 1273, 1291 (M.D. Ala. 2013) (citing *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).) Whereas "[m]alicious prosecution concerns the wrongful *issuance* of process; abuse of process concerns the wrongful *use* of process *after it has been issued*." *Hagood*, 711 So. 2d at 950 (emphasis in original). "As our supreme court has explained, a defendant cannot be liable for the tort of abuse of process 'if the action is confined **to its regular and legitimate function** in relation to the cause of action stated in the complaint.'" *Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1025 (Ala. Civ. App. 1999) (emphasis added). That is, a " defendant cannot be held liable for abuse of process unless he or she somehow acted outside the boundaries of legitimate procedure after the initiation of the proceeding." *Haynes v. Coleman,* 30 So. 3d 420, 426 (Ala. Civ. App. 2009).

The allegations made against the Defendant are all things that are within the law and legitimate procedures. As such, the Plaintiffs have not stated a valid claim for abuse of process. In this case, the "boundaries of legitimate procedure" are governed by the contract that existed between JCS and the City of Montgomery and the court orders issued by the Montgomery Municipal Court

-28-

which JCS followed in the course of its private probation operation. (*See* Doc 32 at ¶ 38) To establish a claim of abuse of process, the Plaintiffs must demonstrate the existence of an ulterior motive, a wrongful use of process, and malice. *Cahaba Forests, LLC v. Hay*, 927 F. Supp. 2d 1273, 1291 (M.D. Ala. 2013). Plaintiffs have failed to show any of these elements.

Plaintiffs allege the "ulterior motive" was to use the probation process to obtain payments from persons who were unable to pay. However, the only "motive" evident from the pleadings is that JCS endeavored to collect the fees and fines it had a duty to collect under the probation orders. None of the Plaintiffs point to specific malicious conduct on the part of JCS or its employees, but instead simply declare that JCS collecting fines and fees as ordered by the court rises to the level of "extortion."

Plaintiffs also fail to allege how JCS's use of process was unlawful. Plaintiffs have not established that JCS used the municipal court's processes to extract any money that the Plaintiffs did not legitimately owe as a result of the probation orders. "[T]he [ulterior motive] must culminate in an actual abuse of the process by perverting it to a use to obtain a result which the process was not intended by law to effect." *Dempsey v. Denman*, 442 So. 2d 63, 65 (Ala. 1983). Here, the only result achieved was the payment by Plaintiffs *as ordered by the municipal court*. No motive is apparent other than that on the face of the probation orders. The claim for abuse of process is due to be dismissed.

## K.   The First Amended Complaint Is Due To Be Dismissed Because JCS Has Quasi-Judicial Immunity.

Through the agreement between JCS and the City of Montgomery, JCS and its employees act as officials of the Montgomery Municipal Court, who are appointed by that court, and who have an integral relationship with the judicial process. JCS is, then, entitled to absolute quasi-judicial immunity. *See Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (holding that non-judicial officials are encompassed by a judge's absolute immunity when their official duties "have an integral relationship with the judicial process"). This absolute immunity is available to the quasi-judicial officers as long as they are acting within the scope of their authority. *See id.* Where a court-appointed non-judicial official is appointed to carry out a court function, and he "carries out faithfully . . . the orders of the appointing judge," he will receive absolute immunity. *See Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 603-04 (11th Cir. 1985) (finding absolute immunity for court-appointed receiver who did not do anything "beyond the scope of the official function of a state court receiver").

In this matter, JCS and its employees simply carried out the functions they were appointed to carry out by the Montgomery Municipal Court in accordance with the agreement between JCS and Montgomery. Collecting fees, giving the court information about probationers, etc., were duly done according to the orders of the Montgomery Municipal Court under the color of right granted to

JCS by that court. Quasi-judicial immunity is available for probation officers when they are "acting at the direction of the court" instead of "acting on their own initiative[.]" *Galvan v. Garmon*, 710 F.2d 214, 215-16 (5th Cir. 1983). Here, everything JCS did, from the collection of fees to the notices given probationers who refused to pay or even show up for probation meetings, was done at the direction of probation orders issued by the Montgomery Municipal Court. (*See, e.g.,* Doc. 32 at ¶ 102.) Plaintiffs have not established any part of that contract or those orders that was not "carried out faithfully" by JCS, and thus JCS are entitled to absolute immunity. *See Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 603-04 (11th Cir. 1985).

JCS and Raymond, then, are absolutely immune from liability for actions taken within the scope of their directions from the Montgomery Municipal Court. Because JCS's actions described in the Complaint (to the extent they were taken at all) were taken within the scope of this direction, the Complaint is due to be dismissed.

**L.   Plaintiffs' Complaint Is Due To Be Dismissed Because This Court Lacks Subject-Matter Jurisdiction over This Case Under the *Rooker-Feldman* Doctrine and Because It Is an Improper Collateral Attack on Judgments in Criminal Cases.**

This Court lacks subject-matter jurisdiction over this action because of the *Rooker-Feldman* doctrine, which provides that "federal courts, other than the United States Supreme Court, have no authority to review the final judgment

of state courts." *Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2002). "The *Rooker-Feldman* doctrine prevents . . . lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commences.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

The Plaintiffs' Complaint essentially asks this Court to invalidate the court orders of the Montgomery Municipal Court. The probation orders underlying this case are final, appealable orders under Alabama law. *See D.A.D.O. v. State*, 57 So. 3d 798, 801 (Ala. Crim. App. 2009). The Plaintiffs cannot skirt *Rooker-Feldman* by alleging the orders were wrongfully procured by an illegal contract: the orders "remain in full force and effect until they are reversed or modified by an *appropriate **state** court*." *Grant v. Countrywide Home Loans, Inc.*, No. 1:08-CV-1547-RWS, 2009 WL 1437566, *4 (N.D. Ga. May 20, 2009) (holding that *Rooker-Feldman* applies even when a plaintiff alleges that a state-court judgment was procured by fraud).

