**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| ANGELA MCCULLOUGH, MARQUITA JOHNSON, KENNY JONES, ALGI EDWARDS, LEVON AGEE, ADRIAN EDDIE FLOYD, HASSAN CALDWELL DEVRON JAMES, ASHLEY DAWN SCOTT, AND CHRISTOPHER MOONEY, ON BEHALF OF THEMSELVES, INDIVIDUALLY, AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED,  )))))))))))) | |
| Plaintiffs,   ))))) | CASE NO: 2:15-CV-463-WKW<br>CLASS ACTION<br>JURY TRIAL DEMANDED |
| VS.   )) | |
| THE CITY OF MONTGOMERY, ALABAMA; )<br>ERNEST N. FINLEY, JR., CHIEF OF POLICE )<br>OF THE CITY OF MONTGOMERY, IN HIS   )<br>INDIVIDUAL CAPACITY;   )<br>KEVIN MURPHY, FORMER CHIEF OF   )<br>POLICE OF THE CITY OF MONTGOMERY, )<br>IN HIS INDIVIDUAL CAPACITY;   )<br>LES HAYES, III, PRESIDING JUDGE OF THE)<br>MUNICIPAL COURT OF THE CITY OF   )<br>MONTGOMERY, IN HIS INDIVIDUAL AND   )<br>OFFICIAL CAPACITIES; AND JUDICIAL   )<br>CORRECTION SERVICES, INC., A   )<br>CORPORATION; AND TODD STRANGE,   )<br>MAYOR OF THE CITY OF MONTGOMERY, )<br>IN HIS INDIVIDUAL CAPACITY,   )<br>  )<br>Defendants.   ) | |

**PLAINTIFFS' REPLY TO DEFENDANT CITY OF MONTGOMERY'S RESPONSE
(DOC. # 79) TO PLAINTIFFS' NOTICE OF NEW AUTHORITY (DOC. # 78)**

Defendant City of Montgomery has filed a Response to Plaintiffs' filing of a Notice of new supplemental authority in support of their Opposition to Defendants' Motions to Dismiss (Doc. # 57) and Plaintiffs' Motion for Class Certification (Doc. # 63). As explained below, the City erroneously and misleadingly contends that the two filed court decisions from *Walker v. City of Calhoun, Georgia,* No. 4:15-cv-0170-HLM (N.D. Ga. January 28, 2016), should have no bearing on this Court's ruling in the pending matters in this case.

Defendant City of Montgomery erroneously contends that the *Walker* decisions are either incorrect or irrelevant to this case, and that they are "utterly irrelevant" to any issues and claims raised by Plaintiffs in this case other than those related to bail orders and related practices. The *Walker* decision on the Plaintiff's Motion for a Preliminary Injunction (Doc. # 40) does address the unconstitutionality of the City of Calhoun's Municipal Court policies and practices regarding post-arrest bail procedures. However, the Georgia Court's analysis and reasoning concerning Georgia law on municipalities' control and liability with respect to unconstitutional policies and practices regarding post-arrest bail also provide relevant support for the analysis of Plaintiffs' other claims against the City of Montgomery based on its liability for the challenged administrative policies and practices of its municipal court, presiding judge, and police chiefs.

The City of Montgomery specifically addresses the *Walker* Court rulings on: (1) municipal liability, (2) equitable relief – standing and mootness, and (3) class certification.

**Municipal Liability**

The City of Montgomery prides itself on how "painstakingly" it has maintained that municipal court judges in Alabama are state actors/policymakers, "including through its analysis of *McMillian v. Monroe County.,* 520 U.S. 781 (1997)." (Doc. # 79, at 3). Yet however "painstaking" the City proclaims that its efforts on this point may have been as compared to those of the City of Calhoun in *Walker*, it is worth noting that initially the City of Montgomery's motion to dismiss and supporting brief completely overlooked or ignored key authorities. For example, the City of Montgomery did not even cite the *McMillian* decision and was apparently also unaware that the text of the original Judicial Article of the 1901 Alabama Constitution had been replaced by Amendment 328 in 1973. It was not until after Plaintiffs pointed to these authorities in their Response in Opposition to the Motions to Dismiss (Doc. # 57, at 7, 10 n.7) that the City first mentioned and sought to rely upon them in their Reply to this Response (Doc. # 77, at 2, 3 n. 3).

