THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANGELA MCCULLOUGH, MARQUITA JOHNSON, KENNY JONES, ALGI EDWARDS, LEVON AGEE, ADRIAN EDDIE FLOYD, HASSAN CALDWELL DEVRON JAMES, ASHLEY DAWN SCOTT, AND CHRISTOPHER MOONEY, ON BEHALF OF THEMSELVES, INDIVIDUALLY, AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) ) | CASE NO: 2:15-CV-463-WKW CLASS ACTION JURY TRIAL DEMANDED |
| VS. | ) ) | |
| THE CITY OF MONTGOMERY, ALABAMA; ERNEST N. FINLEY, JR., CHIEF OF POLICE OF THE CITY OF MONTGOMERY, IN HIS INDIVIDUAL CAPACITY; KEVIN MURPHY, FORMER CHIEF OF POLICE OF THE CITY OF MONTGOMERY, IN HIS INDIVIDUAL CAPACITY; LES HAYES, III, PRESIDING JUDGE OF THE MUNICIPAL COURT OF THE CITY OF MONTGOMERY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; AND JUDICIAL CORRECTION SERVICES, INC., A CORPORATION; AND TODD STRANGE, MAYOR OF THE CITY OF MONTGOMERY, IN HIS INDIVIDUAL CAPACITY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY TO JUDICIAL CORRECTION SERVICES, INC.'S RESPONSE
(Doc. # 81) TO PLAINTIFFS' NOTICE OF NEW AUTHORITY (Doc. # 78)**

Defendant JCS's belated March 9, 2016 Response to Plaintiffs' January 30, 2016 Notice of New Authority says nothing that diminishes the relevance to this case of the two orders from the Northern District of Georgia in *Walker v. City of Calhoun,* No. 4:15-cv-0170-HLM (N.D. Ga. January 28, 2016) that Plaintiffs called attention to in their January Notice. Indeed, JCS's untimely response is helpful to Plaintiffs in some respects.Thus, Plaintiffs have not objected to the delayed filing of this response. Instead, Plaintiffs file this short reply brief to highlight certain points.

The response recently filed by JCS purports to show that the *Walker* opinions are "irrelevant to, or at least distinguishable from, the case at hand." Apparently, JCS is referring here to the claims in this case against it for its role in the challenged "debtors' prison" scheme. The Plaintiff's challenge in *Walker* was to a generic fixed-sum bail policy similar to that challenged in Count IV of Plaintiffs' Amended Complaint (Doc. # 32, at pp. 59-61). Yet the Georgia Court's reasoning, and the long-established United States Supreme Court caselaw relied upon, expressly apply as well to other instances of jailing persons because they cannot pay for their release.

> Certainly, keeping individuals in jail solely because they cannot pay for their release, *whether via fines, fees, or a cash bond*, is impermissible. *Tate v. Short,* 401 U. S. 395, 398 (1971); *Williams v. Illinois,* 399 U.S. 235, 240-41 (1970); *Smith v. Bennett,* 365 U.S. 708, 709 (1961); *Griffin v. Illinois,* 351 U.S. 12, 19 (1956). Any bail or bond scheme that mandates payment of pre-fixed amounts for different offenses to obtain pretrial release, without any consideration of indigence or other factors, violates the Equal Protection Clause.
>
> The Equal Protection Clause of the Fourteenth Amendment generally prohibits "punishing a person for his poverty." *See Bearden v. Georgia,* 461 U.S. 660, 671 (1983). This principle has special implications as it relates to depriving a person of his liberty. . . .
> *Walker,* Doc. # 40 at 48-49 (emphasis added).

The crux of many of the constitutional problems raised by Plaintiffs in this case, including many of those with regard both to bail policies and to policies related to probation and

jailing for non-payment of fines and fees, is that Plaintiffs and other similarly situated individuals have been provided no meaningful opportunity to be heard (and have not been provided adequate representation) with regard to their indigency or ability to pay before being jailed. This problem exists whether individuals are jailed immediately after arrest, after appearing before a judge, or after, and as a consequence of, revocation of probation. No number of verbal or written "warnings" [1] (actually threats) by JCS, or any other defendant(s), informing individuals that they will be jailed if they do not "pay up," unaccompanied by any explanation of individuals' constitutional rights not to be imprisoned for debt without meaningful hearings on their indigency or ability to pay or their rights to adequate access to counsel before and during any such hearings, in any way cures the constitutional infirmities here.

Instead, warnings or threats as to the consequences of failure to pay only worsen the plight of indigent individuals who may then fail to appear in court on tickets or warrants because they understandingly fear (sometimes based as well on their own prior experiences) that they indeed can and will be imprisoned if they are unable to pay. The prospects of being separated from young children; losing drivers' licenses, jobs and homes; being forced to drop out of college; suffering other serious injuries; and thus becoming entrapped in a cycle of poverty,

---

[1] JCS mischaracterizes the nature of the probation process that existed under its contracts with the City of Montgomery, and misconstrues Plaintiffs' factual allegations concerning its role in the challenged "debtors' prison" scheme, when it asserts that the JCS probation process was merely a "warning" process that "resembles" the new bail policy in *Pierce v. City of Velda City,* No. 4:15-cv-570-HEA, 2015 WL 10013006 (E.D. Mo. June 3, 2015) (Doc. # 16).

However inapt the comparison of its process to the new bail policy in *Velda City*, JCS's detailed description of the new policy in *Velda City* is relevant and helpful to Plaintiffs in this case because the policy changes ordered in that case shed light on some of the constitutional infirmities of both the original and new bail policies at issue in Count IV of Plaintiffs' Amended Complaint.

create a climate of fear and mistrust of local courts and law enforcement officials. And once such a climate of fear has been created and takes hold in poor and/or minority communities, it takes time and effort to (re)build positive relationships and help people in these communities to understand and trust that they will not continue to face imprisonment for debt (if, indeed, it is the case that they will not in at least some of the circumstances at issue in this case).

### Conclusion

Based on the foregoing, Plaintiffs again respectfully request that the Court consider the well-reasoned authority cited in their Notice of New Authority in analyzing and resolving the issues related to imprisonment for debt that are raised in this case.

Respectfully submitted this 15th day of March, 2016.

_____
FAYA ROSE TOURE (ASB-5931-R78R)
HENRY SANDERS (ASB-6179-A34H)
CHESTNUT, SANDERS & SANDERS, LLC
One Union Street
P.O. Box 1290
Selma, Alabama 36702
Telephone: 334-526-4531
Fax: 334-526-4535
E-mail: fayarose@gmail.com
gpompey@csspca.com

/S/ Martha I. Morgan
MARTHA I. MORGAN (ASB-3038-A46M)
8800 Lodge Lane
Cottondale, Alabama 35453

Telephone: 205-799-2692

E-mail: mimorgan@yahoo.com

**Attorneys for Plaintiffs**

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of Record, on this 15th day of March, 2016.

/s/ Martha I. Morgan

**Of Counsel**