THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANGELA MCCULLOUGH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 2:15-CV-463-RCL-WC |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF MONTGOMERY, ALABAMA, | ) | |
| et al., | ) | |
| Defendants. | | |

**PLAINTIFFS' RESPONSE TO DEFENDANT THE CITY OF MONTGOMERY'S NOTICE OF FILING SUPPLEMENTAL AUTHORITY**

COME NOW PLAINTIFFS and file this response to Defendant The City of Montgomery's Notice of Filing Supplemental Authority (Doc. 129). The City files as supplemental authority the February 17, 2017 memorandum opinion and order granting summary judgment to the City of Childersburg, Alabama in the case of *Ray v. Judicial Correction Services, Inc., et al.,* United States District Court, Northern District of Alabama, Southern Division, Case No. 2:12-cv-2819-RDP (*Ray).* Defendant contends that, while not binding on this Court, three "holdings" in the *Ray* opinion directly support their motion to dismiss counts in this case "which allege wrongs committed by the judges, clerks or magistrates of the municipal court." (Doc. 129 at 3). However, none of the referenced portions of the *Ray* opinion warrant much less mandate dismissal, in whole or in part, of any of Plaintiffs' claims against the City of Montgomery at this stage of our case.

Despite the many differences in the type and scope of the claims and in the alternative theories of municipal liability between our case and *Ray*,[1] the City points to three parts of the *Ray* opinion that it contends "directly support" its motion for dismissal of Counts 3-9 in this case. The three portions it cites conclude that: (1) The Childersburg municipal judge and magistrates were state, not municipal, policymakers with respect to the challenged actions in that case and the plaintiffs there had not shown that the municipality had nevertheless controlled the challenged actions of its municipal court judge; (2) It was unlikely that any city police officers would be individually liable for executing facially valid municipal court warrants (no officers were named as defendants) and, more consequentially, the plaintiffs had not shown a municipal police policy or custom regarding unlawful warrants, arrests and imprisonment; and (3) The plaintiffs had not shown that the JCS-City contract was a "moving force" behind their alleged unconstitutional violations for purposes of municipal liability.

The *Ray* opinion's first conclusion relates to the status of municipal judges and magistrates under Alabama law for purposes of the analysis of final policymaking authority required by *McMillian v. Monroe County*, 520 U.S. 781 (1997). In its earlier ruling on motions to dismiss in that case (See *Ray*, Order of Sept. 26, 2013 at 13-14), the *Ray* Court had opined that the Alabama Supreme Court rather than the City of Childersburg had authority over the Childersburg Municipal Court. The recent *Ray* opinion goes into greater detail as to why the Court concludes broadly that municipal judges and magistrates are state rather than municipal policymakers under Alabama law. Here, nevertheless, Plaintiffs' analysis of a fuller

---

[1] For example, in *Ray v. JCS,* the Plaintiffs and the statewide classes of persons assigned to JCS whom they seek to represent are limited to persons assigned to JCS probation and their claims appear limited to illegal practices related to JCS contracts with Alabama municipalities. The City of Childersburg was the only municipality sued. The Court has not yet ruled on JCS' motions for summary judgment.

consideration of relevant state law authorities supports a contrary conclusion, as explained in their Joint Response to the Defendants' Motions to Dismiss. (See Doc. 57 at 16-27; 4-15 as numbered in brief).

Whatever the general status of municipal judges as final policymakers under Alabama law in other situations, when acting as presiding municipal judge for the City of Montgomery and establishing the alleged widespread practices, customs and usages having the force of law which constituted key parts of the City's overall extortion scheme challenged in this case, Defendant Hayes was a final policymaker for the municipality rather than the state. As the U.S. Supreme Court cautioned in *McMillian*, the City cannot escape liability by attempting to label Hayes a state policymaker when under Plaintiffs' allegations he clearly made collection and imprisonment policies (that directly contravened controlling state criminal law policies and procedures over which he had no policymaking authority, final or otherwise) for the very purpose of furthering the City's uniquely effective scheme for raising unparalleled amounts of revenue. In *McMillian*, the Court emphasized that, while dependent on an analysis of state law, the question of final policymaking authority is one of federal law:

> Second, our inquiry is dependent on an analysis of state law. Cf. *Jett, supra,* at 737 (" `[W]hether a particular official has "final policymaking authority" is a question of *state law*' " (quoting, with original emphasis, *Praprotnik, supra,* at 123 (plurality opinion))); *Pembaur* v. *Cincinnati,* 475 U.S. 469, 483 (1986) (plurality opinion) (same). *This is not to say that state law can answer the question for us by, for example, simply labeling as a state official an official who clearly makes county policy.* But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law. Cf. *Regents of University of California* v. *Doe*, 519 U. S. ___, ___(slip. op., at 5, n. 5) ("[The] federal question can be answered only after considering the provisions of state law that define the agency's character").

