**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANGELA MCCULLOUGH, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CASE NO: 2:15-CV-463-RCL** |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **THE CITY OF MONTGOMERY, ALABAMA,** | ) | |
| **et al.,** | ) | |

**CORRECTED REPLY BRIEF OF CITY OF MONTGOMERY, STRANGE,**
**FINLEY, MURPHY AND HAYES IN SUPPORT OF MOTION TO STAY**

Defendants City of Montgomery, Murphy, Finley, Strange and Hayes seek a stay of these proceedings pending the appeal of immunity issues.  (Doc. 158). Plaintiffs object to a stay as articulated in their Response to the Defendants' Motion to Stay (Doc. 160).   Plaintiffs concede only that "[a] partial stay of discovery directed to the individual defendants appealing on immunity grounds may be appropriate to the extent their appeals are non-frivolous." Doc. 160 at 2.  In an abundance of caution, the Defendants seeking the stay address each argument raised by Plaintiffs in opposition to the stay.

The Defendants have explained thoroughly that a stay of the entire proceeding is called for because the claims being appealed on immunity grounds are substantially intertwined with (and are in fact the same) claims as those pending against the defendants who have not appealed on immunity grounds.  In Defendants' Motion, Doc. 158 at 4-8 they explain that: (a) Hayes is appealing all claims save one on immunity grounds, (b) that the peonage claim has as its central basis the *Bearden* hearing claim (the central claim in the case) and (c) the false imprisonment state-law claim encompasses virtually all the wrongs underlying the remaining claims in the complaint.

1

Early in their brief Plaintiffs' mischaracterize the holding of *K.M v. Dept. of Youth Services,* 209 F.R.D. 493, 495 (M.D. Ala. 2002), *aff'd* 73 F.App'x 386 (11th Cir. 2003) when they contend that it held that a stay of all proceedings was deemed not equitable in that case.  Doc. 160 at 4.  The *K.M.* court clearly both stayed all proceedings and deemed the stay equitable.  The language on the cited page merely speaks to the *K.M.* Court's decision to permit the parties to take measures to ensure that documents were preserved.  *K.M.* at 496 (determining that a "joint [evidence] 'preservation' plan" would prevent unfair prejudice to the Plaintiffs).

Without truly taking issue with the intertwined nature of the claims, Plaintiffs argue that any stay granted should not extend to injunctive relief.  Doc. 160 at 4.  Specifically, Plaintiffs contend that the stay should not interfere with any temporary restraining order, preliminary injunction or similar relief they might seek.  *See* Doc. 160 at 4.  However, they have yet to seek any such relief notwithstanding the fact that the case has been pending since 2015.  The case law Plaintiffs cite for this proposition, *Summit Medical Assoc. v. James*, 998 F.Supp. 1339, 1350-51 (M.D. Ala.), merely held that there would be no prejudice to plaintiffs in that case – an abortion case – as the Plaintiffs could seek injunctive relief "should any emergency matters arise."  The Plaintiffs here would be hard-pressed at this point to contend that any such immediate, emergency relief is required but certainly the Court could exercise discretion to lift the stay if the need arose as contemplated in *Summit Medical*.[1]

---

[1] The Plaintiffs also cite *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996), presumably as support for their position that the appealing Defendants' claims are not intertwined with the remaining claims. To that end, they cite the phrase: "Qualified immunity is 'a right to immunity from certain claims, not from litigation in general.'"  This quote mischaracterizes the relevant law.  First, the language has nothing to do with when a stay should issue pending appeal.  The quote is taken so far out of context that, in reality, it turns out that the case supports the Defendants' position here.  In *Behrens,* the plaintiff had argued that a defendant could not appeal from the denial of qualified immunity because there were some claims in the case not subject to that defense.  The Supreme Court flatly rejected that argument.  In short, the point of the case and the language quoted by Plaintiffs here

Next, the Plaintiffs argue that absolute judicial immunity can only apply to claims against a judge in his individual capacity Doc. 160 at 6-7. The Plaintiffs seem to confuse Eleventh Amendment immunity (to which the judge is entitled only in his official capacity) with absolute judicial immunity. The Plaintiffs cite no case law holding that judges are not entitled to absolute judicial immunity in their official capacities. Nor could they. The judicial immunity against injunctive relief set out in 42 U.S.C. Sec. 1983 is in no way limited to actions against judges in their individual capacities. In fact, the language in 42 U.S.C. Sec. 1983 precluding injunctive relief against judges would be a nullity if the Plaintiffs' position were true. Pursuant to the Plaintiffs' position, a party could get around the judicial immunity afforded by Sec. 1983 merely by suing a judge in his official capacity. Clearly that was not Congress's intent.

