[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT
_____

No. 17-11554
_____

D.C. Docket No. 2:15-cv-00463-RCL-WC

ANGELA MCCULLOUGH,
MARQUITA JOHNSON,
KENNY JONES,
ALGI EDWARDS,
LEVON AGEE, et al.,
on behalf of themselves, individually, and on behalf of a class of all others
similarly situated,

Plaintiffs-Appellees,

versus

ERNEST N. FINLEY, JR.,
Chief of Police of the City of Montgomery, in his individual and official capacities,
KEVIN MURPHY,
former Chief of Police of the City of Montgomery, in his individual and official
capacities,
LES HAYES, III,
former Presiding Judge of the Municipal Court of the City of Montgomery, in his
individual capacity,
MILTON J. WESTRY,
Presiding Judge of the Municipal Court of the City of Montgomery, in his official
capacity,
TODD STRANGE,
Mayor of the City of Montgomery, in his individual capacity,

Defendants-Appellants.

———————————————

Appeals from the United States District Court
for the Middle District of Alabama

———————————————

(October 29, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and VRATIL,[*] District Judge.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether two municipal judges enjoy absolute judicial immunity and a mayor and two police chiefs enjoy qualified immunity from a complaint alleging claims of peonage and false imprisonment. Several residents of Montgomery, Alabama, who were sentenced by the municipal court for traffic violations, sued officials of the City of Montgomery for allegedly operating a scheme to raise revenue by jailing indigent offenders for their failures to pay fines and court costs. The indigent jailees allege that the current and former presiding municipal-court judges, the mayor, and the current and former chiefs of police oversaw this scheme. The judges, mayor, and chiefs asserted various immunities and moved to dismiss the complaint. The district court denied their motions. We reverse and remand.

_____

[*] Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

# I. BACKGROUND

Angela McCullough, Marquita Johnson, Kenny Jones, Algi Edwards, Levon Agee, Adrian Floyd, Hassan Caldwell, Devron James, Ashley Scott, and Christopher Mooney filed a complaint on behalf of a proposed class of indigent jailees alleging that the City of Montgomery created a "modern day debtors' prison." The complaint alleges that the City aggressively collected fines and court costs owed by individuals for various offenses, typically traffic tickets. But indigent offenders, who could not afford to pay their fines, were forced to sit-out the fines in jail by earning a credit of $50 a day.

The jailees allege that, while in jail, they were forced to participate in a work program, which allowed them to reduce their time in jail by working for an additional credit of $25 a day. The jailees describe the work program as a "forced labor policy" because they were allegedly threatened with more unlawful jail time if they refused to work. For example, McCullough alleges that she was forced to stand suicide watch over an inmate infected with hepatitis C. Edwards alleges that he was forced to clean jail cells and pick up trash. And Johnson alleges that she was forced to wash police cars and clean courtrooms.

The jailees allege that the City increased municipal revenue by collecting fines owed to the City, jailing indigent offenders who failed to pay their fines, and coercing their labor while in jail. As evidence of the scheme's success, the jailees

allege that, in contrast with the City of Huntsville, the City of Montgomery raised more than three times in fines and more than 15 times in court costs. And the jailees allege that one investigative reporter, after observing the Montgomery Municipal Court for a day, described the City as a "debt-collecting machine."

The jailees allege that this scheme originates from the top echelon of the municipal government. The alleged architects of the scheme are Judge Westry, the current presiding judge of the Montgomery Municipal Court; Judge Hayes, the former presiding judge of the Montgomery Municipal Court; Mayor Strange, the mayor of Montgomery; Chief Finley, the current chief of police; and Chief Murphy, the former chief of police. These officials allegedly devised an "extortionate scheme" to increase municipal revenue through "illegal policies, practices or customs," but the complaint fails to describe any specific policies other than the judges' policy of stacking tickets, where they treated each ticket as a separate case with its own fines and court costs.

The complaint fails to allege any particular facts to describe the individual role that the judges, mayor, or chiefs played in the scheme. Instead, the complaint groups the officials together when it alleges that the judges, mayor, and chiefs ordered jailees to sit-out their fines in jail. The complaint alleges that the judges, mayor, and chiefs collectively failed to provide meaningful hearings on indigency, alternatives to jailing, and adequate access to counsel. It also alleges that the

judges, mayor, and chiefs "systematically and repeatedly fail[ed] to advise" jailees of their rights. And it alleges the judges, mayor, and chiefs maintained the work program to force jailees to work to reduce their fines.

