**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| ANGELA MCCULLOUGH, et al.,  ) | |
| ) | |
| **Plaintiffs,**  ) | **CASE NO: 2:15-CV-463-RCL** |
| ) | |
| VS.  ) | |
| ) | |
| THE CITY OF MONTGOMERY, ALABAMA,  ) | |
| et al.,  ) | |
| ) | |
| **Defendants.**  ) | |

**DEFENDANT CITY OF MONTGOMERY'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.      STANDARD OF REVIEW**

Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. As there has been no trial setting here or even a scheduling order, a motion for judgment on the pleadings is clearly timely.

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of W. Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). In ruling on a motion for judgment on the pleadings, the court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." Id.

A Rule 12(c) motion for judgment on the pleadings is analyzed under the same standard as that of a Rule 12(b)(6) motion to dismiss. Griffin v. SunTrust Bank, Inc., 157 F. Supp. 3d 1294, 1295 (N.D. Ga. 2015). Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

1

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); see also Losey v. Warden, 521 F. App'x. 717, 719 (11th Cir. 2013) (applying Iqbal plausibility standard to appeal concerning Rule 12(c) judgment on pleadings). A complaint states a plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Formulaic recitations of the elements of a cause of action do not satisfy a plaintiff's burden. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). If the court determines that well-pleaded facts, accepted as true, do not state such a claim, the claims are due to be dismissed. See id. at 570.

## II.   THE PROCEDURAL HISTORY OF THIS CASE

This case has passed the motion to dismiss stage. However, the case was stayed after the Defendants filed interlocutory appeals from this Court's denial of each of the individual Defendants' motions to dismiss. (Doc. 164.) The Eleventh Circuit reversed this Court's rulings as to the four individual Defendants on October 29, 2018. (Doc. 168-169.)  As explained below, the Eleventh Circuit opinion now requires dismissal of all claims against the City under Federal Rule of Civil Procedure 12(c).

## III.   THE IMPORTANCE OF A RULING AT THIS JUNCTURE

The Eleventh Circuit's ruling on appeal has given very clear guidance regarding the appellate court's position on key issues in this case, including matters that relate directly to the City's liability and the adequacy of the pleadings.  To proceed further without a ruling on both

would be judicially inefficient and unnecessarily waste the City's, and the Court's, limited resources.  See, e.g., Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1128 (11th Cir. 2014).

As explained below, the Eleventh Circuit's holdings necessitate dismissal of all claims against the City.  Dismissing the City at this stage of the proceedings will substantially simplify these proceedings, narrowing the case to damages claims against the private probation defendants and claims for declaratory relief against the presiding municipal court judge, to the extent any such claims were actually pled.  The declaratory-judgment claims, if actually or sufficiently pled, could be disposed of early without extensive discovery and without the necessity of class certification and the burden and expense associated therewith.[1]  Such claims are substantially or entirely moot.

If there were any concerns about this Court's ruling to dismiss the City, an interlocutory appeal on the issue could be sought and an expedited ruling thereon requested.

## IV.   THE ELEVENTH CIRCUIT RULING'S APPLICATION TO THE CLAIMS AGAINST THE CITY.

### A.   The impact of holding that Judge Hayes' alleged actions were judicial in nature

The Eleventh Circuit opinion on appeal first addressed Defendant Hayes' entitlement to judicial immunity.  In this first part, the Circuit Court held that, even though Plaintiffs had asserted that Judge Hayes' actions were motivated by a desire to raise revenue for the City and that, for that reason, he was acting as a final fiscal policy-maker for the City of Montgomery, his actions were, in fact, entirely judicial.  The Court clearly stated that the Judge's alleged motivation did not render

---

[1] See M.R. v. Bd. of Sch. Comm'rs of Mobile Cty., 286 F.R.D. 510, 519 & n.12 (S.D. Ala. 2012) ("[T]he clear majority rule is … that class certification may be properly denied where a class is unnecessary to obtain the full measure of relief sought, such that it is not appropriate to bog down the litigation with the expense, delay, complexity and burden of class certification when there is no corresponding benefit to implementation of the resulting judgment.") (citing in footnote long list of reported cases for this proposition).

