THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANGELA MCCULLOUGH, et al., | ) | |
| ON BEHALF OF THEMSELVES, | ) | |
| INDIVIDUALLY, AND ON BEHALF OF A | ) | |
| CLASS OF ALL OTHERS SIMILARLY | ) | |
| SITUATED, | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 2:15-CV-463-RCL-WC |
| | ) | CLASS ACTION |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF MONTGOMERY, ALABAMA, | ) | |
| et al., | ) | |
| Defendants. | ) | |

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CITY OF
MONTGOMERY'S MOTION FOR JUDGMENT ON PLEADINGS

COME NOW Plaintiffs and file this response in opposition to Defendant City of

Montgomery's motion for judgment on the pleadings (Doc. 180).

I.     **Both the Eleventh Circuit and this Court Have Explicitly Rejected the
Arguments for Dismissal Raised by the City's Motion**

The City of Montgomery is seeking a **third** bite at the apple in this case. The City claims

it is somehow entitled to dismissal of all remaining claims against it based on the Eleventh

Circuit's October 29, 2018 opinion granting the individual defendants' immunity-based

interlocutory appeals. But the Circuit Court itself explicitly rejected the City's arguments that a

decision on the individual immunity claims would be determinative of the City's liability in this

case when it denied the City's attempt to  "piggyback" on the individual defendants' proper

interlocutory appeal. As this Court recently explained in *Carter v. City of Montgomery*:

> The City attempted to participate in the appeal in *McCullough*, but its appeal was
> dismissed. See *McCullough II*, Order (Aug. 17, 2017) at 3, No. 17-11554. The City
> claimed a right to appeal because the claims against it were "both inextricably intertwined
> with and solely dependent upon the actions of one of the Municipal Court judges.

*McCullough II*, Appellants' Joint Suppl. Mem. Jurisdiction, No. 17-11554. The Circuit rejected this argument, stating that it was this Court's denial of immunity that entitled the appellants to interlocutory appeal and that the City could not "piggyback on the other defendants' proper appeal. See *McCullough II*, Order (Aug. 17, 2017) at 2, No. 17-11554. Specifically, the Circuit held: (1) that the Court "left open the possibility the judge and the City were independently responsible for creating the policies at issue," (2) that "the City's liability does not necessarily match the judge's," and (3) that "the City's appeal is not inextricably intertwined with the judge's entitlement to immunity." *Id*. at 3.

*Carter v. City of Montgomery*, No. 2:15-cv-555(RCL), M.D. Ala., Doc. 206 at p. 4, Memorandum Opinion of March 29, 2019 ( In *Carter*,[1] this Court denied the City's motion for judgment on the pleadings, aptly describing the motion as "seeking a second bite at the apple," through a *de facto* motion for reconsideration of the denial of its motion to dismiss. )

The Eleventh Circuit's August 17, 2017 Order (itself referred to and reaffirmed in the Court's October 29, 2018 Order)[2] is the law of the case and standing alone calls for denial of the motion for judgment on the pleadings in this case. As the City itself has reminded us, "[u]nder the law of the case doctrine, "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case." *Grayson v. Warden, Comm'r, Ala. DOC,* 869 F.3d 1204, 1231 (11th Cir. 2017) (*quoting Westbrook v. Zant*, 743 F.2d 764, 768 (11th Cir. 1984))." Doc. 180 at p. 9.

If further support for denial were needed, however, it is amply provided by arguments and materials in Plaintiffs' earlier filings in this case,[3] as well as those presented below.

---

[1] As pointed out in the Carter plaintiff's Response to City's Motion for Judgment on the Pleadings, Doc 201 p. 3 :"[T]he *Carter Complaint is limited exclusively to the JCS collection scheme* implemented with the City of Montgomery based upon the City's policy and practice using several departments and facilities to enforce collection." In contrast, the *McCullough* Plaintiffs' amended complaint includes but is not limited to claims involving JCS.

[2] "Because we dismissed the City's appeal, only two counts of the complaint remain relevant to this appeal." *McCullough II*, October 29, 2018 Slip opinion at 6.

[3] To save trees and/or screen time, Plaintiffs expressly incorporate relevant arguments they submitted in documents relating to the City's two earlier attempts at dismissal of Plaintiffs' well-pleaded claims against it, first in this Court and then in the Eleventh Circuit. See Plaintiffs'

II.     **Plaintiffs' Remaining Entity Liability Claims And Alternative Theories of Liability Were Not Considered Relevant to, and Are Not Affected by, the Eleventh Circuit's Opinion Granting Individual Capacity Immunities on Count 7 and 12 Claims**

The Eleventh Circuit's October 29th opinion went to great lengths to emphasize its limited reach. In doing so, the Court reaffirmed its dismissal of the City's appeal stressing that, "[b]ecause we dismissed the City's appeal, only two counts of the complaint remain relevant to this appeal." October 29, 2018 Slip opinion at 6. After the Plaintiffs' voluntary court-approved dismissal of all Section 1983 individual capacity claims, and this Court's grant of the City's motion to dismiss the individual capacity false arrest claims against the mayor and police chiefs in Count 12,[4] the only individual capacity claims before the Eleventh Circuit were: (1) Count 7's

---

response in opposition to the Defendants' motions to dismiss (Doc. 57) and their response to the Eleventh Circuits' Jurisdictional Question of May 22, 2017 (filed June 5, 2017 in Case No. 17-11554). Plaintiffs also expressly incorporate the arguments and materials they submitted in Docs. 170, 173, 175, 177, and 177-1, relating to this Court's lifting of the stay, insofar as they are relevant to the merits of the City's motion for judgment on the pleadings that now has been filed.

Although not necessary given the rejections of the City's prior attempts at dismissal by both the Eleventh Circuit and this Court, if and to the extent this Court may find otherwise, Plaintiffs expressly incorporate their arguments and accompanying illustrative materials in Doc. 173 FNs 9 and 10 and Doc. 175 FN 6. This Court may consider such materials outside the pleadings for illustrative or other purposes in ruling on the City's Motion for Judgment on the Pleadings. See *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2013). Also see *Scottsdale Insurance Co. v. Purseley*, No. 11-12808 (11th Cir. Jan. 10, 2012), stating:

> Rule 12(c) permits judgment on the pleadings when there are no material facts in dispute and judgment may be rendered by considering the substance of the pleadings *and any judicially noticed facts.* FED. R. CIV. P. 12(c).

*Id.* (Emphasis added.) If needed, the materials referenced in these footnotes are more than sufficient to support very reasonable expectations that discovery will reveal voluminous additional evidence to support all Plaintiffs' remaining claims against the City. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) *(*"A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.").

---

[4] Given this Court's March 10, 2017 order (Doc. 131) granting the defendants' motion to dismiss the portions of Count 12 against the police chiefs, the individual capacity allegations against the police chiefs that were at issue in the interlocutory appeal were limited to those in Count 7. See the Eleventh Circuit's August 17, 2017 opinion, slip opinion at p.3: "[T]he [district] court also granted partial immunity as to Count 12, for claims arising from traffic stops and arrests. For avoidance of doubt, plaintiffs may not use this appeal to challenge that grant of immunity. *See Hudson v. Hall*, 231 F.3d 1289, 1292 n.1 (11th Cir. 2000)…." (Emphasis added.) And the Circuit

statutory anti-peonage and forced labor claims against all four individual defendants brought under 18 U.S. Code 1595 (with its express10-year statute of limitations), and (2) Count 12's false imprisonment claims against the Mayor and Judge Hayes under Ala. Code Sec. 6-5-170 (with a six-year statute of limitations).

After the Eleventh Circuit's limited holdings on the individual defendants' entitlement to immunities on the federal and state statutory claims before it, Plaintiffs' amended complaint still contains seven Counts (3, 4, 5, 6, 7, 8 and 9) raising what this Court already has found to be plausible Section 1983 entity liability claims against the City and the Presiding Judge of the Montgomery Municipal Court, in his official capacity (as well as plausibly pleaded federal statutory claims against them in Count 7). Three of these Counts (3, 5, and 8) are also against JCS and are included in the six Counts (3, 5, 8, 12, 13, and14) remaining against JCS. The chart below further depicts the remaining counts and claims against the City, Judge Westry, in his official capacity, and JCS, respectively.

| COUNTS | DEFENDANTS |
|---|---|
| Count 3<br>Use of Warrants to Collect Fines & Fees<br>• Sec. 1983: 4th & 14th Amendments | • City<br>• Westry, Official Capacity<br>• JCS |
| Count 4<br>Use of Fixed Bail System<br>• Sec. 1983: 14th Amendment Equal Protection & Due Process, 4th, 8th Amendments | • City<br>• Westry, Official Capacity |
| Count 5<br>*Bearden* Claims<br>• Sec. 1983: 14th Amendment Due Process & Equal Protection, 4th Amendment | • City<br>• Westry, Official Capacity<br>• JCS |
| Count 6<br>Inadequate Counsel<br>• Sec. 1983: 6th & 14th Amendments | • City<br>• Westry, Official Capacity |

Court's October 29, 2018 opinion found the Count 7 allegations against the police chiefs in their individual capacities to be insufficient solely because Plaintiffs failed to allege sufficient factual details such as the precise dates of service of each police chief.

| | |
|---|---|
| Count 7<br>Jail Work Program<br>• Sec. 1983: 13th Amendment Involuntary Servitude<br>• 18 USC Sec. 1595: Anti-peonage & Forced Labor Claims under 18 USC Secs. 1581, 1589 (a) and (b), 1593A | • City<br>• Westry, Official Capacity |
| Count 8<br>Use of Probation and Threats of Revocation to Collect Fines & Fees<br>• Sec. 1983: 14th Amendment Due Process and Equal Protection, 4th Amendment | • City<br>• Westry, Official Capacity<br>• JCS |
| Count 9<br>Appeal Bonds<br>• Sec. 1983: 14th Amendment Due Process and Equal Protection | • City<br>• Westry, Official Capacity |
| Count 12<br>State Law False Imprisonment<br>• Ala. Code Sec. 6-5-170: False Imprisonment | • JCS |
| Count 13<br>State Law Abuse of Process | • JCS |
| Count 14<br>State Law Money Had and Received | • JCS |

