# Exhibit 1

# DECLARATION OF JOHN RUBENS

I, John Rubens, state as follows:

1. I am a Consultant at PRC Consulting Group, a company that offers eDiscovery and legal technology consulting services. Mr. Carter's counsel hired me to organize and summarize data obtained from defendants Judicial Correction Services and the City of Montgomery. Counsel for the *McCullough* Plaintiffs subsequently asked me to provide a declaration for use in *McCullough*, and I agreed to do so.

2. In 2019, I participated in phone calls with the City IT personnel who were assisting the City in its discovery production. The City's production of data has been provided to me. I have also been provided with access to the JCS ProbationTracker system and its underlying databases.

3. My work with the data has consisted of sorting and matching JCS probationers' records from (1) ProbationTracker, the software JCS uses to track all probationers on JCS-supervised probation; and (2) the Benchmark data provided from City. Benchmark is the Montgomery Municipal Court's docket management software.

4. The ProbationTracker database has records of every probationer's Social Security Number and street address, as well as contemporaneous notes and documents from throughout the probation period.

5. The ProbationTracker records provided by JCS for the Montgomery Municipal Court use the same Municipal Court case numbers the Municipal Court uses. I matched JCS's ProbationTracker records with the corresponding case numbers in the Municipal Court records.

6. With the ProbationTracker and Municipal Court records linked, each probationer's history on JCS-supervised probation and related interactions with the Montgomery Municipal Court and Montgomery City Jail can be viewed in sequence.

7.      The matched records allow identification of (1) individuals who the Montgomery Municipal Court had placed on JCS probation, (2) whose probation JCS had thereafter petitioned the Municipal Court to revoke, and (3) whose unpaid debt associated with that probation was then commuted to jail time, resulting in the person being jailed. In addition, the matched records can be sorted by date and limited to (4) those individuals who served commuted time on or after a certain date. I have included several documents from *Carter* and *McCullough* plaintiffs as exhibits here and cite them below as examples. ProbationTracker and Benchmark contain the information needed to confirm all four parameters, and other City records are available as further confirmation.

8.      <u>First</u>, JCS's ProbationTracker database enables users to identify all people the Montgomery Municipal Court placed on JCS probation. When the Montgomery Municipal Court placed a defendant on JCS-supervised probation, a unique JCS Probation ID number was assigned to track and report that probationer's experience within the ProbationTracker system. All of the Montgomery Municipal Court case numbers associated with a given sentence of probation are linked to a specific Probation ID. If the same individual was sentenced to JCS probation on multiple occasions, that person might acquire multiple Probation IDs.

9.      <u>Second</u>, ProbationTracker enables users to identify all instances where JCS petitioned the Municipal Court to revoke a probationer's probation, along with JCS's basis for seeking revocation. Counsel explained to me that when JCS sought revocation from the court, it changed the probationer's status code in ProbationTracker to "VOP" (violation of probation) and generated one of two form documents: a Petition for Revocation of probation or a Notice to Show Cause. ProbationTracker identifies probationers with a VOP status and contains date-marked links to images of the Petition for Revocation or Notice to Show Cause associated with JCS's request

2

to revoke probation, so I could see that sequence in ProbationTracker. (E.g., Ex. A, Carter ProbationTracker Case File Report Excerpt.)

10.     <u>Third,</u> I have been told that the City started using the Benchmark system in February 2012. For Municipal Court orders that commuted fines to jail days which occurred at any point in or after February 2012, Benchmark contains scanned images of documents that show whether a JCS Petition for Revocation or Notice to Show Cause visible in ProbationTracker later resulted in a commutation of fines to jail days. Before February 2012, JCS documented a probationer's commutation in the Detailed Visit Notes in ProbationTracker. The Case File Report generated by Probation Tracker shows the commutation entry was often followed by a Modification of Termination Form being scanned into ProbationTracker, with a judge's signature. These signed forms are linked to the probationer's Case File Report. There are hundreds of instances in which a commutation was documented in ProbationTracker. JCS' practice of documenting fines being commuted to days in jail in ProbationTracker's Detailed Visit Notes tapered off dramatically in early 2012 when the Municipal Court implemented Benchmark. The Benchmark data and Probation Tracker Detailed Visit Notes allow identification of commutation events as discussed below.

11.     <u>Fourth</u>, the Benchmark records show the date of commutation and release from jail for each commuted probationer. And ProbationTracker Detailed Visit Notes document commutations from early 2010 through early 2012.

**Using Benchmark to identify cases commuted in or after February 2012**

12.     The Benchmark data the City provided contains both dated docket entries for events in each case and scanned images of documents associated with those events.

3

13. To determine which of the probationers for whom JCS sought revocation of probation served commuted time on those probations, I reviewed two documents in the City's production from the Benchmark system—the Jail Transcript and the Order of Release from jail—when those documents appeared in cases where ProbationTracker shows JCS had already issued a Petition for Revocation or Notice to Show Cause on the same case number. Many times the JCS form (Petition for Revocation or Notice to Show Cause) was scanned into Benchmark so all three documents were available from the Benchmark system.

