# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 26, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-12468-GG   ; 21-12469 -GG
Case Style:  Aldaress Carter v. The City of Montgomery, et al
District Court Docket No:  2:15-cv-00555-RCL-SMD

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered
today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP
41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time
for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in
the clerk's office within the time specified in the rules. **A petition for rehearing must include
a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th
Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the
Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39
and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any
objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation via the eVoucher system no later than 45 days after issuance of the mandate or
the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion

[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12468

_____

ALDARESS CARTER,
individually, and for a class of
similarly situated persons or entities,

                                                  Plaintiff-Appellant,


versus

THE CITY OF MONTGOMERY,
BRANCH D. KLOESS,
JUDICIAL CORRECTIONAL SERVICES, INC.,

                                                  Defendants-Appellees,

2                   Opinion of the Court                   21-12468

CORRECTIONAL HEALTHCARE COMPANIES, INC.,
CHC COMPANIES, INC.,

                                                  Defendants.

_____

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:15-cv-00555-RCL-SMD

_____

_____

No. 21-12469

_____

ANGELA MCCULLOUGH,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
MARQUITA JOHNSON,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
KENNY JONES,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
ALGI EDWARDS,

21-12468                    Opinion of the Court                    3

on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
LEVON AGEE,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
HASSAN CALDWELL,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,
CHRISTOPHER MOONEY,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated,

                                        Plaintiffs-Appellants,

ADRIAN EDDIE FLOYD,
on behalf of themselves, individually,
and on behalf of a class of all other similarly situated, et al.,

                                        Plaintiffs,

*versus*

THE CITY OF MONTGOMERY, ALABAMA,
JUDICIAL CORRECTIONS SERVICES, INC.,
JCS,

                                        Defendants-Appellees,

ERNEST N. FINLEY, JR.,
Chief of Police of the City of Montgomery,

4                          Opinion of the Court                        21-12468

in his individual and official capacities, et al.,

                                                                    Defendants.

————————————————

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:15-cv-00463-RCL-SMD

————————————————

Before NEWSOM, BRANCH, and LUCK, Circuit Judges.

NEWSOM, Circuit Judge:

Warning: This is going to get messy. The underlying litigation here arises out of the City of Montgomery's practice of jailing certain traffic offenders for failing to pay their fines. In particular, two separate groups of Montgomery residents sued (1) the City, (2) a private contractor hired to assist in the administration of the City's probation program, and (3) a lawyer appointed to represent traffic probationers, alleging that the process for converting fines into jail sentences violates the United States Constitution and Alabama law. Whatever the merits or demerits of those substantive allegations, the question on appeal is pure procedure: Is a class action an appropriate vehicle for aggregating and litigating the plaintiffs' legal claims?

After the district court denied certification of any class in either case on various grounds, the plaintiffs sought permission to file an interlocutory appeal, which we granted.  They insist that their claims satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b) and that the district court abused its discretion in refusing to certify their proposed classes.  While the details vary a bit from class to class, we conclude, after careful consideration and with the benefit of oral argument, that the district court did not abuse its discretion.  Accordingly, we will affirm.

## I

### A

The plaintiffs are Montgomery residents who committed routine traffic offenses and thereafter had their fines "converted" into jail sentences.  How, exactly, did that conversion occur?  Here's a brief rundown.

During the relevant period, the City gave traffic offenders two options: (1) plead guilty or (2) contest the offense in Municipal Court.  Those who either pleaded or were found guilty were ordered to pay a fine.  Importantly here, the Municipal Court often placed residents who couldn't pay their fines on probation.

To assist with the administration of its probation program, the City contracted with Judicial Correction Services.  JCS was primarily responsible for managing extended payment plans for those who couldn't afford their fines.  In the course of doing so, it also provided some on-the-ground oversight.  When, for instance, a probationer missed a payment, he had to meet with JCS staff.

Not all probationers attended these JCS check-ins. When a probationer missed meetings or payments, JCS often asked the Municipal Court to revoke his probation. The Municipal Court would then convene a hearing to determine whether to convert the outstanding fine into a jail sentence. Indigent probationers were provided counsel to assist them at the hearings, and, as relevant here, a lawyer named Branch D. Kloess—who, in addition to the City and JCS, is a named defendant—was appointed to represent some of them.

## B

The plaintiffs filed two putative class actions challenging the legality of various procedures employed in connection with the probation-revocation hearings: (1) *McCullough v. The City of Montgomery et al.*, and (2) *Carter v. The City of Montgomery et al.*[1] The plaintiffs' chief allegation was that a cadre of defendants—the City, JCS, and Kloess—all contributed to the Municipal Court's practice of jailing probationers without properly inquiring into their ability to pay, which they contended violates the Fourteenth Amendment as construed in *Bearden v. Georgia*, 461 U.S. 660, 667 (1983). As we'll explain in greater detail, *Bearden*'s central holding is that before sentencing a probationer to jailtime for failing to pay a fine, a court must (1) determine whether he made "reasonable efforts" to pay and (2) if he did, "consider[] whether adequate alternative methods

---

[1] Documents in this opinion referenced as *"McCullough"* are from docket number 2:15-cv-00463-RCL-SMD and documents referenced as *"Carter"* are from docket number 2:15-cv-00555-RCL-SMD.

of punishing [him] are available." *Id*. at 668–69. In addition to their constitutional claims, the plaintiffs also alleged assorted violations of Alabama state law.