The ultimate goal of the Plaintiffs' suit (besides seeking treble damages from JCS for carrying out quasi-judicial actions in accordance with a lawful agreement with the City of Montgomery), is to invalidate the court orders entered by the Montgomery Municipal Court by having the actions mandated by those orders declared to be unlawful. This action is beyond this Court's

-32-

jurisdiction. This circuit recognized in a case seeking a similar result that "the district court correctly applied the *Rooker-Feldman* doctrine where the plaintiffs were requesting a district court to declare a final state court judgment void." *Hirschhorn v. Ross*, 250 F. App'x 916 (11th Cir. 2007). Even claims that *indirectly* challenge a state court's judgment are barred by *Rooker-Feldman*. *See Goodman* 259 F.3d at 1334 (holding that the district court lacked subject-matter jurisdiction over plaintiffs' § 1983 claim that an employee of Family and Child Services submitted a fraudulent affidavit that led to an adverse court order). All Plaintiffs' claims seek to usurp the state court's judgment through the federal courts, and under *Rooker-Feldman* the Plaintiffs' claims are due to be dismissed.

Similarly, this Court lacks subject-matter jurisdiction because this action is an improper civil proceeding collaterally attacking the judgments in criminal cases. A defendant in a state-court criminal proceeding must challenge allegedly unconstitutional or improper fines or fees within the criminal proceeding or under a petition for postconviction relief under Rule 32 of the Alabama Rules of Criminal Procedure. "Rule 32 applies . . . to a postconviction challenge to a portion of a court cost." *Citizenship Trust v. Keddie-Hill*, 68 So. 3d 99, 105 (Ala. 2011). In *Citizenship Trust*, the plaintiffs brought a proposed class action challenging a $12 fee for a DNA database that was imposed as part of the fine for a traffic citation. The plaintiffs sought injunctive relief, declaratory relief, and refunds of the fees. The trial court entered a preliminary injunction

requiring the defendant to escrow all funds received from the fees paid. On appeal, the Alabama Supreme Court held that "because this is a civil proceeding collaterally attacking the judgments in criminal cases, it falls within the scope of Rule 32, Ala. R. Crim. P." and ordered the trial court to dismiss the case. *Citizenship Trust*, 68 So. 3d at 105-06. Because the present case, just like the civil claims in *Citizenship Trust*, is an attack on fines or fees as part of criminal judgments and orders, it is due to be dismissed for lack of subject-matter jurisdiction.

## M. The Court Should Dismiss the Complaint and Not Exercise Jurisdiction over the State-Law Claims.

Even if the RICO and other federal claims remain, this Court should not exercise jurisdiction over the other state-law claims (False Imprisonment, Abuse of Process, and Money Had and Received). Instead, this Court should abstain from addressing the purely state-law claims asserted against JCS. A federal court may dismiss a case that presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).

The U.S. Supreme Court has recognized that "[u]ltimately what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for

the 'independence of state action,' that the State's interests are paramount and that a dispute would best be adjudicated in a state forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quoting *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943)). As set out above, the Plaintiffs are seeking the interpretation of state laws and statutes with regard to their claims. Those should be adjudicated in a state forum.

## Conclusion

Based on the foregoing, JCS requests that the Court enter an order dismissing all of the Plaintiffs' claims against JCS or all such claims that the Court deems warranted.

Respectfully submitted on September 23, 2015.

 *s/ Larry S. Logsdon*
Larry S. Logsdon (ASB-0832-G69L)
Voice:    (205) 874-0341
Fax:   (205) 874-3241
llogsdon@wallacejordan.com

 *s/ Michael L. Jackson*
Michael L. Jackson (ASB-1143-S75M)
Voice:    (205) 874-0315
Fax:   (205) 874-3251
mjackson@wallacejordan.com

*s/ Wesley K. Winborn*
Wesley K. Winborn (ASB-8938-S66W)
Voice:    (205) 874-0310
Fax:   (205) 874-3276
wwinborn@wallacejordan.com

Attorneys for Defendants Judicial Correction Services, Inc.

Of Counsel:
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, Alabama 35253
(205) 870-0555

## Certificate of Service

I certify that on September 23, 2015, I served a copy of the foregoing motion on all counsel by the Court's CM/ECF electronic-filing system or by United States Mail as follows:

Henry Sanders, Esq.
Faya Rose Toure, Esq.
Chestnut, Sanders & Sanders LLC
PO Box 1290
Selma, AL  36702
gpompey@csspca.com
fayarose@gmail.com

Kimberly Owen Fehl, Esq.
Michael D. Brymer, Esq.
Montgomery City Attorney's Office
PO Box 1111
Montgomery, AL  36101-0111
kfehl@montgomeryal.gov
mbrymer@montgomeryal.gov

Martha Irene Morgan, Esq.
Attorney at Law
8800 Lodge Lane
Cottondale, AL  35453
mimorgan@yahoo.com

Robert D. Segall, Esq.
Shannon Lynn Holliday, Esq.
Joel Thomas Caldwell, Esq.
Copeland Franco Screws & Gill
PO Box 347
Montgomery, AL  36101-0347
segall@copelandfranco.com
holliday@copelandfranco.com
caldwell@copelandfranco.com

Edward Hamilton Wilson Jr., Esq.
Miland Fredrick Simpler III, Esq.
Ball Ball Matthews & Novak PA
PO Box 2148
Montgomery, AL  36102-2148
hwilson@ball-ball.com
msimpler@ball-ball.com

 s/ Michael L. Jackson
Michael L. Jackson
mjackson@wallacejordan.com