The City's suggestion that, unlike Alabama municipal courts, Georgia municipal courts are not part of that states' judicial branch in some respects is misleading. Similarly to Article VI of the Alabama Constitution of 1901, as amended by Amendment 328, the Georgia Judicial Article includes municipal courts while exempting them from most provisions of the article. *See* Ga. Const., art. VI, sec. I.  Section II of Article VI of the Georgia Constitution provides that all courts are part of a unified judicial system. Accordingly, the official website of the Judicial Council of Georgia lists municipal court judges under its list of Georgia trial courts and includes a separate page on municipal courts which states that they "are only one of seven other courts in Georgia's Judiciary." *See*  http://municipal.georgiacourts.gov (visited February 13, 2016).  As in Alabama, the state's Supreme Court exercises certain rule-making power over municipal courts in Georgia. *See* Uniform Rules, Municipal Courts of the State of Georgia,

**Commented [MM1]:**

www.gasupreme.us/wpcontent/uploads/2015/02/UNIFORM_MUNICIPAL_COURT_RULES_Updted_1_25_13.pdf (visited February 15, 2016). Despite the above aspects of municipal courts in Georgia, the *Walker* Court rightly concluded that a Georgia municipal court is "a very different creature than a superior court, which generally would be considered to be a state entity." (Doc. # 40, at 64). As Plaintiffs have demonstrated, the same is true for Alabama municipal courts and judges as compared to state district courts, regardless of the fact that municipal courts are considered part of Alabama's Unified Judicial System for some purposes. (Doc.# 57, at 4-15).

In any event, state constitutional provisions alone do not and cannot answer the question of whose policymakers the City of Montgomery's municipal court and presiding judge are with respect to the particular administrative functions and policies challenged in this case. As *McMillian* emphasized with respect to Alabama sheriffs, a state's Constitution is only one of the relevant sources for determining whether an officer or entity is determined to be a municipal or state actor in a particular area, or on a particular issue for purposes of Section 1983. As discussed in Plaintiffs Response to Defendant's Motions to Dismiss, other relevant sources for deciding this state law question, include historical development and interpretations of the relevant constitutional provisions, as well as legislation and practice, all also weigh decisively in favor of Plaintiffs' position concerning municipal liability and control in this case. (Doc. # 57, at 9-15).

Also relevant to the questions of municipal control and liability in both *Walker* and this case are the numerous provisions governing municipal courts in Article VI of the City Code of Calhoun and Chapter 17 of the Montgomery Municipal Code, respectively. The City of Montgomery seeks to downplay the significance of its municipal code provisions by pointing out that Montgomery Code provisions track state code provisions. Indeed, the state code provisions themselves flow from or track provisions of the state constitutional judicial article provisions [Commented [MM2]:]

4

which confer broad powers to municipalities over their municipal courts (including the powers to establish, abolish, and reinstate such courts). But these additional legislative and constitutional provisions strengthen rather than weaken Plaintiffs' position in this case.

The correct question is what authority or control the City of Montgomery actually has over its municipal court and presiding judge, whatever the source or sources of this authority. The answer is that the City of Montgomery has extensive express and necessarily implied authority and control--constitutional, statutory and by ordinance—over its municipal court and judges, including the ultimate unrestrained power to create, abolish, and reestablish its municipal court, as well as the power to appoint, to compensate, and to reappoint or refuse to reappoint municipal judges and to appoint and control the duties of its presiding judge and court clerk. *See* (Doc. 57, at 11). Additionally, it is the Mayor of the City of Montgomery who has the power to commute sentences imposed by municipal judges and grant pardons. *See* Montgomery Municipal Code Sec. 17-20.