*Id.* (Emphasis added).

The *McMillian* opinion further spoke to the situation is this case as follows:

> The final concern of petitioner and his *amici* is that state and local governments will manipulate the titles of local officials in a blatant effort to shield the local governments from liability. But such efforts are already foreclosed by our decision in *Praprotnik*. See 485 U. S., at 127 (plurality opinion) (*"[E]gregious attempts by local governments to insulate themselves from liability for unconstitutional policies are precluded" by allowing plaintiffs to prove that "a widespread practice" has been established by " `custom or usage' with the force of law"*). . . .

*Id.* (Emphasis added).

Moreover, Plaintiffs' alternative theories for the extension of municipal liability to the alleged unlawful policies or practices of Defendant Hayes are each independently sufficient to state more than plausible claims against the City of Montgomery in this case. (See Doc. 57 at 27-31; 15-19 as numbered in brief.) These theories include (1) liability based on express state law assignment of municipal authority and duties including those regarding the existence of and provision of maintenance, staff and public defenders for the municipal court and (2) liability based on the the City's adoption and/or ratification (not just "toleration") of the challenged policies as city policy as part of its overall extortion scheme. *Id.*

Indeed, given its broad powers and responsibilities regarding the very existence of, as well as the constitutionally adequate functioning, of its municipal court, the City of Montgomery would be a necessary party to redress Plaintiffs' official capacity claims against Hayes. The City would be a necessary party to provide funding needed for implementing declaratory, or if necessary, injunctive relief against Defendant Hayes in his official capacity, even were he found to be a final policymaker for the state with respect to all his challenged policies here.

Next, as to the second and third referenced conclusions from the recent opinion in *Ray*, it is critical and sufficient to note that the opinion is a ruling on motions for summary judgment filed by the City of Childersburg (following lengthy discovery). As such it has little if any

relevance to the pending motions to dismiss in this case (where no discovery yet has been allowed). In the *Ray* opinion, the Court repeatedly prefaces its conclusions with references to the Rule 56 record in that case. For example, with respect to municipal liability for the alleged police department policies or customs on executing arrest warrants (Conclusion 2), the Court states that, "Simply put, the *court cannot discern from the Rule 56 record* any policy or custom by the City to have its police department effectuate a "collection practice" by arresting probationers based on [purportedly unlawful] warrants . . ." *Ray* at 31. (Emphasis added).

Similarly, in ruling that the *Ray* plaintiffs had not shown that the JCS-Childersburg City contract was a "moving force" behind their alleged injuries for purposes of municipal liability (Conclusion 3), the opinion notes that, "[t]he Court recognizes the possibility of some implicit or oral agreement that the Municipal Court would not order JCS to supervise probationers without providing for compensation from probationers. But *the Rule 56 record contains no evidence* of such an agreement. Both Judge Ward and the City's former mayor have denied communicating with JCS before the City entered into the JCS-City Contract…" *Ray* at 33-34 n. 22. (Emphasis added).

Additionally, in further explaining it's conclusions, the *Ray* Court states that "Plaintiffs *have not presented Rule 56 evidence* indicating that a final policymaker for the municipality knew of the alleged unconstitutional conduct by JCS or the Municipal Court when permitting the JCS-City Contract to be renewed or when renewing Judge Ward's contract with the City." *Ray* at 34. (Emphasis added).