Next, Plaintiffs claim that Judge Hayes' judicial immunity claim is frivolous. They contend that they never claimed that his immunity does not extend to acts taken by him in his judicial capacity and further argue the Court's opinion did not suggest otherwise. Doc. 160 at 7. However, that is exactly what they have claimed and this Court's opinion did suggest otherwise.

---

is that the protection afforded by qualified immunity is so robust that a collateral-order appeal will lie even where there are claims against the appellant that were not subject to dismissal on qualified immunity grounds. Specifically, the Court ruled that the addition of a claim for injunctive relief would *not* undermine an official's right to appeal a claim that was subject to dismissal on qualified immunity grounds:

> Apart from these objections in principle, the practical effect of respondent's proposal would be intolerable. If the district court rules erroneously, the qualified-immunity right not to be subjected to pretrial proceedings will be eliminated, so long as the plaintiff has alleged (with or without evidence to back it up) violation of one "clearly established" right; and both that and the further right not to be subjected to trial itself will be eliminated, so long as the complaint seeks injunctive relief (for which no "clearly established" right need be alleged).

*Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S. Ct. 834, 842, 133 L. Ed. 2d 773 (1996).

This Court's opinion indicated that Judge Hayes was not entitled to judicial immunity notwithstanding the fact that issuing bail orders, holding hearings, issuing arrest warrants, and appointing counsel are all judicial activities.   And this Court arrived at this holding based on allegations in the Complaint that Judge Hayes was allegedly motivated in connection with his judicial actions by a desire to increase municipal revenues.   Doc. 131 at 17 (municipal revenue generations not a function of a judge).

Next the Plaintiffs allege at Doc. 160 at 8 that Hayes' appeal would be frivolous because his immunity was not decided with respect to their official capacity claims.   However, it is very clear that even if the Court has not decided whether Hayes took his actions as a City policy maker or in his official capacity as a state-court official, the Court has concluded that, either way, the judge is *not* entitled to absolute judicial immunity in connection with the claims alleged in the Complaint.    Doc. 131 at 17.   Thus, the issue of his entitlement to judicial immunity is squarely before the court.

The Plaintiffs go on to argue that the state-law immunity claims are frivolous because state-agent immunity determinations are almost exclusively factually-intensive summary judgment determinations. Doc. 160 at 8.  This is not an issue with the Defendants' appeals.  At the Motion to Dismiss stage there are, by definition, no factual disputes.  *See, e.g., Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1347 (11th Cir. 2016) (at Motion to Dismiss stage facts are assumed to be true). And, in federal court, the Plaintiffs are required, even with respect to state-law claims, to meet the pleading standards of *Iqbal* and *Twombly*.  *See, e.g., Herssein Law Group v. Reed Elserier, Inc.,* 594 Fed. Appx. 606 (11th Cir. 2015) (approving application of Iqbal to state-law breach of contract claim).  In this case, the pleadings as to Strange, Murphy, and Finley clearly do not meet those

pleading requirements sufficiently to overcome the defense of state-agent immunity.   Such an argument does not present a factual dispute.

What the police chiefs and mayor were alleged to have done in this case, i.e., at most permitting police officers to execute arrest warrants and/or comply with facially valid judicial orders with respect to jail sentences, cannot be said to have fallen outside the protection of state-agent immunity.   Under Alabama law, individuals do not receive state agent immunity if they (1) acted beyond their authority, (2) acted in bad faith, or (3) had a mistaken interpretation of the law. *Hill v. Cundiff*, 797 F.3d 948, 981 (11th Cir. 2015).   No plausible factual allegations in the Complaint sufficient to overcome their *Iqbal* and *Twombly* arguments suggest that Finley, Murphy or Strange acted outside their authority, in bad faith, or under a mistaken interpretation of the law. The allegations as to these men were merely conclusory at best.   The allegations clearly fail as to any false arrest claim, as this Court has already held. Doc. 131 at 28.   As to the false imprisonment post-arrest claim, the allegations make clear the Municipal Court judge provided every Plaintiff a hearing.   *See, e.g.,* Doc. 32 at ¶49 (acknowledging hearings were provided).   Strange, Finley, and Murphy were not alleged to have been present at those hearings and were not alleged to have been aware that the hearings were (as Plaintiffs contend) inadequate, which appears now to be the crux of the false imprisonment claim.   Nor are there specific plausible allegations that they were familiar with, let alone responsible for, the other wrongs alleged to have been accomplished at the hands of the Court (e.g., failure to waive bond, placing defendants on probation, providing credit for service done in jail, failing to appoint counsel).   In addition, the allegation that some "scheme" between the parties existed is vague and utterly conclusory.