The jailees allege that the judges, mayor, and chiefs are "individually liable for their acts or omissions challenged in this case," but the complaint fails to allege individual acts that each took to further the scheme. The allegations instead describe, in general terms, the judges' and mayor's regular duties of supervising their respective branches of government. And the complaint alleges that the mayor, as head of the municipal government, used the fines collected from the municipal court to finance the City's budget. The complaint also fails to allege the chiefs' duties or when either chief was in office.

The jailees filed their complaint against the City of Montgomery; Judicial Correction Services, the private probation company used by the City; the judges; the mayor; and the chiefs. After the jailees amended their complaint, all the defendants moved to dismiss. The defendants asserted several immunity defenses and argued that the complaint failed to state a claim. The jailees voluntarily dismissed several of their claims. The district court then denied the defendants' motions in part.

The City, the judges, the mayor, and the chiefs appealed. This Court ruled that we lacked jurisdiction to hear the City's interlocutory appeal. But we also

ruled that we have jurisdiction over the individual defendants' appeal of the denial of their alleged immunities.

Because we dismissed the City's appeal, only two counts of the complaint remain relevant to this appeal. In the first count, the jailees allege that the judges, mayor, and chiefs violated federal anti-peonage statutes, 18 U.S.C. §§ 1589, 1595, which prohibit forced labor by coercive means. The work program, according to the jailees, is forced labor because the City forced them to work to reduce their fines under threats of more unlawful jail time. The jailees also allege that the judges, mayor, and chiefs administered and benefitted from their forced labor. The remaining allegations in this count quote the texts of the anti-peonage statutes and name the defendants in reference to the statutes' legal elements. In the second count, the jailees allege that the judges, mayor, and chiefs falsely imprisoned the jailees by unlawfully depriving them of their liberty for their failure to pay fines. The jailees contend that this false imprisonment violates, among other provisions, the Alabama Constitution's prohibition "[t]hat no person shall be imprisoned for debt." Ala. Const. Art. I, § 20. And the complaint alleges that the judges, mayor, and chiefs acted beyond their authority, in bad faith, or under a mistaken interpretation of the law.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over "final decisions of the district courts of the United States," 28 U.S.C. § 1291. "[A] district court's denial of a motion to dismiss ordinarily is not a 'final decision.'" *Carollo v. Boria*, 833 F.3d 1322, 1327 (11th Cir. 2016) (alteration adopted) (quoting *In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015)). But a district court's denial of "qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of [section] 1291." *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009) (citation omitted). For the same reason, a defendant may immediately appeal a denial of absolute judicial immunity, *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994), and a denial of state-agent immunity under Alabama law, *Grider v. City of Auburn*, 618 F.3d 1240, 1253 n.18 (11th Cir. 2010) (citing *Sheth v. Webster*, 145 F.3d 1231, 1238 (11th Cir. 1998)).

When we review a denial of official immunity, we also review the sufficiency of the complaint because whether it states a claim is "both 'inextricably intertwined with' and 'directly implicated by'" the immunity defense. *Iqbal*, 556 U.S. at 673 (citations omitted). A complaint is sufficient if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "It is established law in this circuit that the *Twombly–Iqbal* plausibility standard applies equally to" a complaint "involving defendants

who are able to assert [] immunity as a defense." *Carollo*, 833 F.3d at 1328 (citations and quotation marks omitted).

We review a district court's denial of an immunity defense *de novo*. *Id.* And we review a district court's denial of a motion to dismiss a complaint *de novo*. *See Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991). We must "accept[] the factual allegations in the complaint as true," and we must view them "in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that absolute judicial immunity bars the jailees' claims against the judges. Second, we explain that the jailees' complaint fails to state a claim that overcomes the qualified and state-agent immunity of the mayor and chiefs.

### A. *The Judges Enjoy Absolute Judicial Immunity.*

A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court. *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (en banc). When we decide whether a judge enjoys absolute judicial immunity for a particular act, we ask whether the judge acted in his judicial capacity. *Dykes*, 776 F.2d at

945. We look at the nature and function of his act, not the propriety of the act itself, and consider whether the nature and function of the particular act is judicial. *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (assessing "the particular act's relation to a general function normally performed by a judge"). For example, we ask not "whether civil incarceration was appropriate" in a specific case but instead "whether ordering civil incarceration is a judicial activity." *Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005).