his judicial actions administrative in any sense. Slip Op. at 9 ("The district court erred when it based its decision on the judges' motivation instead of the nature and function of their acts.")  The Court reviewed the full panoply of acts the Plaintiffs alleged, and concluded that each and every one of such actions were judicial in nature.  Slip Op. at 11 ("Not a single act that the jailees allege that the judges performed falls outside ordinary judicial functions.").[2]

This holding, though related to judicial immunity, is also critical to the question of the City's liability here.  Initially, this Court denied the City's Motion to Dismiss because the wrongs as pled, though acts of the judge, were alleged to be not judicial in that he was claimed to have committed them for the purpose of increasing municipal revenue.  This Court had reasoned that these allegations made the judge's actions administrative rather than judicial, thereby not only precluding judicial immunity but also making the judge a municipal administrator/policy-maker whose actions could then serve as a basis for City liability. (See Doc. 131 at 17, quoted infra.) It was this alleged city policy-maker role which was the connecting link to hold the City in as a Defendant.

Under Monell, a plaintiff suing a municipality can recover under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1976) (emphasis added). Official municipal policy includes governmental leaders' decisions, as well as "practices so persistent and widespread as to

---

[2] These conclusions were, of course, necessary to the Court's holding, because the state-law false-imprisonment claim which was appealed in connection with the judge's liability in his individual capacity, and which was squarely before the Court on appeal, was an amalgamation of all of the several wrongs alleged in the Amended Complaint. See, e.g., Doc. 32 ¶ 267 (listing as basis for false imprisonment count: "unlawful detentions of Plaintiffs, through warrants, arrests, placements on probation with JCS, probation revocations, and detentions or imprisonments of Plaintiffs, and others similarly situated, as detailed in the factual allegations for individual Plaintiffs, … for failure to pay fixed sum bail or bonds, fines, court costs, fees, and other debts").

practically have the force of law. These are actions for which the municipality is actually responsible." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citations and internal quotation marks omitted) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986)). To support a Monell claim, the official policy must be the "moving force behind the constitutional violation." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (alteration omitted) (quoting Monell, 436 U.S. at 694).

In denying the City's Motion to Dismiss as to liability for actions taken by the Municipal Court,[3] this Court set out the following reasoning as to why it deemed the Judge a municipal policy-maker:

> In this case, plaintiffs allege that the City and Judge Hayes created a series of policies to increase municipal revenue through stops, ticketing, and arrests. Am. Comp. ¶¶ 2-3. These are "systemic and related policies, practices and customs." Id. They note these policies resulted in millions of dollars in fines and forfeitures and note that Montgomery raised more than three times as much in fines and more than fifteen times as much in local court costs as did Huntsville, which has a similar population. Id. at ¶ 40. As previously noted, plaintiffs explicitly do not take issue with any judicial actions taken by Hayes or any other municipal judge.
>
> Given that municipal revenue generation is not a function normally performed by a judge, <u>these allegations are thus for non-judicial actions</u>. Rather, they concern the creation of policy for the City or for the municipal courts on behalf of the City. Accordingly, Judge Hayes cannot rely on the doctrine of judicial immunity. That is, because the allegations concern actions outside the scope of the judicial role, there is no immunity and the question shifts to the role of Judge Hayes.
>
> **c.    Judge Hayes' Role is Currently Undetermined**
>
> Plaintiffs' allegations of a series of interwoven policies designed to increase municipal revenue raise factual questions that cannot be resolved at this time. <u>It is possible to understand Judge Hayes' role as creating policy for the municipal court independent of the City</u>, but <u>it is also possible to understand the allegations as Judge Hayes operating as a *de facto* City official working with the police and others to</u>

---

[3] This Court dismissed all of Plaintiffs' claims involving racial profiling and arrests in violation of the Fourth Amendment relative to allegedly pretextual stops and arrests. See, e.g., Doc. 131 at 8-12 (setting out reasoning for dismissal of these allegations generally). This dismissal reduced the allegations remaining against the City to actions taken by the municipal judges.

5

> craft a series of policies to increase municipal cashflow. Plaintiffs have sufficiently alleged that these policies were created, but it is not clear at this point the precise nature of Judge Hayes' role.

(Doc. 131 at 17 (emphasis added).) This reasoning kept the City in the case by announcing the possibility that Judge Hayes, though not an actual City official, was, on the pleadings, a "de facto City official" because his alleged motivation was "to increase municipal cash flow."