The Eleventh Circuit's October 29, 2018 opinion did not consider any of Plaintiffs'

Section 1983 official capacity claims. These claims are well supported by non-conclusory

factual allegations based on combined actions or omissions by the City of Montgomery's City

Council, City Mayors, Police, Jailers, Presiding Judges, Municipal Court staff, and other

policymaking officials in the City's departments and facilities that Plaintiffs allege were involved

in the challenged scheme. Plaintiffs' original complaint named both the City and four of those

involved as individual defendants, and originally sued them in their official, as well as individual

capacities. The redundant official capacity claims were removed from the amended complaint, as

Plaintiffs explained:

> For purposes of 42 U.S.C. §1983 claims, official capacity claims against the individual
> municipal defendants as policymakers for the City are claims against the City itself, and
> redundant. Thus, Plaintiffs' claims against Defendants Strange, Finley, and Murphy,
> individually, are against them in their individual capacities. However, Plaintiffs do sue
> Presiding Judge Les Hayes, III in both his individual and official capacities to preserve
> all claims against him, given Defendant The City of Montgomery's denial of any
> responsibility for, or control over, his challenged actions.

Doc. 32 at FN 14.

    Plaintiffs' Alternative Theories of Municipal Liability. Both the Eleventh Circuit and this

Court have recognized that Plaintiffs have pleaded alternative theories of relief  against the City

that are not dependent on the judicial nature of any individual acts of the judges. And, as the

Circuit Court pointed out in its August 17, 2017 opinion, in citing *Dennis v. Sparks, 449 U.S. 24,*

*28-29 (1980),* the City itself is alleged to be a joint participant in the conspiratorial scheme with

JCS, the presiding judges and others, and as such the City cannot lay claim to any judge's

individual capacity judicial immunity for "judicial acts" in individual cases. *McCullough II*,

Order (Aug. 17, 2017) at 3, No. 17-11554.

    At the August 18, 2016 hearing on the motions to dismiss in this case, counsel for

Plaintiffs began by outlining four alternative theories of relief underlying their claims against the

City of Montgomery.

    [Ms. Morgan]:

    24 [W]e have really a
    25 three-pronged or tiered argument as to why the city is liable
     1 here for all the policies, but particularly those of Presiding
     2 Judge Hayes, because those have been the most contested.
     3 First is because we think Alabama law is very similar
     4 to Georgia law in terms of its treatment of municipal courts. . . .

    6 Secondly, . . . .
    11 We think that the city is liable for the actions based
    12 on many other provisions of law that specifically give the city
    13 control and responsibility for its municipal court and judges. . . .

    16 And third -- I guess here we're going to have belts,
    17 suspenders, and buttons or clasps or whatever.
    18 Third, we say that the city is liable based on the
    19 adoption or ratification of the policies of Presiding Judge
    20 Hayes. . . .

    20 Another [fourth] point here that I'm not sure has been clear,
    21 we're suing JCS as a state actor and joint participant of the
    22 city. And what we mean by that is the city is liable for the
    23 things JCS did as its agent, just as JCS is liable for those

24 acts because it was a state actor….

Doc. 108 (Transcript of August 18, 2016 hearing) at pp. 92-94. See Plaintiffs' First Amended

Complaint, Doc. 32, para. 37: "JCS was a final policymaker for the City of Montgomery with

regard to the adoption and implementation of its contractual administrative policies, practices, or

customs challenged in this lawsuit."

In its August 17, 2017 order dismissing all portions of the appeal filed by the City of

Montgomery, the Eleventh Circuit relied, in part, on this Court's recognition that Plaintiffs

raised alternative theories of relief against the City. The Circuit Court stated:

> First, even if we reversed the district court, and concluded that Judge Hayes is entitled to
> judicial immunity, the City would not be able to claim the same immunity as a matter of
> course. *See Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980). Second, the district court did
> not conclude that the judge was a 'final policymaker' for the city; rather, the court
> expressly declined to decide whether he was. The Court left open the possibility that the
> judge and the City were independently responsible for creating the policies at issue. Thus,
> the City's liability does not necessarily match the judge's.

August 17, 2017 Slip opinion at 2-3. (Emphasis added.) The Eleventh Circuit read Plaintiffs'

amended complaint to fairly include both (1) claims that the City was liable under Plaintiffs' Sec.

1983 claims for conspiracy with Judge Hayes[5] and others with respect to the alleged debtor's

---

[5] Given the Circuit Court's reading of Plaintiffs' amended complaint as sufficiently alleging a
conspiracy between the City and the judge, resort to matters outside the pleadings for illustrative
or other purposes should not be necessary in ruling on the City's Motion for Judgment on the
Pleadings. But if, and to the extent this Court should find it necessary, the materials referred to in
the lengthy footnotes in Docs. 173 and 175 amply *illustrate* the availability of evidence of
subsequent events that further support Plaintiffs' conspiracy claims. See *Geinosky v. City of
Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2013). In particular, see the reports of the mayor and
city council's actions in rehiring Judge Hayes as a $6,500 per month consultant when he was
suspended by the Alabama Court of the Judiciary for ethics violations based on actions directly
involved in the claims in this case and retaining him (until the City was ordered to cease this
conduct and he was ordered to repay the City). And see reports of their more recent respective
actions in renominating and reappointing him as municipal judge despite heated opposition based
on his past actions challenged here and in the Court of the Judiciary.  Doc. 173 FNs 9 and 10 and
Doc. 175 FN 6.

prison scheme, and (2) claims that the judge and the City were independently responsible for creating policies at issue in the case.

Also, as the Circuit Court pointed out, this Court's March 10, 2017 opinion did not conclude that the presiding judge was not a 'final policymaker' for the city with respect to any of the Sec. 1983 claims against the City. ("Rather, the court expressly declined to decide whether he was.") August 17, 2017 Slip Opinion at 2-3. In this respect, our case is similar to *Swint v. Chambers Cty. Comm'n,* 514 U.S. 35, 47 n. 5  (1995), where the U.S. Supreme Court observed:

> The District Court here ruled only tentatively on the county commission's motion and apparently contemplated receipt of further evidence from the parties before ruling definitively. See order denying motions to reconsider, App. to Pet. for Cert. 72a ("The parties will have an opportunity to convince this Court that Sheriff Morgan was or was not the final policy maker for the County, and the Court will make a ruling as a matter of law on that issue before the case goes to the jury."); *cf. Swint v. Wadley,* 5 F.3d 1435, 1452 (CA ll 1993) <u>(to determine whether an official is a final policymaker, a district court "should examine not only the relevant positive law ... but also the relevant customs and practices having the force of law")</u> . . . .

*Id.* (Emphasis added.)

### III.    The Eleventh Circuit Has Squarely Held that Municipalities Can Be Liable Under Section 1983 When State Law Grants Them Authority Over Municipal Court Operations, and Alabama Law Grants the City of Montgomery Broad Authority Over Operations of Its Court at Issue Here

The Eleventh Circuit's recent decision in *Walker v. City of Calhoun, Ga*., upholding the Northern District of Georgia's repeated findings that the City of Calhoun, Georgia could be held liable under Section 1983 for constitutional violations related to its municipal court's bail policy, further supports the denial of the City of Montgomery's motion for judgment on the pleadings here. See *Walker v. City of Calhoun, Ga*., No. 17-13139 (11th Cir. August 22, 2018) (Writ of Certiorari filed as to Appellee Maurice Walker. U.S.S.C. Docket No, 18-814, Denied, April 2, 2019.) In *Walker,* the Eleventh Circuit reasoned as follows:

> Next, the City argues that it is not responsible for its bail policy and hence

cannot be liable for any constitutional violations related to bail under 42 U.S.C. § 1983. <u>The City claims that bail policy is attributable only to the Municipal Court, which it says is independent of the City. The district court disagreed, finding that the Municipal Court acted on behalf of the City and that the City could itself set bail policy directly through its control of its police</u>. *See Walker I*, 2016 WL 361612, at \*13; *Walker III*, 2017 WL 2794064, at \*2 (re-adopting reasoning of *Walker I*).

....

Here, Georgia law indicates that the City has the authority to set bail policy. In Georgia, a municipality's authority flows from "the state, manifested in the constitution, state laws, and the municipal charter." *Porter v. City of Atlanta*, 384 S.E.2d 631, 632 (Ga. 1989). ...

Such broad grant of authority enables the City to regulate bail. In fact, the City already does so. The City requires that, for traffic violations, an "officer, upon receiving the written promise of the alleged violator to answer as specified in the citation, shall release such person from custody." Calhoun Mun. Code § 90-39. ...

*Walker*, Slip opinion at pp. 12-13. (Emphasis added.) Also see, *Kneisser v. McInerney*, No. 1:15-cv-07043, Doc. 54 (D. N.J. March 30, 2018) (well-reasoned opinion granting the plaintiff's motion for partial summary judgment on 4th, 6th and 14th Amendment claims that the township itself was liable for a debtor's prison scheme, notwithstanding the municipal court being considered a part of the state judicial system). In particular, *Kneisser* contains a lengthy discussion of how caselaw increasingly is recognizing the *"blurry line"* between cities and their municipal courts. Slip Opinion at pp. 25-40; p. 39.