14. The Jail Transcript lists (1) the cases a given defendant had before the Montgomery Municipal Court at a particular hearing, and (2) the mandatory jail days (if any) or commutation associated with each individual case, broken down by Municipal Court case number. When the Municipal Court judge commuted a case, the word "Commuted" appears on the Jail Transcript along with the dollar amount (e.g., "$227 Commuted"). (E.g., Ex. B at 2, Carter Jail Transcript.) By cross-referencing all the case numbers for which "commuted" appears on the Jail Transcript with the case numbers on JCS's Petition for Revocation or Notice to Show Cause, one can confirm the JCS probation cases in which the probationer was commuted. (E.g., Ex. B at 1-2, Carter Petition for Revocation and Jail Transcript.) The date of the Jail Transcript shows the date each commutation took place, confirming that it occurred after JCS issued the Petition for Revocation or Notice to Show Cause. (E.g., Ex. B at 1-2, Carter Petition for Revocation and Jail Transcript.)

15. The Order of Release shows the day the probationer was released from jail following a commutation. (E.g., Ex. B at 3, Carter Order of Release.) Generally the Order of Release states whether a person served mandatory and/or commuted time and sometimes states how many days were served for commuted time and how much money was paid for commuted cases. (E.g., Ex. B at 3.) By matching the booking number on the Order of Release with the booking

number on the Jail Transcript, one can confirm that those two documents are referencing the same jail period for that person. (E.g., Ex. B at 2-3, Carter Jail Transcript and Order of Release.)

16. The City produced a spreadsheet from its city jail which confirms the booking and release dates for a limited period. The Montgomery City Jail uses system called New World. The City provided Mr. Carter's counsel with a copy of the New World jail data for all people held in the City Jail from August 2013 through August 2015 in a spreadsheet titled CITY 000076 – Montgomery Jail Records 7-8-19.xlsx. (An exemplar of that document is attached here as Ex. C.) I have cross-referenced the information in this document with the ProbationTracker and Benchmark information for each probationer by matching the Montgomery Municipal Court case numbers contained in all three sources. It is not necessary to rely on this jail data for the release date because that date is on the Order of Release, but this source provides separate confirmation.

17. If the entirety of the time spent in jail was on a case or cases for which the probationer had been commuted following a JCS Petition for Revocation or Notice to Show Cause, the number of days in jail attributable to the JCS-related commutation can be calculated simply by counting the days from the issuance of the Jail Transcript to the date on the Order of Release. (E.g., Ex. B at 2-3, 1/27/14 Carter Jail Transcript showing only JCS-related commuted time and Carter Order of Release showing 1/28/2014 release date.)

18. In some cases, though, a probationer might have been sentenced to "mandatory time"—meaning a fixed term of days—or to a commutation on a case that was not JCS-related at the same time as the JCS-related commutation. Those cases are identified by looking at the Jail Transcript, which contains case numbers and descriptions of the original charge and an entry of the number of jail days for each charge or a dollar amount associated with the commutation. Absent clerical error, case numbers on the Jail Transcript that do not appear on JCS's Petition for

5

Revocation or Notice to Show Cause are not connected to JCS's attempt to revoke the probation. Since the Jail Transcript states jail days or dollar amounts for each case separately, one can apportion the days in jail spent on JCS-related offenses and non-JCS offenses accordingly.

19. Since the records were digital, I used an automated search to identify all JCS probationers in ProbationTracker who were on VOP status and had a Petition for Revocation or Notice to Show Cause issued at any time. Then, to narrow the group to only those probationers who may have had fines commuted to days in jail after JCS petitioned the court to revoke probation, I used an automated process to cross-reference the case numbers associated with those JCS-generated Petitions for Revocation and Notices to Show Cause with the docket entries in Benchmark for those cases. In cases where a Jail Transcript post-dates a JCS Petition for Revocation or Notice to Show Cause, I flagged the Petition for Revocation or Notice to Show Cause, the Jail Transcript, and the Order of Release for further review.

20. These flagged records are easily reviewed to identify those probationers whose Jail Transcripts show commutation on one or more JCS-related cases and to calculate the number of days in jail attributable to each of those JCS-related commutations. This review is in progress, and to date, I have identified more than 200 probationers who spent commuted time in jail on JCS cases. Given this result and the number left to review, I anticipate that more than 500 probationers will have City and JCS documents confirming time spent in jail on JCS-related commutations for the Benchmark period. More than 100 probationers show time spent in jail on JCS-related commutations after September 11, 2013, and I anticipate that by the time my review is complete more than 200 probationers will have documented jail time on JCS commuted cases on or after that date.

21. This method of matching the cases JCS listed in its Petition for Revocation or Notice to Show Cause with the Jail Transcript and Order of Release identifies all people who served commuted time in jail on unpaid JCS cases in Montgomery during the Benchmark period.