That all may seem pretty straightforward, but there are some minutiae that we have to sort out. Hang in there; while tedious, these details are essential to understanding the issues on appeal.

We'll start with the specific claims asserted in each case. In *McCullough*, the class members alleged (1) *Bearden* claims against the City and JCS and (2) abuse-of-process and false-imprisonment claims against JCS. And in *Carter*, they alleged (1) *Bearden* claims against the City and JCS, (2) a Sixth Amendment ineffective-assistance-of-counsel claim against the City, (3) a false-imprisonment claim against JCS, and (4) *Bearden* and ineffective-assistance claims against Kloess. For reasons that will reveal themselves, the surfeit of sometimes-overlapping claims—and divergences between the *McCullough* and *Carter* cases—complicates our assessment.

Those complications compound when we try to sync up the plaintiffs' claims with their class names and definitions, which likewise diverge between the two cases. Happily, in *McCullough*, the plaintiffs' naming conventions closely track their substantive claims. So, for instance, the *"Bearden* Class" presents the plaintiffs' *Bearden* claims against the City and JCS, the "Abuse of Process Class" asserts state-law abuse-of-process claims against JCS, and the "False Imprisonment Class" alleges state false-imprisonment claims against JCS.

In *Carter*, the class names are less tidy. Some seem defend-ant-based, while others appear to be pegged to the alleged harm. The "City Class," for instance, asserts *Bearden* and Sixth Amend-ment claims against the City. And that City Class contains two subclasses: (1) a "JCS *Bearden* Subclass," which—as the name sug-gests—alleges *Bearden* claims against JCS; and (2) the "Kloess Sub-class," which asserts *Bearden* and ineffective-assistance claims against Kloess. Finally, there's a "False Imprisonment Class," which—as in *McCullough*—presents false-imprisonment claims against JCS.

Having set the table, we turn to the district court's decision. The upshot is that the district court denied class certification in both cases—and for several classes on multiple grounds. In *McCullough*, the district court refused to certify the *Bearden* and Abuse of Process Classes on the grounds (1) that common issues didn't "predominate" over individualized ones and, alternatively, (2) that a class action wasn't "superior" to other forms of dispute resolution. *See* Fed. R. Civ. P. 23(b)(3). The court separately con-cluded that the False Imprisonment Class failed the requirements of commonality, *see id.* 23(a)(2), predominance, *see id.* 23(b)(3), and superiority, *see id.* In *Carter*, the district court concluded that the City Class, the JCS-*Bearden* Subclass, and the False-Imprisonment Class all failed the predominance and superiority requirements. *See id.* 23(b)(3). And it held that the claims of the Kloess Subclass's rep-resentative—Mr. Carter—were impermissibly atypical of the claims brought by the broader subclass. *See id.* 23(a)(3).

We granted the plaintiffs' Rule 23(f) petition to appeal the district court's denials of class certification, and we consolidated the cases.

## II

We review a district court's class-certification decision for abuse of discretion. *See Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001) (en banc). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in ruling on class certification, makes clearly erroneous fact‐findings, or applies the law in an unreasonable or incorrect manner." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1305–06 (11th Cir. 2012) (quotation marks omitted). Under this standard, we review factual findings for clear error and legal determinations de novo. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264–65 (11th Cir. 2009).

## III

Federal Rule of Civil Procedure 23 provides the governing legal framework. To proceed as a class action, a case must satisfy a number of well-known prerequisites specified in Rule 23(a) and (b).

First, the case has to meet Rule 23(a)'s requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Among those, we'll train our focus here on typicality—*i.e.*, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Id*. 23(a)(3). A class representative satisfies the typicality

requirement if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Put another way, "a class representative must possess the same interest and suffer the same injury as the class members." *Id.* (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Although "substantial factual differences" between the class representative and members are not necessarily preclusive of typicality, there must in such circumstances be a "strong similarity of legal theories." *Id.* (quoting *Murray*, 244 F.3d at 811).

Second, and separately, the case must satisfy one of several requirements under Rule 23(b). As particularly relevant here, Rule 23(b)(3) requires what courts have called "predominance"—*i.e.*, "that the questions of law or fact common to class members predominate over *any* questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added). To be clear, Rule 23(b)(3)'s predominance requirement is "far more demanding," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997), than Rule 23(a)'s threshold requirement that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Common issues of fact and law predominate" within the meaning of Rule 23(b)(3) "if they have a direct impact on every class member[]." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (quotation marks omitted and alteration adopted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

By contrast, the predominance prerequisite is not satisfied if, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points." *Id.*

As we've explained before, the predominance inquiry "requires a pragmatic assessment of the entire action and all the issues involved." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019) (quotation marks omitted). Pertinent considerations include the "claims, defenses, relevant facts, and applicable substantive law" at issue in the case. *Klay*, 382 F.3d at 1254 (quotation marks omitted). Among others, whether the putative class members can show that "they suffered an injury fairly traceable to the defendant's misconduct"—which runs to their standing to sue, their ability to prove a legal violation, and their right to relief—is "a relevant factor that a district court must consider when deciding whether" the predominance requirement is satisfied. *Cordoba*, 942 F.3d at 1273 (emphasis omitted).[2] Additionally, predominance looks to whether "significant questions concerning ultimate liability" remain after the resolution of any common issues. *Vega*, 564 F.3d at 1274.