Given the serious and pervasive nature of the scheme of illegal activity challenged in this case, the City of Montgomery unquestionably had the sole power (and the constitutional obligation) to refuse to reappoint some or all of its judges and even to close down the entire municipal court and transfer its jurisdiction to the state district court if necessary to eliminate the persistent and widespread unconstitutional policies and practices. Indeed, the municipal court in at least one Alabama municipality sued over debtors' prison claims was abolished after the Court in that case concluded that the city's practices could be described as a "judicial extortion racket" and were "disgraceful." *quoting from Burdette v. Town of Harpersville,* Civil Action No.: CV 2010-900183 Shelby County District Court (Order of July 11, 2012).

5

Painstaking as it may have been in asserting otherwise, the City of Montgomery cannot wash its hands of responsibility and liability for the unconstitutional administrative policies and practices of its municipal court or presiding judge (or for any other of its court staff or other agents, including its police chief), by trying to hide behind the robes of its presiding judge and contend that this federal court lacks the power to consider or enjoin critical parts of the City's shamefully unconstitutional scheme. [1]

## EQUITABLE RELIEF

In its Response to Plaintiffs' Notice of New Authority, the City of Montgomery wrongly suggests that a plaintiff must have been in jail at the time a lawsuit was filed to have standing to seek equitable relief for wrongful detention policies. The long-established rule instead requires only that "[i]n a claim for prospective relief, … a plaintiff must show a real and immediate threat of future harm." *Cook v. Bennett,* 792 F.3d 1294, 1298 (11th Cir. 2015); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs here have clearly alleged sufficient facts, including factual allegations that they have continued to be arrested

---

[1] To avoid such an unconscionable result, Plaintiffs have sued Presiding Judge Hayes in both his official and administrative capacities, so that even if the City were to prevail on its denial of liability for any of his administrative policies, which it should not, Plaintiffs still would be entitled to declaratory relief and, if necessary, injunctive relief against him in his official capacity as a state officer. *See* Plaintiffs' First Amended Complaint (Doc.# 32, at 12 n. 14) (noting that "Plaintiffs do sue Presiding Judge Les Hayes, III in both his individual and official capacities to preserve all claims against him, given the City of Montgomery's denial of any responsibility for, or control over, his challenged actions.") and (Doc.# 32, at 13 para. 36) (reiterating that Hayes is sued in both his individual and official capacities and is liable "regardless of whether he is acting as the final policymaker for the City, or acting for some other state governmental entity at the time of his acts or omissions."). None of the Plaintiffs' claims against Defendant Hayes, other than those against him personally for compensatory and punitive damages, are limited to claims against him in his individual capacity. It is notable that Defendant Hayes has filed no motion to dismiss that covers Plaintiffs' alternative claims against him in his official capacity as a state officer.

repeatedly and thus face a real and immediate, not merely conjectural or hypothetical, threat of being subjected to the challenged (or new) bail policies to satisfy the applicable standing requirements for injunctive relief. *See Walker* (Doc.# 41, at 12) ("Given Plaintiff's evidence that he is indigent, it is entirely foreseeable that Plaintiff might be subject to arrest and detention in violation of his rights even under the new Standing Order.").

Contrary to the City's misleading portrayal of the *Walker* case's rulings on mootness, the decisions both strongly support Plaintiffs' contention that their request for equitable relief on the bail claims in Count IV is not mooted by the City's adoption of a new standing order on bail policies and procedures. This new policy (which also suffers from constitutional deficiencies) shortens the time indigent arrestees may be detained to seventy-two hours, while those who are able to pay can obtain immediate release upon paying bond under the same fixed sum bail schedule plaintiffs have challenged, even if they have outstanding warrants for failure to appear within the past two years. In *Walker,* the City of Calhoun had adopted a new standing order on bail policy after the case was filed that shortened the time indigent arrestees could be held in jail to forty-eight hours. The Court found this new policy constitutionally infirm and insufficient to moot Plaintiff's claims for injunctive relief. (Doc. # 40, at 56).