Finally, the Seventh Circuit's very recent *en banc* decision in *Glisson v. Indiana Department of Corrections, et al.*, No 15-1419, (7th Cir. February 21, 2017), provides additional well-reasoned analysis relevant to some of the points addressed in the February 17, 2017 *Ray*

5

opinion, as well as to other issues raised in the briefings of the motions to dismiss in this case. In particular, the opinion in *Glisson* supports Plaintiffs' allegations in this case that (1) *Both* the City and JCS are jointly liable for the challenged policies and practices of JCS itself as a private corporation delegated public functions and sued as a joint participant with the municipality under Section 1983, and (2) Apart from the question of whether any JCS employees (had they been sued) might be able to claim any individual immunities under Section 1983, JCS itself is subject to at least the same entity liability rules as the municipality. In *Glisson*, the Court described the standards of corporate liability for private corporations sued as governmental actors under Section 1983 as follows:

> Ever since the Supreme Court decided *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the availability of entity liability under section 1983 has been established. This rule is not limited to municipal corporations, although that was the type of entity involved in *Monell* itself. As we and our sister circuits recognize, a private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities. See, *e.g.*, *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789–90 (7th Cir. 2014); *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408– 09 (2d Cir. 1990); *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (citing cases); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). (We questioned in *Shields* whether private corporations might also be subject to *respondeat superior* liability, unlike their public counterparts, see 746 F.3d at 790– 92, but we have no need in the present case to address that question and we thus leave it for another day.)

*Glisson* at 12.

In *Glisson,* the Court also recognized that an entity might be found liable for acting with "deliberate indifference" even if its individual agents are not.

> It is somewhat unusual to see an Eighth Amendment case relating to medical care in a prison in which the plaintiff does not argue that the individual medical provider was deliberately indifferent to a serious medical need. See *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). But unusual does not mean impossible, and this case well illustrates why an organization might be liable even if its individual agents are not. Without the full picture, each person might think that her decisions were

an appropriate response to a problem; her failure to situate the care within a broader context could be at worst negligent, or even grossly negligent, but not deliberately indifferent. But if institutional policies are themselves deliberately indifferent to the quality of care provided, institutional liability is possible.

*Id.* at 11-12.

The central question is always whether an official policy, however expressed (and we have no reason to think that the list in *Monell* is exclusive), caused the constitutional deprivation. It does not matter if the policy was duly enacted or written down, nor does it matter if the policy counsels aggressive intervention into a particular matter or a hands-off approach. One could easily imagine either kind of strategy for a police department: one department might follow a policy of zero- tolerance for low-level drug activity in a particular area, arresting every small-time seller; while another department might follow a policy of by-passing the lower-level actors in favor of a focus on the kingpins. The hands-off policy is just as much a "policy" as the 100% enforcement policy is.

*Id.* at 13.

Although the "deliberate indifference" standard at issue in *Glisson* was that required for Eight Amendment claims challenging prison medical care, the Court indicated that the same analysis applies to other claims requiring a showing of "deliberate indifference," such as Plaintiffs' failure to train claims in this case.

One does not need to be an expert to know that complex, chronic illness requires comprehensive and coordinated care. In *Harris*, the Court recognized that because it is a "moral certainty" that police officers "will be required to arrest fleeing felons," "the need to train officers in the constitutional limitations on the use of deadly force ... can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights." 489 U.S. at 390 n. 10.

*Id.* at 18-19.

IN CONCLUSION, none of the three referenced portions of the recent *Ray* opinion would warrant much less mandate dismissal, in whole or in part, of any of Plaintiffs' claims against the City of Montgomery at this stage of our case. And the even more recent opinion in

*Glisson* provides additional persuasive support for Plaintiffs' objections to Defendants' motions to dismiss in this case.

        Respectfully submitted,

        s/Martha I. Morgan

        Martha I. Morgan (ASB-3038-A46M)
        8800 Lodge Lane
        Cottondale, Alabama 35453
        Telephone: 205-799-2692
        E-mail: mimorgan@yahoo.com

        Faya Rose Toure (ASB-5931-R787)
        Henry Sanders (ASB-6179-A34H)
        CHESTNUT, SANDERS &
         SANDERS, LLC
        One Union Street
        P.O. Box 1290
        Selma, Alabama 36702
        Telephone: 334-526-4531
        Fax: 334-526-4535
        E-mail: fayarose@gmail.com
              gpompey@csspca.com

        Of Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing on all Defendants or their counsel on this 9th day of March, 2017.

        s/ Martha I. Morgan
        Of Counsel