Moreover, it is well-established that law-enforcement officers complying with facially valid court orders are entitled to dismissal of false imprisonment claims where they followed

warrants/order issued by a judge. *See, e.g., Skinner v. Bevans,* 116 So.3d 1147 (Ala. Civ. App. 2016). Thus neither the arrest nor subsequent imprisonment – all undertaken pursuant to judicial orders – could, as a matter of law, have been beyond any state agent's authority. And the alleged imprisonments were not the result of bad faith or a mistaken interpretation of the law by these named individual Defendants. Therefore, the state agent immunity appeal is clearly not frivolous.

Plaintiffs then argue that discretionary function immunity is merely an immunity from trial and not an immunity from discovery, but cite no case for this proposition. In fact, the term "immunity from trial" is what triggers the federal courts to provide parties who may be entitled to such immunity to freedom from discovery during an appeal of immunity. *See, e.g., Iqbal* at 671-672 (speaking of immunity from trial as "entitlement not to stand trial *or* face the burdens of litigation"); *Mitchell v. Forsyth*, 472 U.S. 511, 525-526 (1985) (where immunity from trial is involved consequences to be avoided are not limited to liability for money damages but "such pretrial matters as discovery are to be avoided if possible").

Nevertheless, the Plaintiffs go so far as to say that the trial court's decision to deny discretionary function immunity to the individual defendants charged with false imprisonment was "plainly correct" and thus any appeal therefrom would be frivolous. Doc. 160 at 9. The Plaintiffs cite this Court's order in which the Court denied immunity based on the following: "with respect to a policy of incarcerating individuals on the basis of their indigency as part of a larger scheme to increase municipal budgets, plaintiffs state a claim." Doc. 160 at 9 (citing Doc. 131 at 28-29).

However, as noted above, Plaintiffs, among other things, have failed to plead with the requisite plausibility and detail required by *Iqbal* and *Twombly* facts that would support their boilerplate contention that "incarcerating people on the basis of indigency was part of a larger scheme to increase municipal budgets." The only fact alleged in the entire complaint or referenced

by the Court that even indirectly supports such a contention, particularly as it relates to the named individual defendants, is that the gross revenue for the City of Montgomery exceeded that for the City of Huntsville.  Doc. 32 at ¶40; Doc. 131 at 16.  This allegation, even if true, without more, indeed much more, does not state a plausible claim under *Iqbal* or *Twombly* that a scheme existed to increase revenues by incarcerating indigent people, particularly any alleged scheme in which Murphy, Strange and Finley were involved.  There are simply no non-conclusory factual allegations to support the argument.

A hundred other causes or constellation of causes could result in Montgomery's <u>grossing</u> more revenue than Huntsville.  In fact, it is a stretch to connect incarceration of indigents – a necessarily costly effort – with a scheme to increase municipal revenue without many, further, and more detailed allegations.

Next the Plaintiffs contend that the appeal as to the statutory peonage claim is frivolous because it is presumably based on disputed issues of fact rather than abstract questions of law. Doc. 160 at 10.   The Plaintiffs argue that they alleged that jail labor was "forced" whereas the defendants contend that it was "voluntary" and that this difference creates a factual dispute on appeal.  *Id.*  However, even taking the allegations of the Complaint in the light most favorable to the Plaintiff, as the Court was required to do, *see, Ray,* 836 F.3d at 1347, the Complaint read as a whole, alleged that the Plaintiffs were given an option to do jail labor.