A judge's motivation is irrelevant to determining whether his act was judicial. A judge enjoys absolute immunity for judicial acts regardless of whether he made a mistake, acted maliciously, or exceeded his authority. *Dykes*, 776 F.2d at 947. And the "tragic consequences" that result from a judge's acts do not warrant denying him absolute immunity from suit. *Stump*, 435 U.S. at 363.

The district court erred when it based its decision on the judges' motivation instead of the nature and function of their acts. The district court reasoned that the judges' acts were not judicial because "municipal revenue generation is not a function normally performed by a judge." But even if the judges were motivated to generate municipal revenue, their acts "do[] not become less judicial by virtue of an allegation of malice or corruption of motive." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also Scott v. Dixon*, 720 F.2d 1542, 1546–47 (11th Cir. 1983)

(explaining that a judicial officer who was allegedly motivated to further a conspiracy enjoys absolute judicial immunity).

Instead of assessing the motivation behind the judges' acts, we determine whether the nature and functions of the alleged acts are judicial by considering four factors:

> (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*Dykes*, 776 F.2d at 946 (alteration adopted) (citation omitted). Each of those factors favors immunity here. We consider each in turn.

The first factor—whether a judge's acts involve a normal judicial function—weighs heavily in favor of immunity. The precise acts that the jailees allege that the judges performed—their probation procedure, indigency hearings, provision of counsel, sentences, and work program—are all judicial acts. A probation order, and setting its terms, is "clearly" a judicial act. *Owens v. Kelley*, 681 F.2d 1362, 1370 (11th Cir. 1982). And a judge's duty to advise indigent defendants of their rights, even if done "in a way that makes a mockery of those rights," is a judicial act. *Eggar v. City of Livingston*, 40 F.3d 312, 315 (9th Cir. 1994). The appointment of counsel, or failure to do so, is also a judicial act. *Davis v. Tarrant Cty.*, 565 F.3d 214, 223 (5th Cir. 2009). And sentencing a defendant, including giving an opportunity to reduce a sentence, is a judicial act. *See Harris v. Deveaux*, 780 F.2d

911, 915 (11th Cir. 1986) (holding that ordering incarceration is a normal judicial function). Not a single act that the jailees allege that the judges performed falls outside ordinary judicial functions.

The jailees rely on *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989), where the Sixth Circuit ruled that a presiding judge's moratorium on writs during the holidays was not a judicial act, but that decision is inapposite. The moratorium in *Morrison* was a "general order, not connected to any particular litigation" and from which "no direct appeal [wa]s available." *Id.* Unlike the moratorium in *Morrison*, the judges' alleged acts are connected to particular litigation because each jailee was sentenced for a failure to pay fines within the context of an individual case. And each jailee could have directly appealed the judges' acts concerning his probation, hearings, counsel, and sentence.

Although we agree that a judge is not entitled to judicial immunity for administrative acts performed in his capacity as presiding judge, *see Forrester*, 484 U.S. at 228, the judges' acts were not administrative simply by virtue of the fact that each served as presiding judge of the Montgomery Municipal Court. In other words, the judges' judicial acts were not transformed into administrative acts because the judges held a status as presiding judge.

The second factor—where the alleged events occurred—also supports the conclusion that the jailees challenge judicial acts because their allegations describe

events that occurred in the judges' courtrooms. The alleged hearings and what happened at those hearings, including whether a defendant was advised of his rights or appointed counsel, occurred in a courtroom. And when the judges ordered the jailees to sit-out their fines, the judges did so in a courtroom.

The third factor—whether the controversy centers around a case pending before a judge—also favors the judges' immunity. The district court highlighted that the jailees "do not challenge any individual rulings of Presiding Judge Hayes" as an "important nuance." But the judges ordered each jailee to sit-out his or her fines during a pending case.

The fourth factor—whether the confrontation arose from a visit to the judge in his official capacity—strongly favors immunity because the jailees allege acts that arose in connection with the judges' official capacities. Indeed, McCullough alleges that she was sentenced "[w]hen she appeared before Presiding Judge Les Hayes." And Johnson alleges that "[a]t the probation revocation hearing[,] Judge Les Hayes . . . did not make any inquiry" into her indigency. That is, the complaint describes appearances before judges in their official capacities.

Because the judges' acts were judicial, they enjoy absolute judicial immunity unless they acted in the "clear absence of all jurisdiction." *Stump*, 435 U.S. at 357 (citation and quotation marks omitted). A judge acts in "clear absence

of all jurisdiction" only if he lacked subject-matter jurisdiction. *See Dykes*, 776

F.2d at 947–49. That rare circumstance is not alleged here.