As explained above, the Eleventh Circuit opinion rejected this reasoning in connection with its judicial immunity ruling. The Court explicitly held that all actions alleged to have been taken by Judge Hayes were judicial in nature, regardless of his alleged motivation. As explained in the City's initial brief on Motion to Dismiss, it is clear that, acting in his judicial capacity, Judge Hayes was a state actor and not a final policymaker for the City of Montgomery.[4]

The Plaintiffs' theory of relief, however, depends on establishing that Judge Hayes' alleged actions were not judicial in nature, but were the actions of a municipal policy-maker.[5] Given that this theory has been decisively rejected, the Plaintiffs have not stated a plausible claim that any of

---

[4] See Doc. 53 (Corrected Br. of Defs.' in Supp. of Their Mot. to Dismiss the Am. Compl.) at 23-26 & Doc. 77 (Defs.' Am. Reply Br.) at 7-18 (collectively pointing out that: (a) separation of powers is dictated by Alabama law precluding executive branch of City from exercising control over judiciary; (b) pursuant to state Constitution and statutory law, municipal courts are part of State's Unified Judicial System in which "judicial power of the state is vested" by law; (c) Alabama Code governs all aspects of operation and jurisdiction of state's municipal courts; (d) Alabama's various rules of court govern actions of state's municipal courts; (e) at least one of Alabama's federal district courts as of filing of motions had concluded that municipal court actions could not be basis for municipal liability (citing Woodard v. Town of Oakman, 885 F.Supp. 2d 1216 (N.D. Ala. 2012)); (f) courts across the country had "regularly found that municipal court judges are state actors and not municipal actors when determining whether they were municipal policymakers for purposes of Monell liability," and citing cases from five federal circuit courts on this point; (g) showing that Eleventh Circuit, in Pompey v. Broward Co., 95 F.3d 1543 (11th Cir. 1996), reached analogous holding that county cannot be held liable for actions of county judge because county executive officials had no control over judge's handling of court proceedings). All of these arguments and Documents 53 and 77 are adopted herein as if set forth in full.

[5] There is no factual allegation (nor could there be) that the City Defendants or the City itself controlled Judge Hayes' actions.

those alleged actions amounted to a policy or practice of the City of Montgomery. Therefore, the City is entitled to dismissal of the Complaint pursuant to Rule 12(c) because the Plaintiffs have failed to state a plausible claim against it. See Twombly, 550 U.S. at 570.

### B. Impact of holding that the mayor and police chiefs were entitled to immunity

The second part of the Eleventh Circuit's ruling – that the mayor and police chiefs were also entitled to immunity – further supports dismissal of this action as to the City. While the legal issue on appeal in connection with the mayor and police chiefs was their entitlement to state-agent and qualified immunity, the Court's focus on Plaintiffs' failure to satisfy the Twombly/Iqbal standard also shows that Plaintiffs have failed to meet that standard as to the City.

In addressing the claims against the mayor and police chief, the Eleventh Circuit described the required two-step Twombly/Iqbal analysis,[6] which first requires identifying and essentially excising those allegations that are "'no more than conclusions.'" Slip Op. at 14 (quoting Iqbal, 556 U.S. at 679). Then "after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Slip Op. at 14 (quoting Iqbal, 556 U.S. at 679).

In applying the first step of the analysis, the Eleventh Circuit concluded that the allegations that the mayor and police chiefs created and implemented an unlawful scheme and intentionally subjected the Plaintiffs to that scheme amounted to "nothing more than conclusions." Slip Op. at 15 (quoting Iqbal, 556 U.S. at 678-679). The Court then added that "the allegations that the mayor and chiefs intended to subject jailees to the scheme are conclusory." Slip Op. at 17. The Court went on to point out that "[t]he jailees allege that the mayor and chiefs are 'individually liable for

---

[6] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v.Iqbal, 556 U.S. 662, 678 (2009), discussed supra.

7

their acts or omissions,' but the complaint fails to 'provid[e] the facts from which one could draw such a conclusion.'" Slip Op. at 17-18 (alteration in original) (quoting Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013)).  The Court concluded that there were no factual allegations to suggest that the mayor or police chiefs even "'knew about' the scheme that they allegedly operated." Slip Op. at 18 (quoting Franklin, 738 F.3d at 1251-52).