Plaintiffs' allegations reference the City's broad legal authority over and responsibility for its municipal court.  E.g., Doc. 32, para. 29: "The City is responsible for the administrative policies, practices or customs related to the operation of the Municipal Court that are challenged in this case, whether made by Defendant Hayes or any other final policymaker for a particular aspect of the operation of the Municipal Court." In Alabama, as in Georgia and other states, a municipality's authority flows from the state, manifested in its constitution, state laws and municipal charter. See *Ex parte Tulley,* Case No. 1140049, at 24-25 (Ala. Sept. 4, 2015).[6] Under

---

[6] See *Ex parte Tulley,* Case No. 1140049, at 24-25 (Ala. Sept. 4, 2015):

Alabama law, cities also may exercise such powers as are "necessarily implied in or incident to the powers expressly conferred, and those indispensably necessary to the accomplishment of the objects of the municipality." *Id.*[7]

Such broad grants of authority enable the City of Montgomery to regulate bail, and like the City of Calhoun, Georgia, City of Montgomery has already regulated bail. The Montgomery Municipal Code contains a provision almost identical to Calhoun Mun. Code § 90-39. Montgomery Municipal Code Sec. 27-123 provides that,"[t]he [police] officer, upon receiving

---

[We] are guided by the following overarching principles: "A municipal corporation is but a creature of the State, existing under and by virtue of authority and power granted by the State." *Hurvich v. City of Birmingham,* 35 Ala. App. 341, 343, 46 So. 2d 577, 579 (1950). "Municipal corporations may exercise only such powers as are expressly granted to them by the Legislature or necessarily implied in or incident to the powers expressly conferred, and those indispensably necessary to the accomplishment of the objects of the municipality." *Phenix City v. Putnam,* 268 Ala. 661, 664, 109 So. 2d 836, 838 (1959). "Although municipalities exercise 'such power ... as is conferred upon [them] by law,' a municipality need not predicate its every action upon some specific express grant of power. Alabama's cities possess certain implied powers that derive from the nature of the powers expressly granted to them by the legislature." *Wilkins v. Dan Haggerty & Assocs., Inc.,* 672 So. 2d 507, 509 (Ala. 1995). . . .

[7] The City of Montgomery's municipal charter further provides:

Sec. 2.03. - Powers of city.

The city shall have all the powers granted to municipal corporations and to cities by the Constitution and laws of this state together with all the implied powers necessary to carry into execution all the powers granted. The city may acquire property within or without its corporate limits for any city purpose, in fee simple and any lesser interest or estate, by purchase, gift, devise, lease or condemnation, and may sell, lease, mortgage, hold, manage and control such property as its interests may require; and, except as prohibited by the Constitution of this state or restricted by this act, the city shall and may exercise all municipal powers, functions, rights, privileges and immunities of every name and nature whatsoever. The enumeration of particular powers by this act shall not be deemed to be exclusive, and in addition to the powers enumerated therein or implied thereby, or appropriate to the exercise of such powers, it is intended that the city shall have and may exercise all powers which, under the Constitution of this state, it would be competent for this act specifically to enumerate.

Montgomery, Alabama Code of Ordinances, Appendix A – Local Acts, Chapert 1. Act No. 168 of 1973 (p. 879), Mayor-Council Form of Government.

the written promise of the alleged violator to answer as specified in the notice, may release such

person from custody."

Moreover, the reasoning regarding municipal liability in *Walker* applies not just to

Plaintiffs' challenges to the City of Montgomery's bail policies, but also to their challenges to

the many other aspects of the City's joint participation in the policies or practices in the

challenged "debtor's prison" scheme. For example, the Alabama Code permits, but does not

require, municipalities to assess additional court costs. E.g., Ala. Code Sec. 12-14-14. By

ordinance, the City of Montgomery has both (a) assessed an additional **$10** court costs and (b)

authorized its municipal court to assess additional costs and fees up to an amount not to exceed

those fees levied by the county district court (**$46** in 2014). Montgomery Mun. Code Sec. 17-18,

Amended Complaint at fn. 13. The City characterizes these as "moderate additional court costs"

and argues that "nothing in these ordinances suggests that the City is exercising any influence

over the court with respect to any wrong alleged." Doc. 174 at p. 6. But $56 is not a "moderate"

additional amount to indigent defendants! And the resulting even higher cumulative debts are at

the heart of the wrongful scheme alleged! See, e.g., Doc. 32, para. 44:

> 44. When individuals are ticketed for more than one traffic violation at the same
> time, according to policy, practice, or custom adopted by Presiding Judge Les Hayes for
> the Montgomery Municipal Court, and ratified by Mayor Strange, each ticket is treated as
> a separate case, with court costs and other fees assessed on each ticket, even though all
> tickets are handled in a single court proceeding. This policy, practice or custom results in
> high cumulative debts for fines, fees, court costs and surcharges, sometimes amounting to
> thousands of dollars, that indigent individuals are unable to pay. Under the Municipal
> Court's currently posted fines schedule, uniform court costs of $155 are added to all
> fines, even those for as little as $10 (e.g., failure to dim lights or improper muffler) or $20
> (e.g., expired license or expired tag). For delinquent fines of these amounts, when an alias
> warrant is issued, the total amounts due rise to $207 and $295 per ticket, respectively.

Moreover, the City has acknowledged that these "moderate" additional costs its City

Council has either directly imposed ($10) or authorized the judges to impose ($46), along with

other costs, are then *uniformly* added to *all tickets*, thus including each of the numerous

"stacked" tickets issued on a single incident. See Answer, Doc. 138 at para. 44. The City's attempt to justify this practice by pointing to state law providing that each ticket be assigned a separate case number is unavailing. The practice of imposing such multiple costs is in direct violation of the clear text of Ala. Code § 12-19-150 (c) which defines a "case" for these purpose. ("*For the purpose of assessing fees* in criminal cases, *a case shall include all offenses arising out of the same incident*.")[8] (Emphasis added.) The uniform assessment of these multiple costs cannot be squared with the limited discretion afforded judges to deviate from the stated rule in individual cases. Nor would evidence that on rare occasions an individual judge might exercise his or her discretion to "waive" such multiple fees justify the general practice. The state law *rule* is *no multiple costs* (with the possibility of case-by-case discretionary exceptions)—not a rule permitting uniform assessment of multiple costs (with the possibility of case-by-case discretionary waivers).

In addition, Rule 20 (C) of the Alabama Rules of Judicial Administration (adopted by the Alabama Supreme Court on November 9. 1976, effective on January 16, 1977) permits, but does not require, municipalities to be involved in setting fine schedules (which themselves are then used in determining both sentences and required bail amounts).  Again, the City of Montgomery's City Council has done so, and its supplementary fines include violations for whic Plaintiffs were frequently ticketed. Montgomery Mun. Code Sec. 17-19, Amended Complaint at fn. 13.

---

[8] Ala. Code § 12-19-150 (c) states in full:
> For the purpose of assessing fees in criminal cases, a case shall include all offenses arising out of the same incident.   Fees shall be assessed on the basis of the most serious offense of which the defendant is convicted, provided, that the judge may, in his discretion, assess costs for each conviction.   When two or more defendants are charged in the same indictment or complaint, fees shall be assessed against them separately, as if they had been charged separately.

In short, regardless of whether the presiding judge, in his official capacity, is a state or municipal officer with respect to court policies challenged in this case, it is undeniable that Plaintiffs have sufficiently pleaded claims that the "judge and the City were independently responsible for creating the policies at issue." *McCullough II* August 17, 2017 Order, *Id*. at 3.

**No Wall of Separation Exists Between Alabama Municipalities and their Courts.**

The futility of current defense attorneys' continuing to maintain that some imaginary and impermeable wall separates the City of Montgomery, Alabama and its municipal court and judges (all the while representing both the City and judges for most of this and prior related litigation) should be apparent. Wishing does not make it so; the bright and unwavering line that defense counsel attempts to draw between the City and its municipal court does not exist in law or in fact and never has. Defense counsel has acknowledged, in the City's Answer to the amended complaint that it was only after this Court preliminarily enjoined the City from collecting fines and fees in an earlier debtor's prison case (and after new attorneys entered the case alongside the City's own attorney), that the City even asserted it was not responsible for the challenged actions and policies of its municipal court. The City's Answer states:

> 5. It is admitted that the City of Montgomery and Presiding Judge Les Hayes, III entered into settlement agreements in three prior cases: 2:13-cv-732-MHT; 2:13-cv-733-MHT and 2:14-cv-186-MHT. <u>It is further admitted that on May 1, 2014, a preliminary injunction was entered in Case No. 2:14-cv-186 based in part on a finding that plaintiffs there were likely to succeed on the merits *but prior to the City asserting that it has no authority or control over the judicial actions or policies of the Municipal Court.*</u> The remaining allegations of this paragraph are denied.

Doc. 138 at para. 5. (Emphasis added.)

It is also telling that the Attorney General of the State of Alabama never has entered an appearance on behalf of any of the City of Montgomery's municipal judges, in either their individual or official capacities, in this case or in any of the above related cases. The Attorney General's Office is well aware of these cases and other related litigation and did enter an

appearance on behalf of the Montgomery County District Attorney in *Rudolf v. City of Montgomery*, No. 2:16-cv-57-RCL, M.D. Ala. In contrast, in our case the Attorney General's Office actually filed an *amicus* brief in the Eleventh Circuit—very unusual behavior if the presiding municipal court judges are state officials with respect to their adoption and implementation of any of the policies, practices and customs challenged here. See Brief of the State of Alabama as *Amicus Curiae* in Support or Appellant Hayes and Reversal, filed June 7, 2017 by Attorney General Steven T. Marshall and other counsel in his office.