22. Additional Benchmark data was provided by the City in the form of text files that contain the database exports about the case records, events, dockets, fees, images and other data. Specifically, the CaseRecords.txt file contains information on probationers, case numbers, case IDs, case closed dates, and several other fields. (Exemplar attached as Ex. D.) And the CaseEvents.txt file contains case IDs, event type, event date, court results and other fields. (Exemplar attached as Ex. E.) I have described above the most direct method I could use to identify class members, but I am aware that these documents contain numerous ways to cross check searches and that they can be called on to create alternate search methods if needed.

**Using ProbationTracker Detailed Visit Notes to identify probationers with cases commuted before February 2012**

23. The most efficient way to identify people whose cases were commuted before the February 2012 implementation of the Montgomery Municipal Court's Benchmark system is to review the Detailed Visit Notes contained in ProbationTracker. Those notes expressly state when the case or cases associated with that probation had been commuted by the Montgomery Municipal Court through entries such as "commuted to days" by the Municipal Court judge on the bench that day. (E.g., Ex. F, Jones ProbationTracker Case File Report excerpt.)

24. A search of the ProbationTracker Case File Reports for individual probationers has revealed more than 400 such entries, and I have reviewed the Detailed Visit Notes in which each of those entries appears. The Case File Report is a standard ProbationTracker report that is available through the version of ProbationTracker JCS provided to Carter's counsel. These Case File Reports show that JCS initiated probation revocation proceedings by submitting a Petition for

7

Revocation or a Notice to Show Cause to the Montgomery Municipal Court. After JCS's request there is a note documenting the fact that the person was commuted. Most of the dates associated with these "commuted to days" notations span from early 2010 through early 2012. Those entries were copied out of the Detailed Visit Notes section of probationers' individual Case File Reports and pasted into a spreadsheet file. That collection of "commuted" entries is attached here as an exhibit. (Ex. G, composite of "commuted" entries in the Detailed Visit Notes of ProbationTracker Case File Reports.)

25. This "commuted" notation enables anyone with access to ProbationTracker to identify people whose cases were commuted before Jail Transcripts and Orders of Release were routinely logged into the Benchmark system.

26. I understand the Montgomery City Jail's database in the New World system was in use as far back as 2009. I further understand that in the CITY 000076 – Montgomery Jail Records 7-8-19.xlsx. spreadsheet the City has provided Mr. Carter's counsel with this New World jail database information going back to August 2013, but no further. If there are earlier records from the City's jail database in New World, access to those records would enhance our knowledge of the circumstances of each commutation in the 2009-2012 period because the records would show the date each probationer was booked into jail and the date each probationer was released on a case for which there is a "commuted" notation in the ProbationTracker Detailed Visit Notes.

27. I understand the City and the Montgomery Municipal Court have stored hard-copy files from Montgomery Municipal Court cases that predate the February 2012 implementation of Benchmark. If Jail Transcripts or Orders of Release (or documents containing comparable information) exist in those hard copy files, those records would also confirm the duration of jailing those probationers whose fines were commuted on a JCS-related case before February 2012.

### **Identifying probationers who paid less than the minimum payment and from whom JCS continued to collect or attempt to collect**

28.     I was asked to identify JCS probationers in Montgomery who (1) at any time paid less than the minimum payment plan amount specified on their probation order; and (2) from whom JCS collected or attempted to collect after July 1, 2013. Identifying such individuals is a straightforward exercise of queries and review of the results within JCS's ProbationTracker database.

29.     Within ProbationTracker, JCS maintained tables of all probationers, including those in the Montgomery Municipal Court. JCS also maintained tables of Payment Transactions that kept track of all payments made by or on behalf of those probationers. JCS also maintained a Payments table that allocated all payments to various "payment types", including JCS probation fees and the underlying City fines. ProbationTracker contains a field called "payment plan" in which JCS recorded each probationer's court-ordered monthly payment amount.

30.     Queries limited to Montgomery probationers and linking the probationers to their payments yielded over 275,000 payment transactions on behalf of more than 26,600 probationers over the time period 2009-2014.

31.     Within the payment tables, JCS documented payments and all payment plans of each probationer. It is a relatively straightforward process to compare the payments to the payment plans to determine how many probationers failed to make a full payment to JCS. For Montgomery probationers who had payment plan information entered in ProbationTracker, more than 90% of their payments were less than the payment plan.

32.     There are more than 2,800 Montgomery probationers who had at least one payment where they paid less than their payment plan and who continued to make payments on or after July

9

1, 2013. In addition, ProbationTracker notes indicate JCS attempts to collect from probationers (including the dates of such attempts) via telephone, failure to report letters, delinquency letters, notices of probation violations, and efforts to obtain an arrest warrant. These notes and data within ProbationTracker can identify still other individuals who had failed to meet JCS payment plans, were still actively on JCS probation, and for whom JCS still pursued payments on or after July 1, 2013.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2020.

_____

John Rubens