---

[2] Of course, it is sufficient for Article III purposes that a single named plaintiff has standing to sue; even so, we have emphasized that whether many class members "may lack standing is extremely important to the class certification decision." *Cordoba*, 942 F.3d at 1264.

## IV

As is likely evident from our earlier description, keeping track of the claims and classes in the two consolidated cases is no small feat.  Because each case entails a slightly different collection of claims, and especially because the plaintiffs in each case have organized their classes around different categories—theories of liability in *McCullough*, defendants (for the most part) in *Carter*—we will tackle the two cases separately.  Form over fashion is the best policy here, we think.  One final prefatory note:  Because the plaintiffs must show that they satisfy *all* the applicable Rule 23(a) and (b) prerequisites to prevail on the certification question, we focus only on the issues necessary to decide this appeal.

So let's go.  First *McCullough*, then *Carter*.[3]

### A

Recall that the *McCullough* plaintiffs sought certification of three classes: (1) the *Bearden* Class, which covers their *Bearden* claims against the City and JCS; (2) the Abuse of Process Class, which asserts state-law abuse-of-process claims against JCS; and (3) the False Imprisonment Class, which alleges state false-

---

[3] One preliminary before we jump in:  The City argues that the *Rooker-Feldman* doctrine precludes us from reviewing the merits of the plaintiffs' claims.  We disagree.  *Rooker-Feldman* prevents federal district courts from reviewing or overturning state-court judgments.  *See Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).  But *Rooker-Feldman* is a narrow doctrine with limited applicability.  *See id.*  For instance, we have specifically held that it did not apply in a case like this one, where a plaintiff sought damages for a procedural-due-process violation arising from state-court proceedings.  *Id.* at 1213.

imprisonment claims against JCS.  We'll address in turn the district court's treatment of each.

1

First up, the *Bearden* Class.  As already noted, in *Bearden v. Georgia*, the Supreme Court held that before sentencing a probationer to jailtime for failing to pay a fine, a court must first determine whether he made "reasonable efforts" to pay and then, if he did, "consider[] whether adequate alternative methods of punishing the defendant are available." 461 U.S. at 668–69.[4]  As the district court explained, the plaintiffs will need to prove several things in order to prevail on their *Bearden* claims: (1) that the Municipal Court initially sentenced them to probation with JCS; (2) that they failed to make payments to JCS in accordance with their probation orders; (3) that JCS petitioned the Municipal Court to revoke their probation; (4) that JCS knew or should have known that the

---

[4] The parties vigorously debate precisely what process *Bearden* requires.  The plaintiffs, for instance, insist that *Bearden* requires the probation-revocation court to make "written findings." Br. of Appellants at 28–30.  For their part, the City and JCS assert that the probationer bears an additional burden under *Bearden* to prove that he was indigent at the time of revocation.  *See* Br. of Appellees at 43–47.  Inasmuch as the plaintiffs assert that a lack of written findings independently entitles them to relief, they failed to present that theory in their complaint and thus likely forfeited it.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  In any event, we needn't get bogged down in the details of *Bearden* procedure or preservation; the critical question for our purposes is whether the plaintiffs should be permitted to litigate their *Bearden* claims—whatever the precise contours—on a class-wide basis.

Municipal Court would likely deprive them of liberty without an adequate *Bearden* determination; (5) that the Municipal Court converted their fines to jailtime; (6) that the Municipal Court did so without an adequate *Bearden* inquiry; and (7) that they suffered harm as a result.[5]

Given those elements, and the evidence required to prove them, the district court held that the plaintiffs had failed to demonstrate that common issues of law or fact "predominate" over individual issues, as required by Rule 23(b)(3).  The crux of the district court's concern was that many of the things the plaintiffs would have to show would demand sorting out "what happened to individual probationers at individual hearings."  *McCullough* Doc. 374 at 35.  For starters, the inquiries required by numbers (1), (3), and (5) in our catalogue—whether the Municipal Court sentenced class members to probation with JCS, whether JCS petitioned the Municipal Court to revoke probation, and whether the Municipal Court converted fines into jailtime—would all necessitate detailed information about each probationer's journey through Montgomery's justice system.  *Id.*  Any common evidence that might arguably shed light on those issues, the district court concluded,

---

[5] The district court added that the plaintiffs would need to prove several additional things specifically relevant to each of the two defendants.  For their claims against the City, for instance, the plaintiffs would have to demonstrate the prerequisites for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  We focus here on the elements of the plaintiffs' *Bearden* claims common to both defendants.