The City also contends that "the *[Walker]* Court erred in its application of the mootness doctrine as applied to government entities, citing a 2004 Eleventh Circuit opinion as support for its contention." (Doc. # 79, at 5). But a close reading of the *Walker* opinions reveals that, whatever language may have been used to describe it, the *Walker* Court directly quoted from and applied the correct current mootness standard applied to government entities by the Eleventh Circuit as recently set out in *Cook v. Bennett,* 792 F.3d at 1299-1300 (11th Cir. 2015) (holding that, even with the presumption due government actors, " [t]he changes in Florida law and in the

7

[school] districts' policies are insufficient to render this case moot, . . . because it is not 'absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur'" as a real possibility remained that school districts could implement policies with effects similar to the law and policies at issue in the lawsuit.)

The City also seeks to distinguish *Walker* because the new bail policy there was adopted approximately 12 weeks after the case was filed rather than approximately six weeks after filing as was the new policy in this case. The City repeats its assertion that the City of Montgomery's new standing order "was not, in fact, entered in response to the filing of the instant case," (Doc. # 79, at 5). Plaintiffs have previously explained why they disagree and question this assertion. Particularly given that the information to prove or rebut this assertion is in Defendants' hands, Plaintiffs at least are entitled to discovery concerning why, how and by whom the new policy was drafted and then adopted. (Doc. # 57, at 54-55). In addition, Plaintiffs strongly disagree with the City's assertion that, based on their own allegations, if any of them were to be arrested going forward, he or she would be released immediately on a signature bond. (Doc. # 79, at 6). Plaintiffs have questioned not only the constitutionality of the new standing order but whether, how, and to what extent it is or will be implemented, particularly in the face of the City's continued failure to admit the unconstitutionality of either its prior or new bail policies or to address how long the new policy may be maintained before being replaced by another standing order that again purports to remedy the City's unconstitutional bail policies in yet unforeseeable ways. (Doc. # 77, at 52-55).

## CLASS CERTIFICATION

The City does not contend that the *Walker* decision granting class certification under Rule 23(b)(2) (Doc. # 41) is "utterly irrelevant" to Plaintiffs' request for class certification for

injunctive and declaratory relief but instead merely repeats its erroneous contention that Plaintiffs lack standing to seek injunctive relief on their bail policy claims. Moreover, even if Plaintiffs did not have standing to seek equitable relief on these or any other claims, which they do, the *Walker* Court's rulings on the requirements common to both Rule 23 (b)(2) and Rule 23 (b)(3) classes (i.e., numerosity, commonality, typicality, and adequacy of representation) are unquestionably relevant to the determination of whether these initial requirements are met for their requests for class certification under Rule 23(b)(3).

Respectfully submitted this 15th day of February, 2016.

_____
FAYA ROSE TOURE (ASB-5931-R78R)
HENRY SANDERS (ASB-6179-A34H)
CHESTNUT, SANDERS & SANDERS, LLC
One Union Street
P.O. Box 1290
Selma, Alabama 36702
Telephone: 334-526-4531
Fax: 334-526-4535
E-mail: fayarose@gmail.com
           gpompey@csspca.com

/S/ Martha I. Morgan
MARTHA I. MORGAN (ASB-3038-A46M)
8800 Lodge Lane
Cottondale, Alabama 35453
Telephone: 205-799-2692
E-mail: mimorgan@yahoo.com

9

**Attorneys for Plaintiffs**

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of Record, on this 15th day of February, 2016.

/s/ Martha I. Morgan

**Of Counsel**