The following excerpt shows that this Court clearly understood the allegations to contend (and the Plaintiffs did not dispute this in their briefing) that there was in literal fact a "choice":

> Plaintiffs *could* work to liquidate their debt, as each day of work would diminish the number of days plaintiffs remained in jail. That is, plaintiffs "sat out" their debts at a rate of $50/day. By working, they would earn an additional $25/day. Accordingly, every two days of work removed a day of time plaintiffs were incarcerated. Defendants maintain that this *choice* may have been a painful one.

7

Doc. 131 at 22 (emphasis added).

While this Court concluded that the "choice" was not a true choice because inmates would stay in jail longer if they chose not to work, it was clearly understood that there was an actual choice, and no one was physically forced, or even required, to do jail labor. The inmates could choose to serve their time without working. In fact, not all of the Plaintiffs in the case did labor while in jail.

Contrary to the Plaintiffs' position, the question on appeal is clearly one of law, not fact. It is hard to imagine that there could ever be an appeal from a motion to dismiss that could be based on an actual factual dispute given the well-pleaded allegations in the Complaint must be accepted as true. As to the Count VII peonage appeal, the central question is whether there was clearly-established law that a community service option that shortened a jail sentence like the program at issue here amounted to peonage. Neither the Plaintiffs nor this Court has pointed to any such case law. In fact, even the Plaintiffs' allegations make it clear that it is not the work option itself that was the wrong in their eyes, but the wrong was the alleged unlawful nature of the jailing in the first place. To marry the two distinct alleged wrongs as if they were one is to make the law even murkier and less clearly established. In other words, was it clearly established that by offering an option to work the individual Defendants violated the federal peonage statute merely because the incarceration order might have been in error? Again, the Plaintiffs cited no case law to support this point.

The law is made murkier still by the fact that inmates are regularly required to work during incarceration without pay and without being given any credit toward time served and such requirements do not constitute slavery. *See, e.g., Magoon v. Tex. Dept. of Crim. Justice,* 2001 WL 43533, *2 (5th Cir. Jan. 5, 2001). Thus, it is hard to conclude that a court that gives a community

service option to those sentenced in connection with failing to pay fines and costs violated clearly-established peonage law, much less that the City's Mayor or its police chiefs violated clearly established law by permitting early release in connection with such a program.

One cannot create clearly established law by inference or assumption in this situation. In the Eleventh Circuit, there must be prior precedent that establishes what the law is:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official *might* make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent. Thus, every fact need not be identical. Minor variations in some facts (the precedent lacks arguable significant facts or contains an additional arguable significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing the official materially different than the pre-existing precedents, leaving the law applicable—in the circumstances facing the official—*not* clearly established when the defendant acted.

*Marsh v. Butler Co., Ala.*, 268 F.3d 1014, 1032 (11th Cir. 2001); *abrogated in part on other grounds by Twombly,* 550 U.S. at 561-63.

In the instant case, the judge could reasonably have believed the pre-existing law on statutory peonage, to the extent that it existed, did not clearly establish that his providing a voluntary community service option to individuals jailed for failure to pay fines and costs to shorten their sentences violated clearly established law.  Likewise, the mayor and police chiefs could have (and certainly would have) believed the same thing.

With respect to Strange, Finley, and Murphy, the qualified immunity question, of course, goes one step farther.  There is no allegation that Strange, Finley or Murphy were personally involved in the decisions to provide a community service option to those jailed for failure to pay fines and costs or that there was a "causal connection between [these] Defendant's actions and the

alleged constitutional violation" as required here to overcome qualified immunity.  *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (for causal connection requirement).

Next, the Plaintiffs even go so far as to argue the fact that the individual Defendants planned to take appeals as to qualified immunity and discretionary function immunity prior to this Court's ruling on the Motions to Dismiss renders the appeals frivolous and undertaken for the purpose of delay.   Doc. 160 at 11.   This is an incredible allegation.   The individual Defendants' counsel felt strongly about the merits of their clients' entitlement to both qualified immunity and discretionary function immunity as to Counts VII and XII well prior to this Court's ruling. Particularly at the motion to dismiss stage, where the arguments are well-defined, the issues on appeal mirror those raised on motions to dismiss.   Because the individuals had strong arguments on motion to dismiss, it was clear to counsel they would have equally strong arguments on appeal.