Alabama law empowers municipal-court judges to order defendants to sit-

out fines in jail, Ala. Code § 15-18-62, so the judges did not exceed their subject-

matter jurisdiction when they did so. S*ee also id.* § 15-18-64. The jailees'

"[d]isagreement with the action taken by [each] judge . . . does not justify

depriving [him] of his immunity." *Stump*, 435 U.S. at 363. All of the jailees'

claims against the judges are barred by absolute judicial immunity.

### B. The Mayor and the Chiefs Enjoy Qualified and State-Agent Immunity from the Jailees' Complaint.

The mayor and chiefs challenge the denial of qualified and state-agent

immunity, so we must consider whether the jailees stated a claim sufficient to

overcome those immunities. *See Iqbal*, 556 U.S. at 672–75. "Qualified immunity

shields government officials acting within their discretionary authority from

liability unless the officials 'violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Franklin v. Curry*, 738

F.3d 1246, 1249 (11th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). And under Alabama law, state-agent immunity shields government

officials acting within their discretionary authority from liability unless the

officials "acted willfully, maliciously, fraudulently, in bad faith, beyond his or her

authority, or under a mistaken interpretation of the law." *Hill v. Cundiff*, 797 F.3d

948, 980–81 (11th Cir. 2015) (alteration adopted) (citation and quotation marks omitted). The jailees do not dispute that the mayor and chiefs acted within the scope of their discretionary authority, so the burden shifts to the jailees to overcome those immunities. *Carollo*, 833 F.3d at 1328. To determine whether the jailees satisfy their burden, we turn to whether their complaint states a claim.

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it requires "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678. A plaintiff survives a motion to dismiss only if his complaint alleges "sufficient factual matter, accepted as true, [that] state[s] a claim to relief that is plausible on its face." *Id.* (citation and quotation marks omitted).

To decide whether a complaint survives a motion to dismiss, we use a two-step framework. *See id.* at 678–81; *Franklin*, 738 F.3d at 1250–51. First, we identify the allegations that are "no more than conclusions." *Iqbal*, 556 U.S. at 679. Conclusory allegations are not entitled to the assumption of truth. *Id.* Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations "plausibly give rise to an entitlement to relief." *Id.*

The district court failed to follow this two-step framework when it evaluated whether the jailees' complaint stated a claim. Indeed, the district court ignored the

first step by accepting the complaint's conclusory allegations as true. But we cannot decide that the jailees state a claim by "credit[ing] [the] complaint's conclusory statements." *Id.* at 686. Had the district court followed the two-step framework, "the insufficiency of [the jailees'] allegations would have been obvious." *Franklin*, 738 F.3d at 1251. We apply the two-step framework to the jailees' complaint, as we must, and begin with the first step.

A plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. We identify conclusory allegations and then discard them—not "on the ground that they are unrealistic or nonsensical" but because their conclusory nature "disentitles them to the presumption of truth." *Id.* at 681.

The jailees allege that the mayor and chiefs, government officials "at the highest level," *id.* at 668, created and implemented an unlawful scheme and intentionally subjected them to that scheme, but *Iqbal* illustrates why the jailees are "armed with nothing more than conclusions," *id.* at 678–79. Iqbal, a Muslim man, filed a complaint against the attorney general of the United States and the director of the Federal Bureau of Investigation after he was detained in the aftermath of the September 11 terrorist attacks. Iqbal alleged that the attorney general was the

"principal architect" and the FBI director was the "instrument[]" behind an

unlawful policy of subjecting detainees to harsh conditions on account of race,

religion, or national origin. *Id.* at 680–81. The attorney general and FBI director

asserted that qualified immunity barred Iqbal's claims because his complaint failed

to state a claim against them, and the Supreme Court agreed. *Id.* at 666, 681. After

discarding the complaint's conclusory allegations, the Supreme Court held that

Iqbal's complaint failed to state a plausible claim. *Id.*

Substitute the mayor for the attorney general and the chiefs for the FBI

director in *Iqbal*, and the comparison is uncanny. Like the complaint in *Iqbal*,

which labeled the attorney general as the "principal architect" and the FBI director

as the "instrument[]" behind an unlawful detention policy, the jailees' complaint

alleges that the mayor "adopted" and the chiefs "administered" an unlawful

scheme to increase municipal revenue. The complaint in *Iqbal* alleged that the

attorney general and the FBI director "knew of, condoned, and willfully and

maliciously agreed to subject [Iqbal] to harsh conditions of confinement as a

matter of policy." *Id.* at 680. Similarly, the jailees allege that the mayor and chiefs

"adopted, ratified[,] and administered policies, practices[,] or customs" that were

"part of a scheme designed to increase municipal budgets . . . through

imprisonment for nonpayment [of fines] . . . and the use of coerced jail labor." And

the jailees allege that the mayor and chiefs acted "intentionally and unlawfully," as well as "recklessly, wantonly, willfully, maliciously, or in bad faith."