The Court next moved on to the second step of the two-step Iqbal analysis, writing: "After discarding their conclusory allegations, we struggle to find factual allegations left in the complaint, **and the few factual allegations that remain** do not state a plausible claim." Slip Op. at 18-19 (emphasis added). The following are the few nonconclusory "factual allegations" that the Court found remained: (a) the difference in revenues between Huntsville's and Montgomery's municipal courts; and (b) "misconduct in the municipal court." Slip Op. at 19. (Clearly, the Court summarized all of the remaining allegations in the Amended Complaint with any factual basis, aside from the revenue difference, as "misconduct in the municipal court.")

With respect to the alleged revenue difference, the Court ruled: "This lone factual allegation does not support a plausible inference of a scheme by the mayor and chiefs, 'given more likely explanations' for the difference in municipal revenues." Slip Op. at 18 (quoting Iqbal, 556 U.S. at 681). With respect to the alleged municipal court "misconduct," the Court ruled: "[A]s we explained, that misconduct concerns judicial acts. And any connection between the judicial acts and the mayor and chiefs is 'too chimerical to be maintained.'" Slip Op. at 19 (quoting Iqbal, 556 U.S. at 681). Of course, the mayor and police chiefs are the final City policy-makers who allegedly operated the alleged scheme according to the Plaintiffs. See, e.g., Doc. 32 at ¶ 3 (naming Strange, Finley and Murphy as the individual defendants who operated the alleged "extortionate scheme").

The Eleventh Circuit's ruling conclusively establishes that there were only two sets of non-conclusory allegations regarding any alleged overarching scheme. These were judicial acts in the municipal court and the revenue difference between Montgomery and Huntsville. The Eleventh Circuit categorically ruled that difference in revenue as a "factual allegation does not support a plausible inference of a scheme." It further ruled that the connection between judicial acts and city leaders was "chimerical" and likewise failed to support the existence of a scheme.

The Eleventh Circuit's conclusion as to whether any factual allegation support a plausible inference of a scheme is now law of the case and cannot be reversed except on appeal. Under the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case." Grayson v. Warden, Comm'r, Ala. DOC, 869 F.3d 1204, 1231 (11th Cir. 2017) (quoting Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir. 1984)).

Because all the wrongs alleged as the basis for the remaining Complaint were judicial acts of judges acting in their roles as officers of the state's Unified Judicial System (see, n. 4, supra (setting out prior arguments as to this point), the judges could not have served as final policymakers for the City. The City had no authority to control any of the Municipal Court judges' allegedly wrongful judicial acts. All of the other final policy-makers – i.e., the mayor and chiefs of police – alleged to have operated the scheme have been dismissed because the Plaintiffs failed to plausibly allege any such scheme or their participation in it. Thus, Plaintiffs' § 1983 claims against the City must be dismissed for failure to satisfy the Twombly/Iqbal pleading standard and for failing, under that standard, to allege a factual basis for liability under Monell.[7]

---

[7] As noted above, Monell liability requires that the official policy alleged to have caused the constitutional violation must be: (a) "actions for which the municipality is actually responsible,"

The failure to satisfy the Monell liability standard also precludes prospective relief such as injunctive or declaratory relief against the City, to the extent that the Plaintiffs seek any such relief. In Los Angeles County. v. Humphries, the Supreme Court held that the official policy or custom requirement applies to prospective relief actions brought against local governments sued in their own names. See 562 U.S. 29, 31 (2010); id. at 34 ("We conclude that Monell's holding [requiring an official policy or custom] applies to § 1983 claims against municipalities for prospective relief as well as to claims for damages.").

Aside from the § 1983 Claims, the only remaining claims against the City, the statutory anti-peonage claims[8], also fail here under Rule 12(c). The wrong alleged in Count VII is that individuals could work and receive credit against their sentences or serve their entire sentence out if they did not. In other words, the wrong alleged was the nature of the Plaintiffs' judicial sentences in that they could be reduced through labor. As this Court recognized, the available reduction in sentence was the only factual allegation that any defendant was "forced" to work. See Doc. 131 at 22 (recognizing that the allegation pled that one could work to reduce one's sentence but not recognizing any allegation of a physical or other method of enforcing the choice to work).

The reductions in sentences were clearly judicial actions over which the City had no control. Slip Op. at 10 (calling both "sentences, and work program" "judicial acts"). Thus, the peonage claims are likewise subject to dismissal because there are simply no plausible claims that the City took the wrongful act alleged, had control over it, or was involved in it. See Twombly, 550 U.S. at 570.

---

Connick, 563 U.S at 61 (alteration omitted) and (b) the "moving force behind the constitutional violation." Harris, 489 U.S. at 389 (alteration omitted).

[8] The only count in connection with which Monell does not apply is the statutory portion of Count VII. Count XII, False Imprisonment, was never alleged against the City.

Additionally, the statutory provisions pled in Count VII are all criminal statutes. Pursuant to a related federal statute, a plaintiff can bring a civil action for damages resulting from the criminal acts set out in the anti-peonage statutes. 18 U.S.C. § 1595 (authorizing civil action for "violation of this chapter"). The specific statutes pled in Count VII are 18 U.S.C. §§ 1581, 1589(a) & (b), 1593A.

Each of these statutes has a specific intent requirement,[9] and it is well-established that governmental entities cannot form the mens rea required to establish liability for criminal acts.[10] As the City cannot form the intent to commit a criminal act, Plaintiffs necessarily fail to plead a claim upon which relief can be granted as to the City in connection with the anti-peonage statutes at issue in Count VII.

---

[9] 18 U.S.C. § 1581(a) refers in pertinent part to "[w]hoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage" (emphasis added). 18 U.S.C. § 1589(a) applies to: "Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means" (emphasis added). Likewise, § 1589(b) makes it unlawful to "knowingly" benefit "from participation in a venture" described in subsection (a) (emphasis added). Finally, 18 U.S.C. § 1593A refers again in pertinent part to "[w]hoever knowingly benefits … from participation in a venture" (emphasis added).

[10] Gil Ramirez Group, L.L.C. v. Hous. Indep. Sch. Dist., 786 F.3d 400, 411-12 (5th Cir. 2015) (citing Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 404 (9th Cir. 1991)); Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996) (addressing issue in RICO context); Pine Ridge Recycling, Inc. v. Butts Cnty., 855 F. Supp. 1264, 1273 (M.D. Ga. 1994) (Owens, C.J.) (collecting cases and finding that municipal corporation cannot form requisite criminal intent); In re Citisource, Inc. Sec. Litig., 694 F.Supp. 1069, 1079-80 (S.D.N.Y. 1988) (holding that while municipal corporation can be "person" under RICO statute, it is incapable of criminal intent necessary to support predicate offenses); Massey v. City of Okla. City, 643 F. Supp. 81, 85 (W.D. Okla. 1986) ("[T]he City itself is incapable of forming the mens rea or criminal intent necessary to perform an act of racketeering….").

**CONCLUSION**

Because there are no pleadings to support any of the claims, judgment on the pleadings is mandated. The City respectfully moves this honorable Court for an order so holding and for dismissal of all claims against the City.

Respectfully submitted this 29th day of March, 2019.

        s/Shannon L. Holliday
        Shannon L. Holliday [ASB-5440-Y77S]
        Robert D. Segall [ASB-7354-E68R]
        Richard H. Gill [ASB-7945-G70R]
        COPELAND, FRANCO, SCREWS & GILL, P.A.
        P.O. Box 347
        Montgomery, AL 36101-0347
        holliday@copelandfranco.com
        segall@copelandfranco.com
        gill@copelandfranco.com
        **Attorneys for Defendant City of Montgomery**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of March, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Martha I. Morgan
8800 Lodge Lane
Cottondale, Alabama  35453

Faya Rose Toure
Henry Sanders
Chestnut, Sanders & Sanders, LLC
One Union Street
P.O. Box 1290
Selma, AL  36702

Michael L. Jackson
Larry S. Logsdon
Wesley K. Winborn
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, AL  35253

E. Ham Wilson
Miland F. Simpler, III
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
Montgomery, AL  36109-5413

and served via email:

R. Bernard Harwood, Jr.
Rosen Harwood, P.A.
2200 Jack Warner Parkway
Suite 200
Tuscaloosa, AL  35401

                                              s/Shannon L. Holliday
                                              Of Counsel