**No Wall Has Ever Existed in this State: The Long History of Alabama Law on Municipal Corporations and Their Courts.** Looking to the historical status of municipalities, under both the common law of England and in the United States, sheds important light on today's "blurry line" between Alabama cities and their municipal courts.[9] In *State ex rel. Wilkerson v. Lane*, 181 Ala. 646, 62 So. 31 (1913), the Alabama Supreme Court traced this history[10] and

---

[9] The historical status of municipal corporations under state law underlies the U.S. Supreme Court's holding in *Lincoln County v. Luning*, 133 U.S. 529 (1890), that suits against municipal corporations are not considered suits against states under the 11th Amendment. And compare *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) (cities and their officials acting in their official capacities are "persons" under Section 1983) with *Will v. Michigan Dept. of State Police,* 491 U.S. 58 (1989), (States and their officials acting in their official capacity are not "persons" when sued for monetary damages under Sec. 1983).

[10] Writing for the court in *State ex rel. Wilkinson v. Lane*, Judge DeGraffenried described the traditional two-fold character of municipal corporations as both public and private entities and examined the traditional status of municipalities and their courts, both under the common law of England and Alabama law. His opinion states:

> At common law the citizens of towns and cities were subjects of the crown, but their officers were not crown officers. . . .
> [T]he town people acquired the right to regulate, by their own town laws, their internal affairs and by officers selected by themselves, to collect the town's taxes and to administer justices [sic] under their own valid town ordinances, an early distinction was drawn between a town officer and an officer of the crown, and between mere town affairs and the affairs of the crown or general government. . . . In truth, we do not see how, unless the historical development of municipal law is entirely discarded, it can be held upon sound reasoning that, in a state with a constitutional and statutory history like our own, a mere municipal officer can be held to be, within the meaning of our Constitution, an officer of the state.

relied upon it to hold that the 1901 Alabama Constitution's separation of powers doctrine does

not apply to municipal governments. Justice DeGraffenried's opinion stated:

> Section 42 of the Constitution declares that the powers of the government of the state of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, viz., the legislative, the executive, and the judicial. Section 43 of the Constitution provides that in the government of the state, except in the instances expressly directed or permitted by the Constitution, the legislative department shall never exercise the executive and judicial powers or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; and that the judicial shall never exercise the legislative and executive powers, or either of them.
>
> A casual reading of these sections will disclose that they have no applicability, and were never intended to apply, to mere town or city governments or to mere town or city officials. It is but familiar history that frequently a mayor of a town in the state was its only judicial officer, and, in many of our towns, that condition exists to-day. The mayor was the chief executive officer of the town and at the same time he was the only judicial officer of the town. The mere fact that he was a judicial officer in no way precluded him from serving the town as an executive officer. *State v. Ure*, 91 Neb. 31, 135 N.W. 224. This being true, there can be no constitutional objection to attaching executive, administrative, or legislative duties to one of the members of the board under discussion, who is a judicial officer, if one of the members is a judicial officer.

The Alabama Supreme Court continues to cite to its holding in this 1913 case, well after the

1973 revisions to the judicial article discussed below. See *Baldwin County v. Baldwin County*

*Cattle & Fair Assoc., Inc.*, No. 1120599 (Alabama Supreme Court, September 20, 2013): "We

have held that the separation-of-powers doctrine does not apply to local municipal governments.

*State ex rel. Wilkinson v. Lane*, 181 Ala. 646, 658, 62 So. 31, 34 (1913)."

Given this long history, it is not surprising that the original Judicial Department Article of

the 1901 Alabama Constitution did not mention (and, as shown above, was not read to include)

municipal courts. *See* 1901 Alabama Constitution, Art. VI, Sec. 139 which stated:

> Section 139 Vesting of judicial power; minimum standards for establishment of courts of general jurisdiction in counties.
> The judicial power of the state shall be vested in the senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and to consist of not more than

---

*Id.* at 651-53.

five members, as the legislature from time to time may establish, and such persons as may be by law invested with powers of a judicial nature . . . .

**The History Behind Today's Blurry Line.** In 1973, Amendment 328 was ratified, replacing the original article of the 1901 Constitution on the Judicial Department with the current Article VI on Judicial Power. *See* 1901 Constitution of Alabama, Amendment 328 (1973).  The campaign to adopt Amendment 328 was led by then Chief Justice Howell Heflin. The text of the original version of the proposal for a new Article VI came from Governor Albert Brewer's Constitutional Commission's 1973 Proposed Constitution. This proposal did not mention municipal courts as part of the new unified judicial system it created. *See* One Idea for a New State Constitution: The 1973 Proposed Constitution 23 (1973).

The Alabama League of Municipalities opposed this original version of the proposal for a new Article VI because, as they read it, municipal courts were to be eliminated and their jurisdiction over cases arising under municipal ordinances was to be transferred to state control as part of the jurisdiction of the new state district courts.  Municipal officials' strong opposition to this proposal led to an amendment to the proposed judicial article, later ratified as Amendment 328, which expressly allowed municipalities the *option* of keeping their municipal courts or of having the limited jurisdiction that they exercised fall to the state district courts.  As Professors James Thomas and William Stewart have noted, "[t]heir success in getting the judicial article amended so that city courts could be retained if desired demonstrates the municipal officials' considerable political clout."  James D. Thomas & William H. Stewart, Alabama Government & Politics, 103 (1988).

As this history shows, the very reason municipal courts with their limited jurisdiction were included in the new Article VI was to ensure their optional right to exist as municipal courts rather than be abolished and have their limited jurisdiction subsumed into the new state district courts.

16

Section 6.01(a) of the Article VI, as adopted by Amendment 328, now states:

6.01 Judicial power.
    (a)  Except as otherwise provided by this Constitution, the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of a supreme court, a court of criminal appeals, a court of civil appeals, a trial court of general jurisdiction known as the circuit court, a trial court of limited jurisdiction known as the district court, a probate court *and such municipal courts as may be provided by law.*
(Emphasis Added.)

Article VI, Sec. 6.065[11] further provides:

6.065 Municipal courts.
    All municipal courts shall have uniform original jurisdiction limited to cases arising under municipal ordinances as prescribed by law. Judges of municipal courts shall be licensed to practice law in the state and have such other qualifications as the legislature may prescribe. A municipal judge may serve as a judge of more than one municipal court. Expenses of municipal courts and compensation of municipal judges shall be paid in a manner prescribed by law notwithstanding the provisions of section 6.09 [judicial compensation] of this article. Municipal judges shall be appointed and vacancies filled by the governing body of the municipality, in accordance with uniform terms, conditions and procedures as may be provided by law, notwithstanding the provisions of sections 6.13 [election of judges], 6.14 [vacancies in judicial office] and 6.15 [tenure of office] of this article. The prohibited activities of section 6.08(a) [engaging in the practice of law] and (b) [seeking or accepting nonjudicial elective office] shall not be applicable to a judge of a municipal court.
    *The governing body of a municipality shall have the right to elect at any time to abolish the municipal court* within its limits. If such election is exercised, the jurisdiction of the court abolished shall be transferred to the district court of the district in which the municipality is located. *The governing body of a municipality, may, at its election, re-establish a municipal court after appropriate notice.*
(Emphasis Added.)

So now, if and when the governing bodies of Alabama municipalities choose to establish and operate them, municipal courts are constitutionally protected as part of Article VI's "unified judicial system." But the blurry line still existing between these cities and their courts is abundantly evident in the new Article VI itself. It is true that Article VI gives the Alabama

---

[11] The numbering of this section on municipal courts (6.065) in the official version of Amendment 328 of the Alabama Constitution demonstrates it was simply inserted between sections 6.06 and 6.07 to avoid renumbering the sections of the original proposal. The Alabama Legislature has since adopted a purported "Recodification" of the 1901 Constitution that uses different numbering for the sections of Article VI (i.e., Sections 139-162 rather than Sections 6.01-6.21).

Supreme Court rule-making authority over "all courts" (subject to legislative revision-which can include grants of rule-making authority to municipalities). Art. VI, 6.11. And all judges are subject to the ethical standards and complaint procedures of the new Judicial Inquiry Commission created by Art. VI, 6.17, and the Court of the Judiciary created by Art. VI, 6.18.[12] But the now constitutionally protected jurisdiction of Alabama cities' municipal courts is explicitly limited and is itself left to the control of the governing body of the City through its adoption of municipal ordinances: "All municipal courts shall have uniform original jurisdiction limited to cases arising under municipal ordinances as prescribed by law." Art. VI, Sec. 6.065. The authority and option to establish, abolish and reestablish municipal courts, and to appoint municipal judges is left to the governing body of the municipalities.  Art. VI, Sec. 6.06.  And municipal courts and judges are expressly exempted from many of Article VI's provisions. Art. VI, 6.065.

Thus, apart from vesting judicial power in municipal judges to decide individual cases, Article VI does little to upset municipalities' traditional broad authority over, and responsibility for, their courts. Indeed, Alabama law grants the mayors of Alabama municipalities that choose to operate municipal courts (not the Governor of the State), the express power to grant pardons, remit municipal court fines and costs, and commute sentences (even after appeal to other courts) and the duty to report such actions to the City Council. See Ala. Code Section 12-14-15. [13] See

---

[12] See, e.g., Doc. 109-1, JIC Complaint *In the Matter of Armstead Lester Hayes,III* , Case No. 49, also available at http://judicial.alabama.gov/docs/judiciary/COJ49Complaint.pdf; Agreement and Stipulation of the Parties, *In the Matter of Armstead Lester Hayes,III* , Case No. 49, available at http://judicial.alabama.gov/docs/judiciary/COJ49Agreement.pdf; Final Judgment, Court of the Judiciary, *In the Matter of Armstead Lester Hayes,III,* Case No, 49 (January 5, 2017), available at http://judicial.alabama.gov/docs/judiciary/COJ49FinalJudgment.pdf  . See Doc. 173 at FN 9 for excerpts from these proceedings against Judge Hayes in the Judicial Inquiry Commission and the Court of the Judiciary Proceedings.
[13] Section 12-14-15. Power of mayor to remit fines and costs, commute sentences imposed by municipal judges, etc.; report of actions to municipal governing body.

also City of Montgomery Municipal Code Sec. 17-15, Amended Complaint Doc. 32 at fn 13.

Thus, the City of Montgomery, through its mayor in his or her official capacity, has express state

and municipal code authority to modify or set aside the judicial decisions of its municipal court

judges in individual cases.

The Alabama Legislature has demonstrated its understanding of the limited and City-

controlled jurisdiction of municipal courts under the new Art. VI  in enacting Alabama Code §

12-14-1. This Code provision grants municipal courts the ability to exercise "concurrent"

jurisdiction with the district courts over  "all acts constituting *violations of state law* committed

within the police jurisdiction of the municipality *which may be prosecuted as breaches of*

*municipal ordinances.* (Emphasis added). This authorization to prosecute violations of state law

but only if the state law is incorporated by at least a general municipal ordinance demonstrates

the legislature's understanding that municipal courts now are given constitutional protection as

part of the unified judicial system, but remain courts whose very jurisdiction is self-defined by

the City, i.e., "cases arising under the municipality's own ordinances." Art VI, Sec. 6.065.

In addition, as Plaintiffs' pointed out in their response to the City's motion to dismiss, Doc.

57 at pp. 17-18:

> [S]upport for Plaintiffs' contention that the City of Montgomery is subject to liability on the
> claims brought against it in this case includes Alabama municipalities' express authority and
> duty to furnish facilities and personnel for their municipal courts and their necessarily
> implied powers, including but not limited to entering into contracts with JCS for collection of
> delinquent fees. *Wilkins v. Dan Haggerty & Assocs., Inc.,* 672 So. 2d 507, 509 (Ala. 1995).

---

The mayor may remit fines and such costs as are payable to the municipality and
commute sentences imposed by a municipal court or the court to which an appeal was
taken for violations of municipal ordinances and may grant pardons, after conviction, for
violation of such ordinances, and he shall report his action to the council or other
governing body at the first regular meeting thereof in the succeeding month with his
reasons therefor in writing.

Other relevant powers and responsibilities (and those which can be necessarily implied thereby) imposed upon Alabama municipalities include, but are not limited to: the power to appoint municipal judges, as authorized by Ala. Code 12-14-30(a) (and the implied authority and responsibility to provide sufficient number of municipal judges to meet constitutional standards for providing meaningful pre-deprivation hearings, etc.); the power of the mayor to designate a presiding judge whose additional duties and responsibilities, and additional pay are determined by the city, as authorized by Ala. Code 12-14-30(a); the responsibility of providing indigent defense services, as required by Ala. Code § 12-14-1912 (including both express and implied responsibility to provide sufficient indigent defense services to meet constitutional standards); the duty of furnishing prosecutorial services, as required by Ala. Code § 12-14-2(b); and the duty of reporting on the proceedings of their municipal courts, as required by Ala. Code § 12-14-16 (and the corresponding implied duty to be aware of the number of cases being processed, the number of persons imprisoned for debt, and the numbers of appeals and the consequent responsibility for providing sufficient judges, public defenders, and other personnel to operate in compliance with constitutional standards). (Doc. # 32, ¶ 40). The City has admitted knowledge that hundreds have been jailed for nonpayment of fees. (Doc. # 32, ¶ 64).

Footnote 13 to Paragraph 28 of Plaintiffs' Amended Complaint[14] incorporates by express reference and title each provision of Chapter 17 of the City of Montgomery's Municipal Code, including both sections adopting relevant state law provisions that detail the City's authority over its municipal courts and judges and those exercising state law granted options to regulate other relevant operations of these courts including fines, and court costs as discussed above.

---

[14] Footnote 13 states:

> An entire chapter of the Code of Municipal Ordinances of the City of Montgomery, Alabama is devoted to the operation of the Municipal Court. Chapter 17 of the Code of Ordinances of the City of Montgomery, Alabama covers:
> Sec. 17-1. - Jurisdiction; Sec. 17-2. -Municipal judge generally; Sec. 17-3. – Selection of judges; Sec. 17-4. - Compensation of municipal judge; Sec. 17-5. - Appointment and duties of clerk; Sec. 17-6. - Appointment and duties of prosecuting attorney; Sec. 17-7. - Time and place of holding court; Sec. 17-8. - Execution of warrants and processes for service; Sec. 17-9. - Cases to be tried without jury; Sec. 17-10. - Judicial notice of ordinances; Sec. 17-11. - When and how prosecutions commenced; Sec. 17-12. - Officers empowered to administer oaths and issue warrants; Sec. 17-13. - When warrant to be issued; Sec. 17-14. - Authority of municipal judge; Sec. 17-15. - Acceptance of defendant's bond; Sec. 17-16. - Suspension of sentence; probation; Sec. 17-17. - Warrants; Sec. 17-18. - Court costs; Sec. 17-19. - Fine schedules. modified; Sec. 17-20. - Powers of mayor; Sec. 17-21. - Prosecutions of corporations; Sec. 17-22. - Appeals.

Ultimately, if the City cannot assure the operation of its Court in a constitutional manner, the Montgomery City Council has the state constitutionally conferred and statutorily described power (and the federal constitutionally imposed duty) to abolish the municipal court and transfer its jurisdiction and docket to the state district court for Montgomery County, at least until it can reestablish a constitutionally sound city court.[15] 1901 Alabama Constitution, Amendment 328, Article VI, Sec. 6.065; Ala. Code Sec. 12-14-17. And this Court unquestionably has the power to issue either injunctive or declaratory relief (as well as damages) against the City and its City Council in this regard.

IV. **The City's Motion Purports to be Based on the Eleventh Circuit's October 29, 2018 Opinion But that Opinion Contains Nothing That Calls Into Question this Court's Prior Holdings that Plaintiffs Have Pleaded Numerous Plausible Entity Liability Claims Against the City of Montgomery**

A. **The Eleventh Circuit Considered Only Allegations of the "Precise Acts" Judges Performed in Plaintiffs' Individual Cases, Not the General Policies Plaintiffs Allege Were Adopted in their Official Capacity as Presiding Judge.**

The Eleventh Circuit's October 29th opinion denying Plaintiffs' Count 7 and 12 individual capacity claims against judges explicitly limited its consideration to "[t]he precise acts that the jailees allege the judges performed" in their individual cases (i.e., the judges' precise acts related to "their probation procedure, hearings, provision of counsel, sentences, and work

---

[15] See Amended Complaint Doc. 32 at FN 3's reference to a case against the City of Harpersville, Alabama, where the city's municipal court was abolished and has since been reestablished. See also, Kent Faulk, Judge allows Harpersville to restart court after debtor's prison allegations, al.com, Sep 9, 2016, https://www.al.com/news/birmingham/2016/09/judge_allows_harpersville_to_r.html .
Footnote 3 states:

> Judge Hub Harrington of the Shelby County Circuit Court found that a similar scheme, operated by the City of Harpersville, Alabama and JCS, could reasonably be characterized as the operation of a "debtors' prison," though these had generally fallen into disfavor by the early 1800's. He lamented that "a judicially sanctioned extortion racket" might be a more apt description of the practices. *Burdette v. Town of Harpersville*, Civil Action No.: CV 2010-900183 (Order of July 11, 2012).

program"). Slip opinion at p. 10. The opinion then explained and applied this Circuit's four-

factor test to determine whether these precise acts were judicial in nature.

> [W]e determine whether the nature and functions of the alleged acts are judicial by
> considering four factors:
>> (1) the precise act complained of is a normal judicial function; (2) the
>> events involved occurred in the judge's chambers; (3) the controversy
>> centered around a case then pending before the judge; and (4) the
>> confrontation arose directly and immediately out of a visit to the judge
>> in his official capacity.
> *Dykes,* 776 F.2d at 946 . . . Each of those factors favors immunity here.

Slip Opinion at 10.

In deciding the judges were entitled to  individual capacity judicial immunity for their

precise acts in Plaintiffs' individual cases, the Circuit Court did not consider the Plaintiffs' Sec.

1983 entity liability challenges to the general policies they allege were adopted by the Presiding

Judge(s) in their official capacity as presiding judge. Instead, the opinion expressly distinguishes

the precise acts the jailees alleged that the judges performed in their individual cases from a

presiding judge's administrative acts performed in his capacity as presiding judge. It declares, in

the strongest terms:

> Although we **agree** that a judge is **not** entitled to judicial immunity for administrative
> acts performed in his capacity as presiding judge, *see Forrester*, 484 U.S. at 228, the
> judges' acts were not administrative simply by virtue of the fact that each served as
> presiding judge of the Montgomery Municipal Court. In other words, the judges' judicial
> acts were not transformed into administrative acts because the judges held a status as
> presiding judge.

Slip opinion at p. 11. (Emphasis added.)

Judge Haikala's opinion for the Northern District of Alabama in *Hester v. Gentry*, No.

5:17-cv-00270-MHH (N.D. Ala. November 8, 2018) draws upon the distinction the Eleventh

Circuit recognized in our case between judges' acts in individual cases and the acts of a presiding

judge issuing general policy orders in his capacity as presiding judge. In *Hester,* the District

Court applied the Eleventh Circuit's four-factor analysis set out above and concluded that the

Cullman County District Court presiding judge's adoption of a standing bail order as a general matter of procedure and outside of a particular criminal case was *not* a judicial act. *Hester* at 14-17. Accordingly, the District Court denied defendants' motions to stay its preliminary injunction[16] against enforcement of the presiding judge's general bail policy during the ongoing interlocutory appeal. More recently, the Eleventh Circuit also has denied Defendant/Appellants' motions to stay this injunction pending appeal and expressly directed its clerk to " to treat any motion for reconsideration of this order as a non-emergency matter." February 8, 2019 Order in *Hester v. Gentry,* 11th Cir. Case No 18-13894.

The Eleventh's Circuit's October 29, 2018 opinion's analysis of the precise acts the judges are alleged to have performed in Plaintiff's individual cases does not address Plaintiffs' allegations concerning either written or unwritten general policies of the Presiding Judges in this case.  In particular, the City is wrong that, "Count XII was explicitly based on the Court's standing bail order." City's Reply Brief on Motion for Partial Lifting of Stay, Doc. 174 at p. 7. Rather, as the reply brief goes on to say, "[t]he Plaintiffs alleged as part of the claim *imprisonment for "failure to pay fixed-sum bail or bonds."* Doc. 32 at ¶ 267." *Id*. (Emphasis added.) Proof that a defendant acted pursuant to a policy or custom is not an element of an individual capacity false imprisonment claim under Alabama law. (Ala. Code § 6-5-170: "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.") Accordingly, no allegations about the *standing bail order* and no mention of Plaintiffs' Count 4 Sec. 1983 entity liability claims based on bail

---

[16] Not only does *Hester* support Plaintiffs' claims of City liability, the opinion demonstrates why, that at least with respect to claims based on such general administrative orders, 42 U.S.C. Section 1988 does not restrict the availability or timing of claims for injunctive, rather than merely declaratory, relief against Presiding Judge Westry in his official capacity, regarding his administrative policies, regardless of his status as a local vs. state policymaker.

policies are contained in Count 12's individual capacity claims against the judge and mayor that

the Circuit Court dismissed.[17] Indeed, despite the City's even broader mischaracterizations of

Plaintiffs' state law false imprisonment claims,[18] Plaintiffs' Count 12 allegations are not

premised upon any of their Sec. 1983 claims of violations of federal law (other than claims of

racial discrimination in the false arrest claims which now have been dismissed by this Court) as

bases for the unlawfulness of their imprisonment. The alleged unlawfulness of their detentions in

Count 12's false imprisonment claims is based solely on state constitutional and statutory

provisions related to debt, indigency, and fines and fees.[19]

---

[17] Paragraph 267 of the Amended Complaint states in full:

    267. The Defendant Mayor Todd Strange and Presiding Judge Les Hayes, III, in performance of discretionary functions, instigated, participated in and/or caused the unlawful detentions of Plaintiffs, through warrants, arrests, placements on probation with JCS, probation revocations, and detentions or imprisonments of Plaintiffs, and others similarly situated, as detailed in the factual allegations for individual Plaintiffs, (despite their lack of willfulness in failing to pay, and despite their indigency or inability to pay), for failure to pay fixed sum bail or bonds, fines, court costs, fees, and other debts. Thereby, Mayor Todd Strange and Presiding Judge Les Hayes, III, in their individual capacities, and in violation of their personal duties to Plaintiffs, and others similarly situated, arising under Ala. Code § 6-5-170, did intentionally and unlawfully instigate, participate in, cause and/or induce, or aid and abet, the detention of the persons of Plaintiffs for varying lengths of time, as long as nine months, whereby they were directly restrained and deprived of their personal liberty and subjected to false imprisonment (including false arrest) in violation of Ala. Code § 6-5-170.

[18] See, Doc. 180 at p.4 FN 2:

    These conclusions were, of course, necessary to the Court's holding, because the state-law false-imprisonment claim which was appealed in connection with the judge's liability in his individual capacity, and which was squarely before the Court on appeal, was an amalgamation of all of the several wrongs alleged in the Amended Complaint. See, e.g., Doc. 32 ¶ 267 (listing as basis for false imprisonment count: "unlawful detentions of Plaintiffs, through warrants, arrests, placements on probation with JCS, probation revocations, and detentions or imprisonments of Plaintiffs, and others similarly situated, as detailed in the factual allegations for individual Plaintiffs, … for failure to pay fixed sum bail or bonds, fines, court costs, fees, and other debts").

[19] Doc. 32 at para. 270 states:

    270. Defendants [] in their individual capacities, have each acted (1) beyond his or her authority (e.g., contrary to and in violation of their personal duties to Plaintiffs and others similarly situated arising under Ala. Code § 6-5-170; under clear federal prohibitions on

In addition, the Eleventh Circuit presumably read Plaintiffs' allegations concerning Presiding Judge Hayes' issuance of General Order No. 2013-0001 In re: Extension/JCS Placement, but had nothing to say about the "nature" of this general administrative order on procedures for collection of amounts owed the City—rather than the judges' acts in individual cases. As its title indicates, this collection procedures policy was not limited to cases assigned to JCS but covers both payment extensions and JCS Placement. Paragraph 35 of Plaintiffs' amended complaint (Doc. 32 para. 35) alleges:

> *As Presiding Judge*, Defendant Hayes' *administrative and executive functions* included responsibility for establishing *written and unwritten policies and practices for the day-to-day administration* of the City of Montgomery's contract with JCS, which was

racial discrimination; and/or under detailed state rules on imprisonment for debts that are so clear as to remove Defendants' judgment, including Const. of Ala., Art. I, Sec. 20: "That no person shall be imprisoned for debt.", Ala. Code § 15-18-62 (fines and costs can be converted into jail time only if a defendant is found to have willfully failed to pay the fines or costs), and Rule 26.11(i)(2) of the Alabama Rules of Criminal Procedure ("In no case shall an indigent defendant be incarcerated for inability to pay a fine or court costs or restitution."); (2) recklessly, wantonly, willfully, maliciously, fraudulently, or in bad faith (e.g., by willfully acting beyond detailed scope of Defendants' authorities, and by willfully misinterpreting clear and unambiguous laws, all for the purpose of generating and collecting revenue, with malicious disregard for the plight of minority or indigent individuals such as Plaintiffs who are subjected to profiling or subjected to the cruel punishment of spending time in jail); and (3) under a mistaken interpretation of the law (e.g., mistaken interpretations of Ala. Code § 6-5-170, the federal constitutional and statutory law with regards to the legality of profiling, state law with regard to legality of JCS contracts, and/or state law provisions cited above on imprisonment for debts), coupled with willfulness, maliciousness or bad faith.

After, the Eleventh Circuit's grants of immunity to Judge Hayes and Mayor Strange, the only Count 12 claims remaining are those against JCS. See Doc. 32, paras 268-269, alleging:

268. Defendant JCS and its employees unlawfully induced and procured, instigated or participated in, and/or aided and abetted in the detentions through warrants, arrests, probation revocation, detention and incarceration of indigent Plaintiffs for failure to pay bonds, fines, court costs, fees, and other debts pursuant to which Plaintiffs were intentionally and unlawfully detained for varying lengths of time, as long as nine months, during which they were restrained and deprived of their personal liberty and thus subjected to false imprisonment (including false arrest) in violation of Ala. Code § 6-5-170.

269. Defendant JCS is liable for the acts of all of its employees who arrested or otherwise instigated or participated in the detentions of Plaintiffs or who aided or abetted this false imprisonment [].

made on behalf of the Municipal Court. *In the exercise of these administrative powers and duties for the City, Presiding Judge Hayes adopted a standing order* setting certain policies for the Municipal Court for implementation of the City's contracts with JCS. See, "In re: Extension/JCS Placement, General Order No. 2013-0001." (Emphasis added.)

Although the Eleventh Circuit did not consider General Order No. 2013-0001 relevant in deciding the non-Sec. 1983 individual capacity claims before it, it is a relevant and important general policy (explicitly referenced in the amended complaint) in the consideration of the remaining entity liability claims in this case. In its Answer, Doc. 138 at para. 35, the City admits that Judge Hayes entered the order "as Presiding Judge of the Municipal Court," but then "explicitly" denies "that General Order No. 2013-001 had any connection with the implementation of the City's contract with JCS."

     **B.  The Eleventh Circuit's Consideration of the Lone Non-Conclusory Allegation It Found Relevant to the Count 7 and 12 Claims Against Mayor Strange In His Individual Capacity Did Not Take Into Account Plaintiffs' Other Factual Allegations Concerning the City Mayors' Participation in Alleged Entity Liability Claims Under Section 1983**

The Eleventh Circuit did not consider any of the Plaintiffs' Section 1983 claims against the City involving any actions of any of its mayors in their official capacities. Indeed, apart from the factual allegations about judicial misconduct, the Circuit Court found only one non-conclusory factual allegation that it considered relevant to the individual capacity claims against Mayor Strange (or the police chiefs) in the Counts before it. The Court described this as the allegation "that the City of Montgomery collected more fines and court costs than the City of Huntsville, which has a similar population." Slip opinion at 19. The opinion stated that, "even if true, the difference in municipal revenues does not 'nudge[] [the jailees'] claims across the line from conceivable to plausible,' *Twombly*, 550 U. S. At 570." It found Plaintiffs had failed to allege sufficient factual details (such as that Mayor Strange himself presided over any of jailees' proceedings, had been in a courtroom when jailees were sentenced, or in the jail when jailees

were forced to work) for the Court to infer or draw a conclusion of his individual liability. Slip opinion at pp. 17-19.

However, Plaintiffs have pleaded other non-conclusory factual allegations involving the City's current and prior mayor that are relevant to their remaining Sec. 1983 entity claims. Because the Circuit Court did not consider any of Plaintiffs' Sec.1983 claims relevant to the issues on appeal, it did not mention or consider Plaintiffs' factual allegations related to the City's current and past mayors' involvement in signing the 2009 and 2010 JCS contracts at issue in this case. JCS was not a party to and did not participate in any way in the interlocutory appeal, and apparently, none of the allegations concerning the City's contracts or its involvement with JCS were considered relevant in the Circuit Court's opinion. But these allegations are key to the remaining entity liability claims involving claims against JCS.  They include but are not limited to paragraphs 30 and 52 of the amended complaint, which allege:

> 30. Defendant Todd Strange is Mayor of the City of Montgomery, Alabama and has served as head of the administrative branch of City government since March 10, 2009. He is a final policymaker for the City regarding policies, practices or customs challenged in this lawsuit. Mayor Todd Strange's executive duties include executing all contracts with the city and he has a duty to "see that all contracts with the city or town are faithfully kept or performed." Ala. Code § 11-43-83. Other of his duties as Mayor include: enforcing all laws and ordinances; appointing and removing all officers and employees of the City; exercising administrative supervision and control over all departments; keeping the Council fully advised of the financial conditions and needs of the City; preparing and submitting annual budgets to the Council; recommending actions to the Council; and setting salaries and/or compensations of appointed officers and employees of the City. …

> 52. On March 19, 2009, and again on July 1, 2010, the City of Montgomery, on behalf of the City's Municipal Court, and JCS (a so-called "probation" service company, which actually served as a collection agency for the City) entered into contracts, that were in effect until August 2014, providing that JCS would provide probation services to the City and the Municipal Court. In these JCS-supplied standard form contracts, the City affirms that it is authorized to enter the contract for probation supervision and related services *"for the benefit of the City and the Court."* Mayor Todd Strange signed the July 1, 2010 contract for the City. The City's prior mayor signed the earlier contract for the City.

27

Doc. 32 paras. 30 and 52. (Emphasis added.] The City has admitted to this participation of its

mayors. Answer (Doc. 138) states:

> 52. It is admitted that on March 19, 2009 and again on July 1, 2010, the City of Montgomery and JCS entered into contracts the latter of which was in effect until the summer 2014. It is further admitted that Mayor Todd Strange signed the latter contract on behalf of the City and the City's prior mayor signed the former contract on behalf of the City. The contents of those contracts speak for themselves and any characterization thereof is denied as are the remaining allegations of this paragraph.

As mentioned, the Eleventh Circuit pointed to a portion of paragraph 40 of the amended

complaint concerning the differences in revenue raised by the City of Montgomery and the City

of Huntsville as the only non-conclusory factual allegation relevant to the individual capacity

claims against the Mayor (and police chiefs) and found this allegation alone insufficient to state

plausible individual capacity claims.  But in ruling on this motion for judgment on the pleadings

on Plaintiffs' entity liability claims, this Court must consider Plaintiffs' full allegations in

paragraph 40,[20] not just those mentioning Mayor Strange. Paragraph 40 also includes important

factual allegations about the *large numbers of ticket issued* by the City Police and the *extremely

low numbers of appeals*. ("The 2013 Municipal Court Survey for the City of Montgomery

Municipal Court lists 86,161 cases filed under the category of Non-DUI traffic cases ("Other

Traffic"), 87,596 such cases disposed of, and only 37 appeals. By comparison, in its 2013

---

[20] If further supporting numbers from other years were necessary, this Court could take judicial notice of the City's financial reports for the years 2010 to present, found online at http://www.montgomeryal.gov/city-government/departments/finance/financial-reports, detailing budgeted and actual income from fines and forfeitures and the numbers of non-DUI traffic tickets issued per year. See *Scottsdale Insurance Co. v. Purseley*, No. 11-12808 (11th Cir. Jan. 10, 2012):

> Rule 12(c) permits judgment on the pleadings when there are no material facts in dispute and judgment may be rendered by considering the substance of the pleadings *and any judicially noticed facts.* FED. R. CIV. P. 12(c).

*Id*. (Emphasis added.)

Municipal Court Annual Survey, the City of Huntsville lists 27,889 Non-DUI traffic cases filed, 7251 disposed of, and 1249 appealed"). Doc. 32 para. 40.

Nor did the Circuit Court consider the Plaintiffs' express factual allegations of the City Mayor's involvement in appointing Presiding Judge Hayes and influencing some of his administrative decisions to be significant to the Count 7 or 12 issues on appeal. But these allegations are clearly relevant to Plaintiffs' remaining Sec. 1983 entity liability claims. Plaintiffs allege in Doc. 32 at para. 34, FN15:

> 34. Defendant Hayes was designated Presiding Judge by the City Mayor and the City of Montgomery pays his supplemental salary for his administrative duties for the City as Presiding Judge.15
>
> FN 15: Defendant Les Hayes, III demonstrated some of the influence Mayor Todd Strange has over his administrative decisions by responding to and carrying out the Mayor's politically-motivated plans to hold publicized, but ineffective or counterproductive, "Amnesty Days" on the first two Saturdays of June 2013.

In its Answer, Doc. 138, the City admits that Defendant Hayes was designated Presiding Judge by the City Mayor and that the City of Montgomery paid his salary and further admits that "Mayor Todd Strange suggested the concept of amnesty days to Judge Hayes."

### C. The Eleventh Circuit Held Plaintiffs' Factual Allegations Insufficient to State Count 7 Anti-peonage and Forced Labor Claims Against the Police Chiefs in Their Individual Capacities, But Did Not Rule on the Sufficiency of Plaintiffs' Many Factual Allegations Relevant to the City's Liability for Policies, Practices, or Customs of the City Jail or City Police Department

The October 29, 2018 opinion found the Count 7 jail work allegations against the police chiefs in their individual capacities[21] to be insufficient because Plaintiffs failed to allege

---

[21] Given this Court's March 10, 2017 order (Doc. 131) granting the defendants' motion to dismiss the false arrest portions of Count 12 alleged against against the police chiefs, the individual capacity allegations against the police chiefs that were at issue in the interlocutory appeal were limited to those in Count 7. See the Eleventh Circuit's August 17, 2017 opinion, slip opinion at p.3: "[T]he [district] court also granted partial immunity as to Count 12, for claims arising from traffic stops and arrests. For avoidance of doubt, plaintiffs may not use this appeal to challenge that grant of immunity. *See Hudson v. Hall*, 231 F.3d 1289, 1292 n.1 (11th Cir. 2000)…." (Emphasis added.)

sufficient factual details (such as the precise dates of service and duties of each police chief or that they had presided over any of jailees' proceedings, been in a courtroom when they were sentenced, or in the jail when they were forced to work). Slip opinion at pp. 18-19. As described above, the only non-conclusory factual allegation the Court found relevant to these limited individual capacity claims against the police chiefs was the allegation "that the City of Montgomery collected more fines and court costs than the City of Huntsville, which has a similar population." Slip opinion at 19.

Plaintiffs' amended complaint is replete with other factual allegations based on the involvement of the City of Montgomery's Police Department and Jail in the challenged scheme. These include but are not limited to, their factual allegations concerning the City police's policy of issuing large numbers of non-DUI traffic tickets. Doc. 32 at para. 40.[22] Individual Plaintiffs' factual allegations on the numerous times they individually have been stopped by police also support and substantiate their aggressive ticketing allegations. And even though this Court's March 10, 2017 order found that Plaintiffs' allegations of racial targeting and profiling were insufficient to state claims against the City for intentional racial discrimination under Counts 1 and 2, Plaintiffs' factual allegations of repeated stops and of City police policies of setting up checkpoints near churches while services were being held (Doc. 32 at paras. 41 and 42) remain

---

[22] If further supporting numbers from other years were necessary, this Court could take judicial notice of the City's financial reports for the years 2010 to present, found online at http://www.montgomeryal.gov/city-government/departments/finance/financial-reports, detailing budgeted and actual income from fines and forfeitures and the numbers of non-DUI traffic tickets issued per year. See *Scottsdale Insurance Co. v. Purseley*, No. 11-12808 (11th Cir. Jan. 10, 2012), stating:

> Rule 12(c) permits judgment on the pleadings when there are no material facts in dispute and judgment may be rendered by considering the substance of the pleadings *and any judicially noticed facts.* FED. R. CIV. P. 12(c).

*Id.* (Emphasis added.)

relevant in considering the sufficiency of Plaintiff's allegations of a policy, practice, or custom of aggressive policing and ticketing as part of the debtor's prison scheme.

Plaintiffs also  allege the involvement of policies of the City police and the City Jail in other aspects of the scheme challenged in their Section 1983 claims against the City. *E.g.*, Doc. 32, para. 192 (seeking and serving warrants, including for nonpayment of fines and fees) and Doc. 32, para. 47 (failure to inform of rights on arrest or in jail). Counsel for the City has conceded that Count 3 (warrants for failure to pay/appear) is not limited to judicial functions.[23]

Plaintiffs further allege claims against the City for being subjected to 13th Amendment prohibited involuntary servitude, and federal statutory anti-peonage and forced labor violations

---

[23] Doc. 108 (Transcript of August 18, 2016 hearing):
> [Ms. Holliday]:
>   8 So the first count is this count three, the issuing of
>   9 warrants based solely on nonpayment of debts. And our position
>   10 here -- and it shows which defendants are being sued. But our
>   11 position is, obviously, that, you know, the issuing of warrants
>   12 is a judicial act, and we've cited numerous cases in our briefs
>   13 for that point.
>   14 The only real exception that I can think of to that
>   15 would be there are some -- and, again, this is a Fourth
>   16 Amendment claim -- there are some Fourth Amendment cases that
>   17 suggest that if a police officer does execute a warrant that's
>   18 facially invalid -- I'm sure you come across that a lot in that
>   19 field -- then, you know, that is a wrong that the police officer
>   20 can be held liable for.
>   21 So I want to be clear that on -- for count three, our
>   22 position is that if the judge issued warrants, the warrants are
>   23 a judicial act. I don't want to represent to you that if the
>   24 warrants were absolutely facially invalid, that the city would
>   25 have absolutely no Fourth Amendment, even arguable, position.
>   …
>   7 But that is the only sort of
>   8 area of issuance of warrants that falls within the city's
>   9 purview. Otherwise, as the case law shows, the issuance of
>   10 warrants is a municipal court function.

*Id.* at pp. 41-42.

as part of the City Jail work program. Doc. 32, paras. 50[24] and 233.[25] At the August 18, 2016 oral

argument on their motion to dismiss, counsel for the City admitted that the jail work program

was an initiative of the City's jailer not the judges, whose participation was limited to reducing

debtor's prison "sentences" by giving release orders.[26]

### D.  Other Examples of Factual Allegations Supporting Plaintiffs' Remaining Claims Against the City of Montgomery

---

[24] Para. 50 states: "_Once jailed_, indigent debtors were further faced with a coercive promised reduction of their debts by an additional $25 per day on the condition that they performed onerous and sometimes dangerous janitorial and other work within the jail, the Montgomery Municipal Court, or other city buildings. Record keeping for the time they worked was poor and inmates did not even receive full credit due them for the jobs they were forced to perform in order to shorten their period of incarceration."

[25] Para. 223 states: "Plaintiffs were coerced with threats of more prolonged unlawful jail terms _by City officials_ if they did not "volunteer" to labor in the City jail under onerous conditions for an extra $25 per day reduction of their debts. ..."

[26] Doc. 108 (Transcript of August 18, 2016 hearing):
    [Ms. Holliday:]
     10 If you're commuted to time in jail, the jailer, the
     11 Montgomery County jail, does permit people to do work. And then
     12 the judge reduces sentences according to that sort of work
     13 program. So you can reduce your time in jail significantly by
     14 being part of this voluntary work program.
_Id._ at p. 36. (Emphasis added.) At the hearing on the motions to dismiss, Ms. Holliday also presented a chart indicating that the establishment of the City Jail's work program was not a judicial act. She explained:
    [Ms. Holliday:]
     11 I do have -- then, you know, I also group, outside of
     12 this set of what I call judicial functions, Your Honor, count
     13 seven. Again, that's the jail work program. And what I say
     14 here is that to the extent that the judge was involved in that
     15 jail work program, it had to do with sentencing.
     16 As you can imagine, the jail comes back and says,
     17 they've worked off eight days. They get to go home eight days
     18 early. The judge then makes a judicial call and reduces -- you
     19 know, gives them a release order. So the judge's involvement is
     20 very much judicial.
_Id._ at p. 42.

The Detailed Factual Allegations of Individual Plaintiffs' Experiences. Apart from certain allegations related to the acts Judge Hayes performed in some of the Plaintiffs' individual cases, the Circuit Court did not consider the amended complaint's extensive factual allegations detailing the personal experiences of each of the ten named plaintiffs. Standing alone these individual plaintiff allegations, Doc. 32 at paras. 69-155, are more than sufficient to state Sec. 1983 claims based on the alleged longstanding policies, customs and practices of the City's Police Department and the City's Jail, as well as the policies of its Municipal Court personnel. The allegations related to policies and practices of City Police and the City Jail include, but are not limited to, the frequent and continuing repeated traffic or other police stops resulting in multiple ticketing per incident (ticket stacking), the multiple issuance and arrests on warrants in connection with failure to pay fines and fees and/or appear, the repeated applications of challenged bail bond policies, the holdings in jail for prolonged periods on facially invalid commuted sentences, and the holding of inmates to debt labor in the City jail's jail labor program.

The City admits to significant portions of the factual details alleged by each of the ten named plaintiffs. The admissions include but are not limited to some of the factual allegations concerning the individual Plaintiffs' experiences relating to being subjected to frequent and continuing repeated traffic and/or other police stops resulting in multiple ticketing (ticket stacking) and arrest on warrants in connection with failure to pay fines and fees, application of challenged bail bond policies, being held in jail on commuted sentences, and working in the jail labor program. City's Answer (Doc. 138 responses to paras. 69-155 of Doc 32).

Factual Allegations Regarding the City and JCS as Joint Participants in the Scheme. In Plaintiffs' allegations involving JCS as a joint-participant state actor for the City of Montgomery (which were not considered in the appeals before the Eleventh Circuit), they allege that it was the

*City of Montgomery* that contracted with JCS (Doc. 32, para. 52) and that "*the City* delegated to JCS the important public functions of municipal debt collection and of initiating court proceedings leading to imprisonment for debts as part of this collection process." (Doc. 32, para 62). Plaintiffs' further allegations include, but are not limited to the following in Paragraph 60:

> 60. JCS employees were referred to as "Probation Officers" by both JCS and Municipal Court personnel and they wore badges similar to those worn by governmental officials. They routinely signed Municipal Court "Notice to Show Cause" forms that instruct probationers to appear in court for failure to pay and notify them that a warrant will be issued for their arrest if they fail to appear. The JCS-issued Notice to Show Cause also informs probationers that they have failed to report and that in order to dismiss the court date they not only must report to their next scheduled appointment, but also must pay a certain amount to JCS (e.g., $1417 in one instance) to rescind the scheduled hearing. The Certificate of Service on the Notice to Show Cause Form indicates that the forms were sent to the probationers by regular U.S. mail.

Doc. 32, para. 60.

Failure to Train Claims and Allegations. Other allegations that were not considered by the Circuit Court's limited interlocutory appeal opinion include, but are not limited to, Plaintiffs' allegations, repeated in each of their separate Sec. 1983 counts, that both the City and JCS failed to train and supervise police, jail employees, judges, other court employees, and JCS employees and that they both failed to adopt protective policies. See, e.g., Doc. 32, paras 65, 66, 67 and corresponding allegations in each separate count raising Section 1983 claims. Plaintiffs' municipal liability claims against the City of Montgomery (and the presiding judge in his official capacity) for failure to train raise "wholly separate" issues from the immunity issues decided in the interlocutory appeal. See *Jones v. Fransen*, Case No. 16-10715, (11th Cir. 2017), (holding that "[w]hile the claims presented stem from a single incident, the municipal-liability claim raises the *wholly separate* issue of whether Gwinnett County had a policy, custom, or practice of deliberate indifference and inadequate training of its officers regarding the use of police dogs.

This is not an issue that must be determined—or even considered—in resolving the immunity claims."). [27]

 Count 7 Statutory Claims against the City.  Totally unrelated to any purported "guidance" from the Eleventh Circuit, the City concludes its motion by seeking reconsideration of this court's denial of motions to dismiss the statutory entity liability claims in Count 7. The City now argues that it cannot be liable for violations of the anti-peonage and forced labor statutory claims against it in Count 7 because they are based on criminal statutes that contain specific intent requirements. The City provides no direct authority for this claim, and merely string-cites some cases involving *other* statutes (i.e. RICO) that it says have been construed to contain criminal intent requirements and thus not be applicable to local governmental entities. But, as the lead case the City cites, demonstrates, RICO differs from the statutory claims in this case, in requiring *mandatory* punitive treble damages, a factor that has been found decisive in RICO cases. *Gil Ramirez Group, L.L.C. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 413 (5th Cir. 2015) ("Because Congress wrote no single-damage alternative, and we lack power to revise federal statutes, Appellants fail to state a cognizable RICO claim against HISD. *See Cullen v. Margiotta*, 811 F.2d 698, 713 (2d Cir.1987) ("civil RICO requires that a successful plaintiff be awarded treble damages").)".

 Furthermore, the City's assertion that Plaintiffs' anti-peonage claims under 18 U.S.C. Sec. 1581(a) include a specific intent requirement is belied by the very text of that provision. The first part of  Sec. 1581(a)'s prohibition of peonage applies broadly to "*[w]hoever holds* or returns

---

[27] If and to the extent necessary to deny the City's Motion for Judgment on the Pleadings, Plaintiffs incorporate here their cited filing and exhibit (Doc. 177 and Doc. 177-1) concerning the continuing violations of the Judicial Procedures the City and Municipal Judges agreed to in *Mitchell v. City of Montgomery,* to demonstrate that even the limited training counsel for the City themselves agreed to provide under that temporary agreement has been either inadequate, ineffective, or both.

*any person to a condition of peonage.*" (Emphasis added.) Only the second part of the provision ("or arrests any person with the intent of placing him in or returning him to a condition of peonage") mentions any specific intent. Here, Plaintiffs' claims and supporting factual allegations are that they were <u>held in peonage</u> under the policy of the City Jail. They do not allege that the police who arrested them did so with the intent of holding them in or returning them to a condition of peonage under this program (though perhaps discovery could demonstrate this to be the case). This Court's March 10, 2017 opinion decidedly rejected the City and other defendants' argument that Plaintiffs' jail debt labor could be considered "voluntary" and held that plaintiffs had stated plausible anti-peonage and forced labor claims against the City under 18 U.S.C. 1595's civil cause of action. The Circuit Court opinions in no way call into question the correctness of this Court's denial of the City's motion to dismiss these Count 7 statutory claims against the City (or the denial of the City's motion to dismiss Count 7's Section 1983 claims against it for violations of the 13th Amendment).

**Conclusion**

For all the above reasons, Plaintiffs urge this Court to DENY the City's motion for judgment on the pleadings.

Respectfully submitted,

s/ Martha I. Morgan
Martha I. Morgan (ASB-3038-A46M)
8800 Lodge Lane
Cottondale, Alabama  35453
Telephone: 205-799-2692
E-mail: mimorgan@yahoo.com

Faya Rose Toure (ASB-5931-R787)
Henry Sanders (ASB-6179-A34H)
CHESTNUT, SANDERS &
 SANDERS,  LLC
One Union Street
P.O. Box 1290
Selma, Alabama 36702

Telephone: 334-526-4531
Fax: 334-526-4535
E-mail: fayarose@gmail.com
          gpompey@csspca.com

**Counsel for Plaintiffs**

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of Record, on this 18th day of April, 2019.

s/ Martha I. Morgan

**Of Counsel**