wouldn't predominate over those inherently individualized issues. *Id.*

Perhaps even more troublesome were the individual questions that pervaded the core legal issue underlying the class members' cases: Did the Municipal Court conduct adequate *Bearden* inquiries? The problem, the district court emphasized, is that the evidentiary record is essentially "silent" regarding the "underlying findings or evidence" on which the Municipal Court relied when sentencing individual probationers to jail. *Id.* at 31. Because proving up a *Bearden* violation would inevitably require "asking what happened at each hearing," the court held, "this question [is] an individual one." *Id.*

We think the district court accurately identified a (and perhaps *the*) key challenge for the *Bearden* Class: By its very nature, the necessary information about "what happened" to Montgomery probationers before, during, and after their revocation hearings isn't available on a common, class-wide basis. So far as we can tell, the best evidence regarding that all-important "what happened" question is contained in the "Probation Tracker" and "Benchmark" records provided by the Municipal Court and JCS. But as the district court found—not clearly erroneously—those records "contain[] only the *outcomes* of the commutation hearings," and thus shed no meaningful light on the process that either did or didn't occur. *Id.* (emphasis added). That is, the records can't tell us much about a *Bearden* claim's core components: whether the Municipal Court inquired whether any particular probationer made a

"reasonable effort" to pay his fines and, if so, whether it considered "adequate alternative methods of punishing" him. *Bearden*, <u>461 U.S. at 668</u>–69.

The plaintiffs respond by arguing that "common evidence" can in fact solve the predominance dilemma—because, they say, the Municipal Court had a "systemic practice" of not engaging in proper *Bearden* determinations. Br. of Appellants at 31–32. And they read our decision in *Klay* to hold that "where a defendant engages in systemic wrongdoing, class members may rely on common evidence to establish liability." *Id.* at 32 (citing *Klay*, <u>382 F.3d at 1259</u>).

We disagree, for three reasons. First, it's not at all clear that the evidence *is* common. There is some indication, for instance, that at least *some* Municipal Court judges *sometimes* inquired into individual probationers' ability to pay before converting outstanding fines into jailtime. *See McCullough* Docs. 241-6, 241-7. To be clear, we're not prejudging any individual plaintiff's case—merely pointing out that there is evidence that undermines the plaintiffs' key class-certification contention that the predominance criterion is satisfied because, in fact, the Municipal Court "systemic[ally]" spurned the proper *Bearden* inquiries. *Cf. Tershakovec v. Ford Motor Co.*, <u>79 F.4th 1299, 1306</u> (11th Cir. 2023) ("At the class-certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." (quotation marks omitted)).

Second, and in any event, it remains unclear to us exactly what "common evidence" the plaintiffs would propose to introduce were *McCullough* to proceed as a class action. As we understand it, the plaintiffs' position rests on a mix of (1) anecdotal evidence that the Municipal Court "systemically" ignored *Bearden* and (2) an argument that the City hasn't affirmatively proven that the Municipal Court conducted *Bearden* hearings. *See* Br. of Appellants at 31–35. With respect, we don't think that the plaintiffs have met the district court's central objection—namely, that several showings central to the plaintiffs' claims require knowledge about "what happened to *individual* probationers at *individual* hearings." *McCullough* Doc. 374 at 35 (emphases added). Even if we (assuming the truth of the plaintiffs' allegation) were to grant that it's not best practice for the City to fail to record what occurs at probation-revocation hearings, that doesn't excuse the plaintiffs from meeting Rule 23(b)(3)'s predominance requirement.

Finally, and perhaps most fundamentally, we think that the plaintiffs have misread *Klay*. True, in *Klay* we said that the class members could use "circumstantial evidence" to prove their claims on a class-wide basis. 382 F.3d at 1259. But our permission was tailored to a specific context: There, the plaintiffs—a group of doctors suing insurers for fraudulent billing practices—sought to use circumstantial evidence to prove they relied on "simpl[e]" misrepresentations by insurers that "they would reimburse the [doctors] for medically necessary services they provide." *Id.* Here, there is nothing "simple" or straightforward about the plaintiffs' claims or proffered evidence. While we said that a jury could "quite

reasonably" make "legitimate inferences" about the straightfor-
ward misrepresentations at issue in *Klay*, *id.*, asking a jury to use
anecdotal evidence to extrapolate to a conclusion about what oc-
curred at each probationer's hearing would require a much more
significant inferential leap.

　　Other portions of our opinion in *Klay* further underscore the
distinction between that case and this one and confirm why the
plaintiffs' *Bearden* claims here fail to satisfy Rule 23(b)(3)'s predom-
inance requirement. In particular, we highlighted there that the
class members' common evidence was closely tied to the essen-
tially collective nature of their underlying allegation. As we ex-
plained, the existence of a single "nationwide conspiracy"—there,
among HMOs to systematically program their computer systems
to underpay doctors for their services—was the "very gravamen of
the RICO claims" that the plaintiffs alleged. *Id.* at 1256–57. Im-
portantly, we emphasized that the plaintiffs would *not* be asking a
factfinder to "infer the commission of wrongful acts against indi-
vidual plaintiffs." *Id.* at 1257. Nor, we said, were the plaintiffs there
"seeking to litigate separate . . . claims that arose from a variety of
individual incidents together in the same class action simply be-
cause they alleged that the acts . . . occurred pursuant to corporate
policies." *Id.* (distinguishing *Jackson v. Motel 6 Multipurpose, Inc.*, <u>130
F.3d 999</u> (11th Cir. 1997) and *Rutstein v. Avis Rent-A-Car Sys., Inc.*,
<u>211 F.3d 1228</u> (11th Cir. 2000)).

　　That, it seems to us, is *exactly* what the *Bearden* Class mem-
bers seek to do here. Even if, as the plaintiffs allege, the Municipal

Court's failure to perform *Bearden* inquiries stemmed from some common policy of the City or JCS, each class member's claim will ultimately hinge on whether he was *individually* denied a proper *Bearden* determination.  But as we clarified in *Klay*, Rule 23(b)(3)'s predominance requirement isn't satisfied when the underlying harms alleged by class members arise from "a variety of individual incidents," even if those harms "occurred pursuant to corporate policies."  *Id.*

For all these reasons, we hold that the district court did not abuse its discretion in refusing to certify the *Bearden* Class for lack of predominance.[6]

---

[6] There is one loose end:  The plaintiffs assert that by factoring certain questions into its predominance inquiry—such as whether would-be class members were sentenced to probation with JCS, whether JCS petitioned the Municipal Court to revoke their probation, and whether the Municipal Court converted their fine into jailtime—the district court violated *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021).  We don't think so.  *Cherry* simply holds that considerations of "administrative feasibility" shouldn't be treated as threshold requirements for class certification.  *See id.* at 1301–02.  Here, the district court merely—and properly—folded concerns about identifying individuals who had suffered the sorts of injuries that the class complaint alleged into its holistic, "pragmatic" assessment of predominance under Rule 23(b)(3).  *See Cordoba*, 942 F.3d at 1273–74 (holding that questions about whether an individual suffered an injury traceable to the defendant are relevant to his standing, his ability to demonstrate a legal violation, and his right to relief, and are properly considered in a predominance analysis).  Moreover, and in any event, even if *Cherry* were properly read to relegate the sorts of considerations that the district court emphasized here to Rule 23(b)(3)'s "superiority" inquiry, the district court here separately concluded that the plaintiffs had failed to show

20                    Opinion of the Court                    21-12468

**2**

Next up in *McCullough*, the Abuse of Process Class, which alleges state-law abuse-of-process claims against JCS. Under Alabama law, "[t]he elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998). An entity acts with an "ulterior purpose" when it leverages a legal process to achieve an outcome beyond its "regular and legitimate function." *Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979). "Wrongful use of process" involves "act[ing] outside the boundaries of legitimate procedure" in pursuit of such "ulterior purpose." *Shoney's, Inc. v. Barnett*, 773 So. 2d 1015, 1025 (Ala. Civ. App. 1999) (quotation marks omitted). Malice is "the goal of achieving some result not properly achieved by the process," and it can be presumed once the first two elements—ulterior motive and wrongful use—are met. *Id.* at 1026.

As the plaintiffs explain it, the thrust of their allegation here is that JCS "abused the Montgomery Municipal Court's probation orders by wrongfully taking advantage of the probation process to coerce money from indigent people and divert that money to its own profit instead of the court debt owed." *McCullough* Doc. 282 at 50. Thus, to prevail on their abuse-of-process claims, the district court explained that each plaintiff must prove (1) that the Municipal Court ordered him onto probation with JCS, (2) that JCS acted

---

that a class action was a superior means of adjudicating their *Bearden* claims. *See McCullough* Doc. 374 at 35–36.

with the ulterior motive of seeking profit for itself instead of collecting probationers' fines for the City, (3) that JCS continued to assess and collect probation fees after a probationer violated his probation order, (4) that JCS used the probation orders wrongfully because it "acted outside the boundaries of legitimate procedure" when it collected fees and fines from probationers and petitioned the Municipal Court to revoke probation, and (5) that JCS acted maliciously.

As it did with the *Bearden* Class, the district court concluded that the Abuse of Process Class failed Rule 23(b)(3)'s predominance requirement. For instance, the court emphasized that determining whether the Municipal Court put a resident on probation, as well as whether JCS collected fees after a probationer violated his order, would require "[i]ndividual review of JCS's records" and would entail proof not included in the Probation Tracker and Benchmark databases. *McCullough* Doc. 374 at 49. So too, the district court found that assessing whether JCS used the orders "wrongfully" would demand an "examination of the knowledge JCS had about" an individual probationer's particular circumstances—including, for instance, "why a class member could not pay [his fine] and whether he would likely be able to pay in the future." *Id.* And determining whether JCS acted maliciously, the court said, is an individual question because it is pegged, in part, to whether JCS used the probation wrongfully, which itself is an individualized issue. *Id.*

Again, we can't say that the district court abused its discretion. As was true of the *Bearden* Class, it seems evident to us that the claims alleged by the plaintiffs in the Abuse of Process Class turn on a host of individualized facts. At a minimum, each plaintiff must demonstrate (1) that he was put on probation, (2) his payment history with JCS, and (3) JCS's behavior following any missed payments. For starters, these bear on whether the plaintiffs' alleged injuries are "fairly traceable to [JCS's] misconduct"—and thus on the plaintiffs' standing, their ability to make out a violation, and their right to relief. *See Cordoba*, 942 F.3d at 1273. Moreover, evaluating whether JCS "acted outside the boundaries of legitimate procedure" when collecting fines and asking the Municipal Court to revoke probation will inevitably involve inquiries about what JCS knew about each probationer's financial circumstances. *See Hagood*, 711 So. 2d at 951. Without such information, it would be difficult, if not impossible, for a factfinder to determine whether JCS acted "wrongfully"—or, instead, was simply doing its job—when, say, it followed up with individual probationers to collect their fines or asked the Municipal Court to revoke probation.

In sum, given the available evidence (or lack thereof) offered by the plaintiffs concerning their abuse-of-process claims, they will need to "introduce a great deal of individualized proof" and argue "individualized legal points to establish most or all of the elements of their individual claims." *Klay*, 382 F.3d at 1255. Accordingly, the district court didn't abuse its discretion in finding a lack of predominance under Rule 23(b)(3).

**3**

Finally in *McCullough*, the False Imprisonment Class, which asserts state-law false-imprisonment claims against JCS. Under Alabama law, false imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. Alabama law recognizes false-imprisonment claims not only against government officials but also against others who "instigate" unlawful detentions. *See Grant v. Dolgen Corp.*, 738 So. 2d 892, 894 (Ala. Civ. App. 1998). A third party "instigates" an unlawful detention when it participates in the detention and does so in "bad faith" because it "lacks any reasonable basis" for procuring the deprivation of liberty. *Id.*; *see also Crown Cent. Petroleum Corp. v. Williams*, 679 So. 2d 651, 655 (Ala. 1996). It isn't enough, though, for an alleged "instigator" merely to "give[] information" to the authorities; rather, it must somehow "persuad[e] or influenc[e]" the relevant authorities. *Dolgencorp, Inc. v. Pounders*, 912 So. 2d 523, 528 (Ala. Civ. App. 2005) (quoting Restatement (Second) of Torts § 45A, cmt. C (1965)).

Accordingly, as the district court explained, to make out a claim against JCS, a false-imprisonment plaintiff here will have to prove (1) that the Municipal Court sentenced him to probation with JCS, (2) that he failed to make payments to JCS in accordance with his probation order, (3) that JCS petitioned the Municipal Court to revoke his probation, (4) that the Municipal Court revoked probation in violation of *Bearden*, (5) that JCS "persuaded or

influenced" the Municipal Court to jail him, (6) that JCS acted in "bad faith" in doing so, and (7) that he suffered harm.

The district court denied certification of the False Imprisonment Class primarily on the ground that it failed Rule 23(a)(2)'s commonality requirement, and alternatively because it failed Rule 23(b)(3)'s predominance and superiority requirements:  "Even if," the court said, "the plaintiffs could show a common issue of fact or law, they would be unable to show predominance or superiority." *McCullough* Doc. 374 at 43.  Whether framed in commonality or predominance terms, the court concluded that "as with the *Bearden* class, individualized review of the evidence is needed to answer th[e] questions" that underlie the plaintiffs' false-imprisonment claims.  *Id*. at 41.  In particular, the court found that "individualized review of the evidence" would be required to ascertain (1) whether the Municipal Court put any particular traffic offender on probation, (2) whether JCS petitioned the Municipal Court to revoke probation, (3) whether the Municipal Court commuted an offender's unpaid fines to jailtime, (4) whether JCS persuaded the Municipal Court to jail a probationer, (5) whether the probationer missed his payments, (6) whether he received a proper *Bearden* determination during his revocation hearing, and (7) whether JCS acted in bad faith.

21-12468                Opinion of the Court                25

Once again, we find no abuse of discretion in the district court's predominance finding.[7] To prevail on their false-imprisonment claims, the plaintiffs must prove foundational facts that aren't available on a class-wide basis, such as which offenders were sentenced to probation and the processes by which the Municipal Court went about sentencing them. As with the *Bearden* and Abuse of Process Classes, doing so will require individualized proof about whether particular plaintiffs "suffered an injury fairly traceable to the defendant's misconduct" such that they have standing to sue, can prove a violation, and are entitled to relief. *Cordoba*, 942 F.3d at 1273 (emphasis omitted). Likewise, proving whether JCS petitioned the Municipal Court to revoke probation and, crucially, whether it "lack[ed] any reasonable basis" for doing so and thus acted in "bad faith," *Grant*, 738 So. 2d at 894, will require "a great deal of individualized proof," *Klay*, 382 F.3d at 1255. Accordingly, we hold that the district court did not abuse its discretion in refusing to certify the False Imprisonment Class.

---

[7] We note that although the plaintiffs mentioned the district court's predominance finding as to the False Imprisonment Class in the introduction to their opening brief here, *see* Br. of Appellants at 26, as well as in sections of that brief addressing other issues, *see id.* at 38, they never squarely challenged that finding as a basis for reversing the court's refusal to certify. Accordingly, the plaintiffs may well have abandoned any challenge to the district court's decision in that respect. *See Little*, 691 F.3d at 1306. Even so, for reasons explained in text, we find no error in the district court's analysis.

\* \* \*

Summing up our conclusions about the *McCullough*-related classes, we hold that the district court did not abuse its discretion in concluding that all three fail to satisfy Rule 23(b)(3)'s predominance requirement, as each tethers "a variety of individual incidents together in the same class action." *Klay*, 382 F.3d at 1257.

**B**

On then, to *Carter*. Recall that in *Carter*—unlike in *McCullough*—the plaintiffs, for the most part, organized their proposed classes and subclasses around defendants rather than substantive claims. So we have before us (1) the City Class, which asserts a mashup of *Bearden* and ineffective-assistance-of-counsel claims against the City of Montgomery; (2) the JCS *Bearden* Subclass, which exists within the City Class and alleges *Bearden* claims against JCS; (3) the Kloess Subclass, which asserts both *Bearden* and ineffective-assistance claims against attorney Branch Kloess; and (4) the False Imprisonment Class, which (as in *McCullough*) alleges false-imprisonment claims against JCS. As we did in *McCullough*, we'll take the *Carter* classes one by one.

**1**

The City Class is the messiest. That's so because the plaintiffs there purport to present two independent legal claims: (1) a *Bearden* claim and (2) a Sixth Amendment ineffective-assistance claim. As it turns out, though, those claims are intertwined: In proving their Sixth Amendment claims, the plaintiffs plan to show that the City's public defenders "failed to provide meaningful

assistance of counsel" *because* they "fail[ed] to request indigency hearings." Put another way, the plaintiffs allege that the City violated the Sixth Amendment primarily because its public defenders didn't seek adequate *Bearden* determinations.

In any event, regardless of how we construe the claims, we cannot conclude that the district court abused its discretion in holding that the City Class fails to satisfy Rule 23(b)(3)'s predominance requirement. Needless to say, if we treat the City Class's claims primarily as grounded in *Bearden*—as the district court seemingly did[8]—then we needn't say anything more than we've already said in dealing with the *McCullough* plaintiffs' *Bearden* claims against the City. *See supra* at 13–19.

We reach the same conclusion even if we treat the City Class's Sixth Amendment claim as existing independently of the *Bearden* claim. On that reading, the City Class plaintiffs intend to prove three elements in support of their Sixth Amendment claims: (1) that the City's public defenders provided ineffective assistance of counsel by failing to request *Bearden* determinations; (2) that the City was on notice of this failure; and (3) that the City was deliberately indifferent to it. *See Carter* Doc. 307 at 42. Significantly, because (under this interpretation) the Sixth Amendment claims are predicated on allegations of ineffective assistance of counsel, the

---

[8] We suspect that the mashed-up nature of the City Class's claims explains why, in concluding that the City Class failed the predominance requirement, the district court relied exclusively on its *Bearden*-centered analysis in *McCullough*. *See Carter* Doc. 397 at 14.

plaintiffs will also have to demonstrate that the failure to request *Bearden* determinations "prejudiced" them within the meaning of *Strickland v. Washington* and its progeny. *See* 466 U.S. 668, 687 (1984).

Even assuming that the City Class means to pursue standalone ineffective-assistance-based Sixth Amendment claims, the plaintiffs can't overcome the predominance problem identified by the district court. As already explained, the district court found—again, not clearly erroneously—that records kept by the City and JCS fail to reveal basic facts about the process leading up to and during the probation-revocation hearings that underlie this litigation. Those records don't provide any meaningful information about what Municipal Court judges did or said—for instance, whether or not the judges engaged in a *Bearden* inquiry, *see supra* at 15–16—and there's no indication that they provide any class-wide information about what the public defenders did or said, either—for instance, whether and in what manner they sought *Bearden* determinations. Without such class-wide evidence, it would be impossible to resolve the ineffective-assistance issue on a class-wide basis.

Moreover, and in any event, even if the City Class plaintiffs could somehow prove on a class-wide basis that the City's public defenders failed to ask for *Bearden* hearings in a way that constituted deficient performance, determining whether an attorney's failure to do so prejudiced any particular probationer would certainly require evaluating plaintiff-specific facts. To show prejudice,

each probationer would have to show "a reasonable probability that, but for [his] counsel's" failure to request a *Bearden* determination, "the result of the proceeding would have been different." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 64 F.4th 1264, 1271 (11th Cir. 2023) (quoting *Strickland*, 466 U.S. at 694). That prejudice inquiry tees up a whole host of individualized questions, such as—significantly— whether any particular probationer was entitled to relief under *Bearden* in the first place.

At bottom, whether we view the City Class as presenting one hybrid legal theory or two independent claims, a court and jury will need to "focus almost entirely on facts and issues specific to individuals rather than the class as a whole." *Rutstein*, 211 F.3d at 1240 (quotation marks omitted). The district court did not abuse its discretion when it found that the City Class failed to satisfy Rule 23(b)(3)'s predominance requirement.

**2**

Next up, the JCS *Bearden* Subclass, which exists within the City Class and alleges *Bearden*-based claims against JCS. *See Carter* Doc. 397 at 15. The plaintiffs in this subclass will have to prove the same elements as those in the *Bearden* Class in *McCullough*, and we needn't repeat them here. Nor need we repeat our analysis. The district court primarily relied on its *Bearden* Class analysis from *McCullough* to conclude that the JCS *Bearden* class in *Carter* likewise lacked predominance. *Id*. And our affirmance of the court's decision there applies here, as well. *See supra* at 13–19. The district court did not abuse its discretion in holding that the JCS *Bearden*

Subclass failed to satisfy Rule 23(b)(3)'s predominance require-
ment.

3

The Kloess Subclass comprises members of the *Carter* City
Class whom Branch Kloess represented in their probation-revoca-
tion hearings. The district court's treatment of the Kloess Subclass
was a little different; the court didn't ground its decision in Rule
23(b)(3)'s predominance requirement, but rather concluded that
the subclass failed to satisfy Rule 23(a)(3)'s threshold requirement
that a class representative's claims be "typical" of the class. *See* Fed.
R. Civ. P. 23(a)(3).

In particular, the district court emphasized that class repre-
sentative Carter and the other members of the class "assert funda-
mentally different injuries" vis-à-vis Kloess's representation. *Carter*
Doc. 397 at 19. While most class members alleged that Kloess
failed to "provide constitutionally adequate representation" at their
hearings, Carter alleged that Kloess was altogether absent from his
hearing—to put it in common parlance, that Kloess was a total no-
show. *Id.* Carter thus "assert[ed] total deprivation of counsel," not
merely ineffective assistance like the other subclass members. *Id.*

We agree that this distinction matters. As the district court
correctly concluded, the factual circumstance underlying Carter's
claim puts him in a different legal bucket than the other Kloess Sub-
class members. In particular, because Kloess didn't attend Carter's
hearing at all, a court reviewing his claim will indulge a "presump-
tion of prejudice." *United States v. Cronic*, 466 U.S. 648, 659–60

(1984). Importantly, that presumption does not apply to the remaining plaintiffs, who will have to marshal evidence affirmatively showing "a reasonable probability that, but for" Kloess's deficient performance, "the result of the[ir] proceeding[s] would have been different." *Taylor*, <u>64 F.4th at 1271</u> (quoting *Strickland*, <u>466 U.S. at 694</u>). To be sure, our case law recognizes that "substantial factual differences" between a class representative's claim and those of the class members does not per se foreclose a typicality finding. *Williams*, <u>568 F.3d at 1357</u> (quotation marks omitted). In this case, though, the fact that a presumption of prejudice will attach to Carter's claims but no one else's means that there is no "strong similarity of legal theories" between his and theirs. *See id.* (quotation marks omitted). As a result, we cannot conclude that the district court abused its discretion in holding that the Kloess Subclass failed to satisfy Rule 23(a)(3)'s typicality requirement.[9]

### 4

We end our *Carter* class-certification tour with the False Imprisonment Class, which mimics the same class in *McCullough*. Among other shortcomings, the district court held with respect to the *Carter* False Imprisonment Class that "[c]ommon questions do

---

[9] The plaintiffs assert that the district court improperly failed to address their *Bearden* claim against Kloess. *See* Br. of Appellants at 56 n.20. We're not so sure the operative complaint actually alleges such a claim. Insofar as it does, we conclude, for reasons already explained in connection with our discussion of the district court's analysis of the *Bearden* class in *McCullough*, that the claim fails Rule 23(b)(3)'s predominance requirement. *See supra* at 13–19.

not predominate over individual questions" and, therefore, that it failed to satisfy Rule 23(b)(3). *Carter* Doc. 397 at 22.

We agree. For reasons already explained in connection with the proposed False Imprisonment Class in *McCullough*, the claims presented by the False Imprisonment Class in *Carter* will require unpacking an "unmanageable variety of individual legal and factual issues." *Jackson*, 130 F.3d at 1006 (quotation marks omitted). Accordingly, we hold that the district court did not abuse its discretion when it concluded that this class failed to satisfy Rule 23(b)(3)'s predominance requirement.

## V

This appeal provides no occasion to assess the legality, let alone the wisdom, of the probation-revocation practices that the plaintiffs have challenged. The questions presented to us are important, but narrow. And with respect to those questions, we hold that the district court did not abuse its discretion in holding that the plaintiffs' proposed classes and subclasses fail to satisfy Rule 23's requirements. Accordingly, we affirm the district court's denial of class certification.

**AFFIRMED**.