To end their brief in opposition to the Motion to Stay, the Plaintiffs cite a district court case from Michigan to argue that "frivolousness" is not the standard that applies in the Eleventh Circuit and Middle District of Alabama to determine whether to stay discovery in the instant case.   This is a blatant attempt to mischaracterize the law.   Courts in this Circuit have repeatedly held that upon receiving a notice of appeal based on qualified immunity or other appeal brought pursuant to the collateral-order doctrine, "the trial court should stay proceedings, unless the appeal is frivolous or has been forfeited."  *Morris v. Town of Lexington*, 2013 WL 550266 *1 (N.D. Ala. 2013) (for language quoted and reliance on *Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249, 1251 (11th Cir. 2004); *K.M. v. Ala. Dept. of Youth Services*, 209 F.R.D. 493, 495 (M.D. Ala. 2009), *aff'd* 73 F.App'x 386 (11th Cir. 2003).   In the words of the leading case in this district:

> Once a non-frivolous appeal of a denial of immunity has been filed, a stay of discovery is obviously appropriate until the appellate court resolves the immunity issue. *Summit Medical Assoc. v. James,* 998 F.Supp. 1339 (M.D.Ala.1998); *see also Hegarty v. Somerset County,* 25 F.3d 17 (1st Cir.1994) ("The stay of discovery, of

necessity, ordinarily must carry over through the appellate court's resolution of [the immunity] question, so long as the appeal is non-frivolous.").

*K.M. v. Alabama Dep't of Youth Servs.*, 209 F.R.D. 493, 495 (M.D. Ala. 2002), *aff'd sub nom. K.M. v. AL Dep't of Youth Servs.*, 73 F. App'x 386 (11th Cir. 2003).  Courts have concluded that an appeal is frivolous only when the disposition of the question by the district court "'is so plainly correct that *nothing* can be said on the other side.'" *Morris v. Town of Lexington, supra* at \*2. *(emphasis added).*

As established in the Defendants' Motion to Stay, Doc. 158, Courts applying this Circuit's law have held that where discovery is intertwined (as it is in this case), one cannot preserve the interest of the parties appealing on immunity grounds without staying discovery as to all.  In effect, the United States Supreme Court in *Iqbal* has established that the Defendants will be subjected to irreparable harm if discovery is permitted to go forward.  *See, e.g.,* 566 U.S. at 685-686 (permitting discovery to go forward on related claims burdens the appealing parties who must participate to ensure the case does not develop in a prejudicial way for that party).

To the extent that the equities as to the Plaintiffs are a concern, Courts in this Circuit have addressed those concerns by allowing the parties to put into place document or evidence preservation plans. *See, e.g., K. M., supra* at 496 (where the court permitted the parties to put together a document and evidence preservation plan with respect to the non-appealing parties pending appeal); and *see, e.g., WBY, Inc. v. DeKalb Co., Ga., 106 WL 7334648* \*3 (N. D. Ga. 2016) (citing case in which measures were taken to prevent spoliation of evidence pending appeal).

In conclusion, Defendants' appeals are not frivolous, the claims on appeal on immunity grounds are deeply intertwined with the remaining claims, and a stay of all discovery is warranted pending appeal.  More of Plaintiffs arguments are sufficient to suggest otherwise.

Respectfully submitted this 24th day of May, 2017.

s/ Shannon Holliday
Shannon Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
Joel Caldwell [ASB-4625-Z36E]
COPELAND, FRANCO, SCREWS & GILL, P.A.
P.O. Box 347
Montgomery, AL 36101-0347
holliday@copelandfranco.com
segall@copelandfranco.com
caldwell@copelandfranco.com
**Attorneys for Defendants City of Montgomery,
Finley, Murphy, Strange, and Hayes**

s/ E. Ham Wilson
E. Ham Wilson (ASB-0334-W45E)
Miland F. Simpler, III (ASB-1266-B48M)
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, AL  36109-5413
hwilson@ball-ball.com
msimpler@ball-ball.com
**Co-Counsel for Defendant Hayes**

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Martha I. Morgan
8800 Lodge Lane
Cottondale, Alabama  35453

Faya Rose Toure
Henry Sanders
Chestnut, Sanders & Sanders, LLC
One Union Street
P.O. Box 1290
Selma, AL  36702

Michael L. Jackson
Larry S. Logsdon
Wesley K. Winborn
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, AL  35253

s/Shannon L. Holliday
Of Counsel