We must discard the conclusory allegations that the mayor and chiefs created and implemented a scheme. As the Supreme Court has explained, allegations that government officials were the "principal architect" and "instrument[]" behind an unlawful policy, without supporting allegations, are conclusory. The allegations that the mayor "adopted" and the chiefs "administered" an unlawful scheme to increase municipal revenue, without more, are "not entitled to be assumed true." *Id.* at 681. And the allegations that the mayor and chiefs intended to subject jailees to the scheme are conclusory.

The district court ruled that the jailees' allegations are "very much tied to bad faith," but it ignored that these allegations merely recite the legal elements that the jailees must establish to overcome state-agent immunity. *See Hill*, 797 F.3d at 980 (explaining that officials are not entitled to state-agent immunity under Alabama law if they acted willfully, maliciously, or in bad faith). The jailees cannot overcome the mayor's and chiefs' immunity with conclusory allegations that "carry no weight." *Franklin*, 738 F.3d at 1251.

The absence of allegations about any individual acts of the mayor or chiefs reinforces the conclusory nature of the jailees' complaint. The jailees allege that the mayor and chiefs are "individually liable for their acts or omissions," but the

complaint fails to "provid[e] the facts from which one could draw such a conclusion." *Id*. The complaint alleges the mayor's and chiefs' names and titles, but nothing about "the significance of their titles, their individual roles in the [scheme], their personal interactions or familiarity with [jailees], their length of service, their management policies, or any other characteristics that would bear on whether they knew about" the scheme that they allegedly operated. *Id*. at 1251–52. We cannot even infer from the complaint when either chief was in office. Nor can we infer that the mayor or chiefs were ever present in a municipal courtroom when jailees were sentenced or in a municipal jail when jailees were forced to work.

After we discard conclusory allegations, the second step in our evaluation of a complaint is to assume that any remaining factual allegations are true and determine whether those allegations state a plausible claim. *Iqbal*, 556 U.S. at 679. To state a plausible claim, factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. That is, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, although consistent with a plaintiff's theory, may fail to state a plausible claim "given more likely explanations." *Iqbal*, 556 U.S. at 681.

The jailees argue that their complaint contains "great factual detail," but we disagree. After discarding their conclusory allegations, we struggle to find factual

allegations left in the complaint, and the few factual allegations that remain do not state a plausible claim.

The jailees allege that the City of Montgomery collected more fines and court costs than the City of Huntsville, which has a similar population, but even if true, the difference in municipal revenues does not "nudge[] [the jailees'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Perhaps there is more crime in Montgomery. This lone factual allegation does not support a plausible inference of a scheme by the mayor and chiefs, "given more likely explanations" for the difference in municipal revenues. *Iqbal*, 556 U.S. at 681. The alleged difference in revenues fails to raise the jailees' "right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The jailees' complaint contains factual allegations about misconduct in the municipal court, but as we explained, that misconduct concerns judicial acts. And any connection between the judicial acts and the mayor and chiefs is "too chimerical to be maintained." *Iqbal*, 556 U.S. at 681. The jailees do not allege that the mayor or chiefs presided over any proceedings in which they could have informed a defendant of his rights, appointed counsel, or considered alternative sentences. And certainly, the mayor and chiefs did not sentence jailees to sit-out their fines. No factual allegations in the complaint plausibly connect the mayor or chiefs to these judicial acts, and without any "factual enhancement," the complaint

"stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

## IV. CONCLUSION

We **REVERSE** the denial of judicial immunity to Judge Westry and Judge Hayes, we **REVERSE** the denial of qualified and state-agent immunity to Mayor Strange, Chief Finley, and Chief Murphy, and we **REMAND** for proceedings consistent with this opinion.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 29, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  17-11554-JJ
Case Style:  Angela McCullough, et al v. City of Montgomery, Alabama, et al
District Court Docket No:  2:15-cv-00463-RCL-WC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellees.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs